UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIPLIND L. CRUZ, Individually and on
Behalf of his Two Minor Children,

                                      Plaintiff,

                                                                                                         5:17-CV-00510

v.

                                                                                                          (BKS/TWD)

THE STATE OF NEW YORK, et al.,

                                      Defendants.
_____

APPEARANCES:

KIPLIND L. CRUZ
Individually and on Behalf of his
Two Minor Children
Plaintiff, pro se
5825 Townline Road
Cincinnatus, NY 13040

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER

      Plaintiff Kipland L. Cruz, Individually and on behalf of his two minor children, has submitted for filing by the Clerk: (1) a notice of removal to federal court, pursuant to 28 U.S.C. § 1443, naming twelve Respondents involved in child support, child custody, and child abuse proceedings in state court (Dkt. No. 1); and a separate federal court civil rights complaint brought under 42 U.S.C. §§ 1983, 1985, and 1986. (Dkt. No. 1-2.) The Clerk has sent the notice of removal and civil rights complaint to the Court for initial review under 28 U.S.C. § 1915(e). Also before the Court is Plaintiff's application for leave to proceed *in forma pauperis* ("IFP Application"). (Dkt. No. 2.)

I.      **IFP Application**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP Application (Dkt. No. 2), the Court finds that he meets this standard. Therefore, Plaintiff's IFP Application is granted.

II.     **NOTICE OF REMOVAL AND FEDERAL COURT CIVIL RIGHTS COMPLAINT**

   A.     **NOTICE OF REMOVAL**

Plaintiff has labeled his notice of removal as a "Petition for Writ of Habeas Corpus in United States District Court pursuant of 18 USC 1512(b)(3) & 18 USC §1513(b) [&] 18 USC § 242 [and] Defendants Federal Removal from State of New York County of Cortland, Chenango, Onondaga, New York State Cortland County Combined Court to US District Court pursuant to 28 U.S.C. § 1443." (Dkt. No. 1 at 1.[1]) The various state court proceedings Plaintiff seeks to remove to federal district court primarily involve unpaid child support, child abuse claims, and a custody dispute between Plaintiff and his ex-wife Nicole A. Cruz. (*See generally* Dkt. Nos. 1, 1-1, 1-3.)

Plaintiff seeks appropriate declaratory and injunctive relief. *Id*. at 44.

   B.     **CIVIL RIGHTS COMPLAINT**

In his federal civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff appears to have named thirty or more defendants whom Plaintiff presumably believes to have been involved in matters related, either directly or indirectly, to the state court proceedings. (*See*

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

*Generally* Dkt. No. 1-2.) Included in the complaint are allegations that Plaintiff's minor children have been subjected to repeated sexual abuse, mental and emotional abuse, and maltreatment by their mother, and that false charges of child abuse and child exploitation have been placed against Plaintiff by certain of the defendants. *Id*. at 15. Plaintiff has also asserted claims for unfair employment practices and discrimination. *Id*. at 29. In addition to his civil rights claims under §§ 1983, 1985, and 1986, Plaintiff has asserted claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. § 245 (Federally protected activities) and § 2258 (sexual exploitation of children).

Plaintiff seeks damages in the amount of $250,000 per defendant for himself and each of his minor children for a total of $750,000 per defendant. *Id*. at 29. He seeks an additional $60,000,000 in damages for irreparable damages, retirement, and the seizure of properties, along with declaratory and injunctive relief. *Id*. at 30-31.

### III. PLAINTIFF'S ATTEMPTED PRO SE REPRESENTATION OF HIS MINOR CHILDREN

When a Plaintiff seeking relief from an officer or employee of a governmental entity meets the financial criteria for commencing a case *in forma pauperis*, the Court must conduct an initial review of the sufficiency of the allegations set forth in the complaint under 28 U.S.C. §§ 1915(e) before he can proceed. Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.

§ 1915(e)(2)(B)(i)-(iii).[2]

The Court finds initial review to be premature in this case. A litigant in federal court has the right to act as his own counsel. *See* 28 U.S.C. § 1654 (1982) ("in all courts of the United States, the parties may plead and conduct their own cases personally or by counsel. . . ."). Morever, Rule 17(c) of the Federal Rules of Civil Procedure authorizes a general guardian to bring suit on behalf of a minor. Fed.R.Civ.P. 17(c)(1)(A). However, it is well established that "[a] person who has not been admitted to the practice of law may not represent anybody other than himself." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) and 28 U.S.C. § 1654). The prohibition extends to non-lawyer parents seeking to represent their children. *See Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990) ("It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected."); *KLA v. Windham Southeast Supervisory Union*, 348 F. App'x 604, 605-05 (2d Cir. 2009) (the prohibition on unlicensed laymen representing anyone other than themselves extends to non-lawyer parents seeking to represent their children); *Panzardi v. Jensen*, No. 13-CV-441 (MKB), 2014 WL 905546, at * 2 (E.D.N.Y. March 7, 2014)[3] (non-lawyer parents are prohibited from representing their children).

---

[2] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[3] A copy of the unpublished decision cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

4

Because Plaintiff, a non-attorney, cannot proceed pro se on behalf of his minor children, initial review of the notice of removal and federal civil rights complaint cannot be undertaken at this point. *See Cheung*, 906 F.2d at 62 (remand by Second Circuit of a case dismissed *sua sponte* on the grounds that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or his child, stating: "We believe that no issues concerning this litigation should be decided until the counsel issue is resolved. We remand to give [plaintiff] an opportunity to retain counsel or to request the appointment of counsel. . . . If [plaintiff] does not retain counsel and if the district declines to appoint counsel, the complaint should be dismissed without prejudice.").

It is not possible at this point for the Court to separate out claims that may be solely those of the Plaintiff with sufficient certainty to ensure that initial review of those claims would not ultimately harm the interests of his as yet unrepresented children. Therefore, the Court will order that the case be stayed for ninety days in order to give Plaintiff time to retain counsel with regard to all claims being pursued on behalf of his minor children, to move for appointment of counsel,[4] or file an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children. If there is no appearance by counsel on the claims Plaintiff is pursuing on behalf of his minor children, no motion filed for appointment of counsel, and no

---

[4] There is no legal right to counsel in civil cases. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). However, 28 U.S.C. § 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Court cautions Plaintiff that while counsel may be appointed in appropriate circumstances, *see* Fed.R.Civ.P. 17(c), 28 U.S.C. § 1915(e)(1), the appointment of counsel is far from a sure thing, particularly where, as in this case, there is not a fully developed record from which an assessment of the merits of the case can be made. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel); *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 174 (2d Cir. 1989) (*per curiam*) (even where a claim is not frivolous, counsel should not be appointed in a case where the merits are thin and a plaintiff's chance of prevailing is poor).

amended notice of removal and/or complaint deleting all claims asserted on behalf of the minor children filed on or before September 11, 2017, the Court will issue a Report-Recommendation to the assigned District Court Judge recommending that the notice of removal and federal civil rights complaint be dismissed without prejudice.

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that this case be stayed for ninety days in order to give Plaintiff time to retain counsel with regard to all claims being pursued on behalf of his minor children, to move for appointment of counsel, or to file an amended notice of removal and amended complaint deleting all claims asserted on behalf of Plaintiff's minor children. If the Court does not receive notice by September 11, 2017, that Plaintiff has taken one of those actions, the Court will issue a Report-Recommendation to the assigned District Court judge recommending that the notice of removal and federal civil rights complaint be dismissed without prejudice; and it is further

**ORDERED** that the Clerk serve copies of this Order and the unpublished decision in *Panzardi v. Jensen*, No. 13-CV-441 (MKB), 2014 WL 905546 (E.D.N.Y. March 7, 2014) in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**IT IS SO ORDERED**.

Dated: June 13, 2017
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge

2014 WL 905546
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Alex PANZARDI, Plaintiff,
v.
Poul JENSEN, Rolando Perez, Deborah
Brewer, Alban Boucher, Shannon Greene,
and Dr. Carmen Veloz, Defendants.

No. 13–CV–4441 (MKB).
|
Signed March 7, 2014.

**Attorneys and Law Firms**

Alex Panzardi, Romulus, NY, pro se.

### *MEMORANDUM & ORDER*

MARGO K. BRODIE, District Judge.

***1** On July 19, 2013, the Court received several documents from Alex Panzardi, a prisoner incarcerated at Five Points Correctional Facility, including a handwritten letter addressed to "District Court Staff," a completed application to proceed *in forma pauperis* and a Prisoner Authorization form. (*See* Docket Entry No. 1.) No complaint was included among the documents. On August 7, 2013, the clerk's office mailed a packet with the necessary forms for filing a civil rights complaint and directed Plaintiff to return them within 14 days. (*Id.*) Plaintiff requested and received several extensions of time to file a complaint, and eventually filed an Amended Complaint on November 1, 2013. (*See* Docket Entry No. 8 ("Am.Compl.").) The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. For the reasons discussed below, the Amended Complaint is dismissed for lack of jurisdiction and for failure to state a claim. Plaintiff is granted leave to replead his 42 U.S.C. § 1983 claim for damages within 30 days.

### I. Background

The Amended Complaint is on a form for filing civil rights complaints pursuant to 42 U.S.C. § 1983, and names six individuals as defendants, each apparently employed by Graham Windham, a private child welfare agency ("Graham Windham" or "the Agency"). (Am. Compl. at 3–4. [1]) Plaintiff alleges that the staff of the Agency intervened in his visits with his son by making recommendations to family court "with out having any kind of hard 'evidence' on how visits would [have] been 'detrimental' or 'harmful' to my son," and medicated his son without Plaintiff's consent. (*Id.* at 5.) Plaintiff further alleges that the Agency's staff "violated numerous ... court orders [and] motions." (*Id.*) He alleges that Defendants' actions have done " 'severe' 'unrepairable' 'damage' to my son emotionaly [*sic* ] [and] physically [and] with his school education as well." (*Id.*)

Plaintiff attaches several exhibits to the Amended Complaint, including his initial letter dated July 15, 2013 and filed with the Court on July 19, 2013, addressed to the District Court Staff ("July 19, 2013 letter"). Plaintiff appears to have challenged the Agency's determination that visits between Plaintiff and his son should not continue while Plaintiff is incarcerated. Plaintiff made several allegations in the July 19, 2013 letter. Plaintiff stated that on "Sept. 15, 2009, the Agency issue[d] a summons against me stating that the therapist from the Agency felt it would [have] been detrimental or harmful for my son to see [me] in prison[,] in which the local court granted the recommendation." (Ex. A at 8.) Plaintiff also alleged that this finding was made without " 'hard' 'evidence,' " in violation of New York State laws and regulations. (*Id.* at 8–9.) Plaintiff argued that, "If visitation is not permitted, then the fact that you have not visited with your child 'cannot' be [a] basis for a permanent neglect or abandonment proceeding." (*Id.* at 9.) Plaintiff also alleged that his son was prescribed various medications that had a "severe side effect" and that the Agency prescribed these medications "to distract his focus from me in not allowing him to have any interest to look forward to have a relationship with his father." (*Id.*) Plaintiff accused the Agency of using "their tactics tryin[g] to 'coerce' me to surrender my parental rights to my son" and "coerce my children's mom to surrender her parental rights not only just to my son but also to my daughter as well." (*Id.*) Plaintiff described orders issued by Judge Marilyn Lazarello requiring the Agency to give his letters to his son and directing the Agency to provide Plaintiff with assistance in strengthening his relationship with his son. (*Id.* at 10.) Plaintiff claims that the Agency failed to obey these orders and "the Agency was ... in cahoots with the foster parent

trying to poison my son." (*Id.*) Plaintiff suggested that the Agency "should be 'investigated' " for destroying relationships between other incarcerated individuals and their children by failing to follow court orders. (*Id.* at 11.) Neither the Amended Complaint nor the attached letter indicates Plaintiff's current custody rights as to his son.

 **\*2** Plaintiff also attaches a March 18, 2013 letter from Graham Windham to Plaintiff as an exhibit to the Amended Complaint ("March 18, 2013 letter"). In the March 18, 2013 letter the Agency sought Plaintiff's consent to give Focalin, a psychotropic medicine, to his son. [2] (*Id.* at 12.) The Agency asked Plaintiff to sign a consent form "for the purposes of ... continuing medical treatment" and "consent for psychotropic medication." (*Id.* at 13–14.) A hand-written notation on the letter from the Agency states that, "The Agency never got my consent to put my son on (medication)." (*Id.* at 12.) Plaintiff has also attached to the Amended Complaint a copy of a report documenting a "psychiatric evaluation" of his son conducted in June 2011, which indicates that his son was at that time on Focalin and other medications. [3] (*Id.* at 16.)

Plaintiff responded to the Agency's March 18, 2013 letter by letters dated March 21 and March 25, 2013, opposing medication for his son and requesting that his son's therapist write him a letter explaining how the medication would be in his son's best interests. (*Id.* at 17–20.) Plaintiff also requested a copy of the "2013 'Service Plan.' " [4] (*Id.* at 17.) According to a subsequent Agency "Treatment Plan" for Plaintiff's son dated April 22, 2013, the Agency planned to "[g]et consent from father for medication changes," and to "[s]eek ACS [Administration for Children Services] override if needed." [5] (*Id.* at 21–22.) The Treatment Plan indicates that the "current level of care" for the child was in a "kinship foster home." (*Id.*)

The Amended Complaint and exhibits appear to suggest that Plaintiff is attempting to allege claims for the following actions: (1) an unidentified therapist associated with Graham Windham recommended to an unidentified court that Plaintiff's son not be allowed to visit Plaintiff in prison, without providing detailed explanation for that determination, and such recommendation was adopted by the court; (2) Plaintiff's son was given medication without Plaintiff's consent; (3) unidentified "Agency staff" failed to comply with court orders involving Plaintiff's relationship with his son; (4) "cruel and unusual punishment of parent and child;" and (5) "the Agency" used unspecified tactics to try to coerce Plaintiff to surrender his parental rights.

Plaintiff seeks $1 million in compensatory damages and $1 million in punitive damages, along with injunctive relief to end the alleged forced medication without parental consent and the restoration of his visitation rights. (*Id.* at 6.) By Letter dated November 17, 2013 and addressed to the Clerk of Court, Plaintiff also requested the Court's assistance in securing additional library time to work on his pending action. (Docket Entry No. 9.)

**II. Discussion**

**a. Standard of Review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In reviewing a *pro se* complaint, the court must be mindful that the Plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (internal quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (noting that even after *Twombly,* the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the court must screen "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and, thereafter, "dismiss the complaint, or any portion of the complaint," if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A; *see Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). Similarly, the court is required to dismiss *sua sponte* an *in forma pauperis* action, if the court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Abbas,* 480 F.3d at 639.

**\*3** A plaintiff seeking to bring a lawsuit in federal court must establish that the Court has subject matter jurisdiction over the action. *See, e.g., Monreal v. New York,* 518 F. App'x 11 (2d Cir.2013) (affirming dismissal of *pro se* complaint for failure to establish subject matter jurisdiction); *Zito v. New York City Office of Payroll Admin.,* 514 F. App'x 26, 27 (2d Cir.2013) (same); *Chestnut v. Wells Fargo Bank, N.A.,* No. 11–CV–5369, 2012 WL 1657362, at \* 3 (E.D.N.Y. May 7, 2012) ("Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking."). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte.* If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier,* 211 F.3d 697, 700–01 (2d Cir.2000) (citations omitted). Federal subject matter jurisdiction is available only when a "federal question" is presented, or when plaintiffs and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1331 and § 1332. In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### b. The Court Lacks Subject Matter Jurisdiction

The Court does not have jurisdiction over Plaintiff's application for injunctive relief to restore visitation rights and enforce state court orders. It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *see also United States v. Windsor,* 570 ––– U.S. ––––, ––––, 133 S.Ct. 2675, 2691, 186 L.Ed.2d 808 (2013) ("[S]ubject to [constitutional] guarantees, regulation of domestic relations is an area that has long been regarded as a virtually exclusive province of the States." (citation and internal quotation marks omitted)). "So strong is [the Supreme Court's] deference to state law in this area that [the Supreme Court has] recognized a 'domestic relations exception' that 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.' ' *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (quoting *Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992)); *see also Keane v. Keane,* ––– F. App'x ––––, ––––, 2014 WL 104095, at \*1 (2d Cir. Jan.13, 2014) (stating that the "domestic relations exception to subject matter jurisdiction generally encompasses ... cases involving the issuance of a divorce, alimony, or child custody decree" (citation and internal quotation marks omitted)); *Hernstadt v. Hernstadt,* 373 F.2d 316, 317 (2d Cir.1967) ("Since the very early dicta [of] *In re Burrus,* 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, *a fortiori,* rights of visitation."); *Ashmore v. New York,* No. 12–CV–3032, 2012 WL 2377403, at \* 1–2 (E.D.N.Y. June 25, 2012) ("Federal courts 'lack [ ] jurisdiction to interfere with ... ongoing state court proceedings concerning the custody and care of ... children.' " (alteration in original) (quoting *Abidekun v. N.Y.C. Bd. of Educ.,* No. 94–CV–4308, 1995 WL 228395, at \*1 (E.D.N.Y. Apr.6, 1995))). Therefore, Plaintiff's claim for custodial or visitation rights and any claim seeking the enforcement of family court orders cannot be adjudicated by this Court and must be brought in state court.

**\*4** In addition, to the extent that Plaintiff seeks review of state court decisions and orders, federal court review of those decisions and orders would be barred by the *Rooker–Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *see also Phifer v. City of New York,* 289 F.3d 49, 57 (2d Cir.2002) (*Rooker–Feldman* precludes federal court review of family court proceedings regarding issues of child custody, including issues "inextricably intertwined" with the state court's determinations.). The *Rooker–Feldman* doctrine prohibits federal district courts from reviewing cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp.,* 544 U.S. at 284. This Court may not consider Plaintiff's challenges to past Family Court proceedings related to his custodial rights or visitation.[6] Accordingly, all of Plaintiff's claims for injunctive relief are dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(h)(3).

### c. Plaintiff Has Failed to State a Claim

Plaintiff also seeks damages for violation of his constitutional rights pursuant to 42 U.S.C. § 1983 but

Plaintiff has failed to state a claim upon which relief can be granted. In order to state a § 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999). As the Supreme Court has held, "the under-color-ofstate-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotations omitted). A § 1983 plaintiff seeking to recover money damages must also establish that the named defendant was personally involved in the wrongdoing or misconduct complained of. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (quoting *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676.

Plaintiff has not alleged that any of the named Defendants were acting under color of state law.[7] Moreover, even if the named Defendants were found to be state actors for purposes of § 1983 liability, Plaintiff has failed to state a claim against any of them. The only Defendant named in the body of the Amended Complaint is Jensen, who is described as "the president of Graham Windham Families & Childrens." (Am. Compl. at 5.) Jensen is named in his supervisory capacity. Although it is unclear whether Plaintiff intended to name Jensen in his personal capacity, (*see id.*), Plaintiff has not alleged that Jensen participated in any of the alleged unlawful conduct. No other Defendant is specifically alleged to have participated in any alleged violation of Plaintiff's constitutional rights.

**\*5** Plaintiff also has not clearly identified the nature of the constitutional rights he asserts have been violated. Plaintiff states that his son was forcibly medicated without his consent. However, a personal liberty claim involving forced medication could only be advanced by Plaintiff's son or by someone acting on his son's behalf. As a *pro se* litigant, Plaintiff cannot represent his son in this action. *See Guest v. Hansen,* 603 F.3d 15, 20 (2d Cir.2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."); *KLA v. Windham Se. Supervisory Union,* 348 F. App'x 604, 605–06 (2d Cir.2009) ("Although litigants in federal court have a statutory right to act as their own counsel, 28 U.S.C. § 1654, the statute does not permit 'unlicensed laymen to represent anyone other than themselves.' That prohibition extends to non-lawyer parents seeking to represent their children, and the representation of incompetent adults." (citations omitted)); *Iannaccone v. Law,* 142 F.3d 553, 558 (2d Cir.1998) ( "[B]ecause *pro se* means to appear for one's self, a person may not appear on another person's behalf in the other's cause.... For example, a lay person may not represent a corporation or a partnership or appear on behalf of his or her own minor child."); *see also Barrett v. United States,* 622 F.Supp. 574 (S.D.N.Y.1985) ("[S]ection 1983 civil rights action is a personal suit and may not be brought by a relative, even the parents ... or spouse or children of the individual whose civil rights were violated." (internal quotation marks and citations omitted)). In addition, Plaintiff has not stated whether he currently has legal custody over his son in order to raise a substantive due process claim regarding his right to make medical decisions for his son. Plaintiff has also not stated whether the Administration for Children's Services, Graham Windham, or another entity has temporary or some other form of custody of his son. Finally, Plaintiff's allegation that Graham Windham tried to "coerce" him to surrender his parental rights to his son is too vague to state a claim under the Fourteenth Amendment. Plaintiff has not identified any specific acts or omissions by any of the Defendants, nor has he alleged that he has in fact lost his parental rights or suffered any other constitutional deprivation as a result of these acts or omissions.

Plaintiff's § 1983 claims for damages are therefore dismissed for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) (ii). However, in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to further amend the Amended Complaint to state factual allegations in support of his claim that his civil rights have been violated and to identify the individuals whom he believes to have been responsible for the alleged deprivation of his constitutional rights. Plaintiff must provide specific descriptions of what happened and give a brief description of what each Defendant did or failed to do in violation of

his civil rights, along with the dates of all relevant events. Plaintiff must identify his custodial rights and identify who has temporary legal custody over his son. Plaintiff must also state the current status of any Family Court proceedings related to his custodial claims.

### III. Conclusion

*6 Plaintiff's claims for injunctive relief are dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(h)(3). Plaintiff's § 1983 claims for damages are dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff is granted leave to amend his § 1983 claims for damages. Any amended complaint must be filed within 30 days of the date of this order. The amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this order. Plaintiff must use his son's initials in any correspondence, rather than his son's full name. All documents containing information regarding his son's care that Plaintiff seeks to file with the Court must be filed under seal. If Plaintiff fails to file a second amended complaint, the Amended Complaint will be dismissed. No summonses shall issue at this time, and all further proceedings shall be stayed for 30 days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 905546

Footnotes

1 Citations to pages of the Amended Complaint and attached exhibits refer to the ECF pagination, as the pages are not otherwise consecutively numbered.

2 Because several of the documents submitted by Plaintiff contain the name and birth date of his minor son, the Court sealed the Amended Complaint and exhibits. Plaintiff is advised that pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure, only a minor's initials should be used in all publicly filed documents, and references to birth dates should only include the year of birth.

3 It is unclear whether the psychiatric report was attached to the March 2013 letter from the Agency to Plaintiff as support for the Agency's request that Plaintiff consent to medicating his son with Focalin, or whether Plaintiff is now providing this report to demonstrate that in 2011, prior to the 2013 request from the Agency, his son was prescribed Focalin without Plaintiff's consent. (*See* Ex. A at 12–16.)

4 According to a May 9, 2012 letter from the New York State Office of Children and Family Services ("Children and Family Services") addressed to the Agency ("May 9, 2012 letter"), which Plaintiff attached to the Amended Complaint, Plaintiff has raised concerns regarding the Agency's oversight of his son's care in the past. In the May 9, 2012 letter, Children and Family Services notified the Agency that Plaintiff had written them three letters "identif[ying] several issues that concern his son." (*Id.* at 25.) Children and Family Services requested that the Agency provide them with detailed information addressing Plaintiff's concerns." (*Id.*)

5 The treatment plan listed Defendants Rolando Perez, Deborah Brewer, Alban Boucher, Shannon Greene and Dr. Carmen Veloz as members of Plaintiff's son's "team." (*Id.* at 22.)

6 To the extent Plaintiff has any ongoing Family Court proceedings, this Court abstains from considering any claims related to those proceedings pursuant to *Younger v. Harris,* 401 U.S. 37 (1971). The Second Circuit has held that "*Younger* abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Springfield,* 56 F.3d 391, 393 (2d Cir.1995). New York has an important state interest in caring for children in its temporary custody and in enforcing its courts' orders, and Plaintiff has an opportunity to raise his claims related to his custodial and visitation rights in any ongoing Family Court proceedings.

7 Plaintiff's failure to allege that Defendants acted under color of law also bars his claim that Defendants' actions violated the Eighth Amendment prohibition against cruel and unusual punishment. *See DiPilato v. 7–Eleven, Inc.,* 662 F.Supp.2d 333, 349 (S.D.N.Y.2009) ("In order for liability to attach to defendants for violation[ ] of the ... Eighth Amendment[ ], the defendants must be state actors or their actions must be attributable to the state."); *see also Walker v. Schult,* 717 F.3d 119, 125 (2d Cir.2013) ("[P]rison officials violate the Constitution when they deprive an inmate of his 'basic human needs'

such as food, clothing, medical care, and safe and sanitary living conditions." (citation omitted)); *Samirah v. Sabhnani, 772 F.Supp.2d 437, 449 (E.D.N.Y.2011)* ( "[T]he Eighth Amendment prohibition on cruel and unusual punishment [ ] exclusively proscribe[s] government actions....").

---

**End of Document**   © 2017 Thomson Reuters. No claim to original U.S. Government Works.