UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KIPLIND L. CRUZ

                                        Plaintiff,

                                                                5:17-CV-00510

v.

                                                                (BKS/TWD)

THE STATE OF NEW YORK, et al.,

                                        Defendants.

_____

APPEARANCES:

KIPLIND L. CRUZ
Plaintiff, pro se
5825 Townline Road
Cincinnatus, NY 13040

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

        This matter has been referred to the undersigned by the Hon. Brenda K. Sannes, U.S.

District Judge, for a report and recommendation on the initial review of *pro se* Petitioner/Plaintiff

(hereinafter "Plaintiff") Kipland L. Cruz's motions to amend his complaint and for a temporary

restraining order ("TRO") and preliminary injunction.  (Dkt. Nos. 8, 9 and 11.)  The Court also

has before it the initial review under 28 U.S.C. § 1915(e) of Plaintiff's original filings (Dkt. Nos.

1, 1-1, and 1-2.)  For the reasons explained herein, the Court recommends that (1) none of the

state court proceedings Plaintiff has described in his removal notice and exhibits be deemed to

have been properly removed to, or to be subject to removal to, federal district court[1]; (2) his

_____

[1] Since Plaintiff has acknowledged there are no pending state court proceedings, remand does not appear
to be an option.  (Dkt. No. 1 at 40.)

petition for a writ of habeas corpus be dismissed with prejudice on initial review; (3) his motion

to amend be denied; (4) civil rights complaint be dismissed on initial review; and (5) his motion

for a temporary restraining order and preliminary injunction be denied as moot or, in the

alternative, on the merits.

## I.    BACKGROUND

### A.    Plaintiff's Original Filings

On May 9, 2017, Plaintiff Kipland L. Cruz, individually and on behalf of his two minor

children, submitted for filing by the Clerk a notice of removal to federal court, pursuant to 28

U.S.C. § 1443, and with it a habeas corpus petition under 18 U.S.C. §§ 242, 1512(b)(3), and

1513(b).[2]  The various state court proceedings identified by Plaintiff, and out of which his habeas

corpus petition arises, involve unpaid child support, child custody, and visitation disputes

between Plaintiff and his estranged wife Nicole A. Cruz.  (*See generally* Dkt. Nos. 1; 1-1 at 1-3.[3])

Plaintiff also filed a civil rights complaint brought under  42 U.S.C. §§ 1983, 1985, and

1986.  (Dkt. Nos. 1 and 1-2.)  Plaintiff named nearly seventy defendants whom he presumably

believes to have been involved in matters related, either directly or indirectly, to the subject

matter of the state court proceedings, reports made to the New York State Central Register of

Child Abuse and Maltreatment ("SCR""), or his former employment.  (*See generally* Dkt. No. 1-

2.)  The complaint contains factual allegations similar to those in Plaintiff's removal/habeas

---

[2] Plaintiff also submitted an application for leave to proceed *in forma pauperis* (Dkt. No. 2), which was granted by the Court in its June 13, 2017, Order.  (Dkt. No. 6.)

[3] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

corpus papers.[4]

In addition to his federal civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986, Plaintiff has asserted claims for unfair employment practices and discrimination; claims under the Fair Housing Act, 42 U.S.C. §§ 3602-3631; the Violent Crime Control and Law Enforcement Act, 42 U.S.C. § 14141; and two criminal statutes, 18 U.S.C. §§ 245 (federally protected activities), § 2258 (sexual exploitation of children), and 18 U.S.C. § 3509 (child victims and witnesses rights); and Child Abuse Prevention and Treatment Act ("CAPTA"), 42 U.S.C. §§ 101-105, *et seq*.[5]  (Dkt. No. 1-2 at 16.)  Plaintiff's complaint seeks money damages, along with declaratory and injunctive relief.  *Id*. at 29-31.

### B.    Stay Order

In May of this year, the Clerk sent Plaintiff's notice of removal with habeas petition and civil rights complaint to the Court for initial review pursuant to 28 U.S.C. § 1915(e).  The Court, noting that Plaintiff, who is not an attorney, was impermissibly seeking to represent both his own and the interests of his two minor children in the case, issued an Order finding that initial review was premature and staying the action for ninety days in order to give Plaintiff time to retain counsel to represent the interests of his children.[6]  (Dkt. No. 6 at 6.)  The Order advised Plaintiff

---

[4]  Plaintiff's complaint also contains factual allegations that his minor children were subjected to repeated sexual, mental, and emotional abuse.  (Dkt. No. 1-2 at 15.)  Those allegations will be considered solely to the extent, if at all, they are relevant to claims asserted by Plaintiff solely on his own behalf.

[5]  The applicability of the statutes cited by Plaintiff will be addressed only to the extent, if at all, they are relevant to claims asserted by him solely on his own behalf.

[6]  The only effect of the Court's ninety-day stay Order was to place the Court's initial review of the lawsuit on hold while Plaintiff pursued legal representation for his minor children.  (Dkt. No. 6 at 6.)  The stay did not, as Plaintiff appears to claim in his motion papers, have any impact on the ability of those individuals and entities whom Plaintiff has named as Defendants herein to take action or refrain from taking action, or upon the jurisdiction, orders, or other actions of the New York State courts.  (See Dkt. Nos. 8-3 at 3; 9-1 at ¶ 1.)  Plaintiff's apparent attempted service of summonses and papers to which Defendants would be required to respond was

if the Court did not receive notice by September 11, 2017, that Plaintiff had retained counsel with regard to all claims being pursued on behalf of his minor children, moved for appointment of counsel, or filed an amended notice of removal and amended complaint deleting all claims asserted on behalf of his minor children, it would issue a Report-Recommendation to the assigned District Court judge recommending dismissal of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint without prejudice. *Id.*

## C.     Plaintiff's Failure to Comply with the Court's Stay Order

Plaintiff has failed to comply with the Court's Order regarding counsel for his minor children. (Dkt. No. 6.) He has, however, filed motions to amend and for a TRO and preliminary injunction in which he has omitted his minor children from the caption and has identified himself as "Man-prosecutor." (Dkt. Nos. 8-9, 11.) Therefore, the Court concludes that Plaintiff, whom the Court notes has requested that he be called by his natural name, Beau Jangles,[7] intends to proceed in federal district court solely on his own behalf. As such, the Court will conduct its initial review of Plaintiff's notice of removal, habeas corpus petition, and civil rights complaint under 28 U.S.C. § 1915(e), in conjunction with its review of Plaintiff's motions to amend and for a TRO and preliminary injunction, with the understanding that Plaintiff is appearing solely on his own behalf. It is the express intention of the Court that the recommendations made by it with respect to claims that may relate in some fashion to his minor children have no affect whatsoever on the minor children's right to have those claims properly pursued by them, or by counsel on

premature and unauthorized.

    [7] Plaintiff, who describes himself as an American Patriot, has also filed as a part of his motion for a preliminary injunction, a "Declaration, Proclamation and Reclamation to his natural rights as Son of the Revolution & The Original Republic of 1789," in which he describes his ancestors as having included soldiers in the French and Indian War, the American Revolution, and the Civil War. (Dkt. No. 8-5.)

their behalf, in any other proceeding.

## II.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

28 U.S.C. § 1915(e) directs that when a plaintiff is allowed to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    NOTICE OF REMOVAL AND HABEAS CORPUS PETITION

On May 9, 2017, Plaintiff submitted to the Clerk a petition which he entitled:

5 Day Notice: Petition for Writ of Habeas Corpus in United States

6

> District Court pursuant of 18 USC 1512(b)(3) & 18 U.S.C. §
> 1513(b)[;] 18 USC § 242[;] Defendants Federal Removal from
> State of New York, County of Cortland, Chenango, Onondaga,
> New York State[;] Cortland County Combined Court to US
> District Court pursuant to 28 U.S.C. § 1443[;] State of New York,
> County Court Case # 9788 Docket#v-01361/1362 16/16A file #
> 9788 docket #v01361-16/17B file #9788 docket#v-1361/1362
> 16/17F file #9788 docket # v-1361/1362 16/17F and any other
> unlawfully ordered hearings of cases Federal Removal pursuant of
> 28 U.S.C. § 1443 child abuse cover-up U.S. Code § 241 For
> witness and victim Retaliation, intimidation, public corruption,
> judicial corruption and misconduct, intrusion, unlawful search and
> seizure, harassment, obstruction of Justice, Unlawful Activities,
> slander, perjury, false Statements, violations and denial of movants
> Constitutional I, V, VI & XIV Amendment Rights's, privileges,
> and immunities, Civil Human Universal, International &
> Fundamental

(Dkt. No. 1 at 1-2.)

Plaintiff has named as Respondents in his removal notice and petition for a writ of habeas

corpus the State of New York, Cortland County, Chenango County, Onondaga County, Hon.

William Ames, Hon. Julie Campbell, Chenango and Cortland County Departments of Social

Services, CPS/DSS, Court appointed Law Guardian Ad Litem Natalie Miner, Nicole Cruz, and S.

Francis Williams, attorney for Nicole Cruz.  (Dkt. No. 1 at 1.)  Plaintiff has identified his

grounds for removal to federal district court under 28 U.S.C. § 1443 and for a writ of habeas

corpus as: (1) deprivation of rights under color of law in violation of criminal statute 18 USC §

242; (2) witness and victim retaliation, intimidation, public corruption, judicial corruption and

misconduct, intrusion, unlawful search and seizure, harassment, obstruction of justice, unlawful

activities, slander, perjury, false statements in violation of criminal statutes 18 U.S.C. §§

1512(b)(3) and 1513(b), the United States Constitution Amendments I, V, VI and XIV, and civil

human, universal, international, and fundamental rights.  *Id*. at 4.

**A.      Plaintiff's Affidavit in Support of Removal and his Habeas Corpus Petition**

In an affidavit submitted by Plaintiff in support of his notice of removal and petition for a writ of habeas corpus, he describes a child support proceeding in Chenango County Family Court in which he planned to place a lien and judgment on real property of his estranged wife, Nicole Cruz, that had a pending sale during the spring and summer of 2016.  (Dkt. Nos. 1 at 5-7; 1-1 at 1-4; 8-5 at 2.)  Nicole Cruz owed Plaintiff back child support in the amount of $7,813.97.  *Id*.  In response, Nicole Cruz filed what Plaintiff claims to have been a fraudulent contempt proceeding against him claiming violation of her visitation rights with the couple's minor children.  *(*Dkt. No. 1-1 at 5-8.)

According to Plaintiff, a hearing was held on August 10, 2016, behind closed doors with the Judge and counsel, after which his attorney came out and told him that the Judge had made him an offer that he should accept.  (Dkt. No. 1 at 11.)

Plaintiff's employment with the New York State Education Department was terminated on September 19, 2016, and Plaintiff claims the termination was unlawful.  (Dkt. No. 1 at 32.)  Thereafter, the superintendent and administration at Unadilla Central School began to make false allegations against Plaintiff, his home was broken into and recordings of court hearings were stolen, and he was forced to move to Cayuga County.  *Id*.  at 33.

On October 7, 2016, Plaintiff was advised by his counsel that his former wife had no intention of continuing a relationship with his minor children, and the Judge was forcing the children to go with abusers.  *Id*. at 34.  On December 21, 2016, Plaintiff appeared for a custody hearing in Cortland County Family Court, planning to submit documentary evidence that would result in dismissal of the case.  *Id*. at 37.  Instead, the Judge denied Plaintiff's right to be heard

and appointed a guardian ad litem for the minor children.  (Dkt. No. 1 at 37.)

On January 3, 2017, Plaintiff realized everything was a conspiracy in which his counsel were members, and his minor children were being targeted by Chenango, Cortland, and Onondaga County, and the State of New York.  *Id*. at 38.  The same day he emailed his attorney, demanding that she recuse herself and informing her of his findings of fraud and malpractice.  *Id*. at 39; Dkt. No. 1-1 at 24.  In another email to his attorney the same day, Plaintiff stated that his children had been abused for five years.  (Dkt. No. 1-1 at 24.)

Plaintiff received a January 9, 2017, letter from the Cortland County Department of Social Services informing him that a suspected child abuse or maltreatment report against him had been received by the SCR.  (Dkt. Nos. 1 at 39; 1-1 at 27-28.)  From that point forward, Plaintiff has constantly received summonses for preliminary conferences held by a clerk or county attorney in the Judge's chambers, with a woman named J. Kuhn impersonating Nicole Cruz at the hearings.  *Id.* at 40.

On March 30, 2017, Plaintiff tried to serve a federal removal notice on Cortland County Family Court but was told he could not serve it because he had no case in the court.  *Id*. at 41.  On April 5, 2017, the Cortland County Family Court Judge dismissed all petitions.  *Id*.  Plaintiff claims retaliation against him and his children by the Cortland County Sheriff, Cortland County DSS/CPS, and the Cortland County Family Court since he served removal papers.  *Id.* at 43.  According to Plaintiff, they have ignored his removal notice.  *Id*.

## B.    Removal

Plaintiff seeks to remove Cortland County Family Court proceedings involving child support, custody, and visitation, which Plaintiff has stated are no longer be pending (*see* Dkt. No.

1 at 41), to federal district court pursuant to 28 U.S.C. § 1443, which provides that:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > **(1)** Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;
>
> > **(2)** For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

28 U.S.C. § 1443.

28 U.S.C. § 1446(a) provides that "a defendant . . . shall file in the district court . . . a notice of removal containing a short and plain statement of the grounds for removal, with a copy of all process, pleadings, and orders served upon such defendant." 28 U.S.C. § 1446. Plaintiff's notice of removal identifies two state court proceedings    his petition for child support and Nicole Cruz's petition to hold Plaintiff in contempt for violating a visitation order. (Dkt. Nos. 1 at 5-6; 1-1 at 1-8.) Plaintiff has also submitted documentation regarding a custody/visitation proceeding commenced by Nicole Cruz in Cortland County Family Court, FF No. 9788, Dkt. No. V-01361/132-16/16A, for enforcement of a preliminary conference agreement reached on August 10, 2016, in connection with the proceeding referenced in the notice of removal. (Dkt. No. 1-1 at 35-42.)

### 1.    No Action or Proceeding is Pending in State Court

Under the clear language of § 1443, a state court action must be pending in order for the provision to apply. *See, e.g., Nuccio v. Heyd*, 299 F. Supp. 939, 940 (E.D. La. 1969) (there must

exist either a civil action or criminal prosecution to invoke federal jurisdiction under § 1443; otherwise there is nothing to remove).  Plaintiff has stated in his affidavit that the Cortland County Family Court Judge dismissed all state court petitions on April 5, 2017.  (Dkt. No. 1 at 40.)  Documentation submitted by Plaintiff shows that Nicole Cruz's petition in FF No. 9788 was dismissed by the Family Court Judge on April 5, 2017.  (Dkt. No. 1-1 at 36-37.)  Therefore, by Plaintiff's own admission, there is no federal removal jurisdiction under § 1443.

Furthermore, even if the child support proceeding against Nicole Cruz were still pending, as petitioner in that proceeding, Plaintiff lacks authority to remove the proceeding to federal district court under the applicable federal removal statutes.  *See* 28 U.S.C. §§1441(a), (b); 1443(a); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (no section in the removal statutes provides for removal by a plaintiff).

### 2. The Court is Without Removal Jurisdiction under 28 U.S.C. § 1443

Even if Nicole Cruz's visitation contempt and custody/visitation proceedings were presently pending in state court, Plaintiff has failed to show the state court proceedings are subject to removal under § 1443.[8]  In *Georgia v. Rachel*, 384 U.S. 780, 792 (1966), the Supreme Court concluded that the phrase "'any law providing for . . . equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality."  *See also Chestnut v. People of State, N.Y.*, 370 F.2d 1, 3-4 (2d Cir. 1966) (only due process and equal

---

[8]  Plaintiff's notice of removal also appears to be untimely since it was filed more than thirty-days after he received the petitions in the contempt and custody/visitation proceedings.  *See* 28 U.S.C. § 1446(b).  However, because the thirty-day requirement, while mandatory, is procedural rather than jurisdictional, and can be waived by the plaintiff/petitioner in the state court action, the Court finds that Plaintiff's failure to file a timely notice of removal does not provide grounds for *sua sponte* dismissal on initial review.  *See Flood v. CSX Transp., Inc.*, No. 11-CV-162S (WMS), 2012 WL 464189, at * 2 (W.D.N.Y. Feb. 13, 2012) (while the thirty-day time limit under § 1446(b) is mandatory, failure to adhere to it constitutes a procedural rather than a jurisdictional defect) (citing *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005)).

protection claims which specifically involve racial equality can support a valid claim for removal under § 1443(1)).

Plaintiff has not alleged the violation of his civil rights based on race as a ground for removal under § 1443, nor has he identified himself as a member of a racial minority.  (*See generally* Dkt No. 1.)  Furthermore, Plaintiff is identified in SCR records as "White."  (Dkt. No. 8-10 at 7.)  Therefore, the Court finds Plaintiff has failed to make a plausible showing that removal is available under § 1443(1).

Removal is likewise unavailable under §1443(2).  In *People of State of N.Y. v. Galamison*, 342 F.2d 255, 264 (2d Cir. 1965), the Second Circuit described the phrase "color of authority" in §1443(2) as "primarily aimed" at "acts of officers or quasi-officers," and concluded it was necessary that the party seeking removal not be "relying on a general constitutional guarantee but on a special statute or order telling him to act."  *Id*.  The Court determined that "[a] private person claiming the benefit of §1443(2) can stand no better; he must point to some law that directs or encourages him to act in a certain manner, not merely to a generalized constitutional provision that will give him a defense or to an equally general statute that may impose civil or criminal liability on persons interfering with him."  *Id*.  Plaintiff has failed to point to any law directing or encouraging him to act in a certain manner with regard to his estranged wife's visitation contempt or custody/visitation proceedings which he seeks to remove to federal court.

The "refusal to act clause" of  §1443(2) is available "to state officers, and those acting

with or for them including local and municipal officers."[9]  *White v. Wellington*, 627 F.2d 582,

585 (2d Cir. 1980); *see also Wells Fargo Bank, N.A. v. Stephens*, No. 3:14-cv-1982 (VLB), 2015

WL 6551782, at *3 (D. Conn. Oct. 29, 2015)[10] (citing *White*, 627 F.2d at 585).  Plaintiff has not

alleged facts plausibly showing that he is a state officer or that he was or is acting with or for

state actors in connection with the proceedings on which he seeks removal.

 3. The Domestic Relations Exception Would Divest the Court of Subject
 Matter Jurisdiction in Any Event

 In *Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890), the Supreme Court held that "the whole

subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the

State and not to the laws of the United States."  A century later, in *Ankenbrandt v. Richards*, 504

U.S. 689, 703 (1992), the Supreme Court reaffirmed what had become known as "the domestic

relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce,

alimony, and child custody decrees."

 Claims involving child custody, support, and visitation brought in federal district court in

this Circuit have regularly been dismissed for lack of subject matter jurisdiction based on the

domestic relations exception to federal jurisdiction.  *See, e.g., Sobel v. Prudenti*, 25 F. Supp.3d

340 (E.D.N.Y. 2014) (federal district court without jurisdiction to hear child support claims);

*Neustein v. Orbach*, 732 F. Supp. 333, 339 (E.D.N.Y. 1990) (action barred by domestic relations

exception if, "in resolving the issues presented, the federal court becomes embroiled in factual

---

 [9]  In *White v. Wellington*, 627 F.2d 582, 585 n.4 (2d Cir. 1980), the Second Circuit opined
that the statutory language would also allow removal by federal officials.

 [10]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with
*LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

disputes concerning custody and visitation . . .").  Courts have relied on the domestic relations

exception to dismiss complaints and petitions removed to federal court under 28 U.S.C. § 1443

for lack of subject matter jurisdiction on initial review under 28 U.S.C. § 1915(e).  *See, e.g.*,

*Steele v. Steele*, No. 1:12-cv-439 (KLL), 2012 WL 3061028 (S.D. Ohio July 3, 2012) (dismissal

on initial review on removal dealing with dispute over child support and custody in state court

domestic relations proceeding). It is clear that even if there were a pending state court proceeding

subject to removal jurisdiction under 28 U.S.C. § 1443, the district court would be without

subject matter over claims related to custody, child support, and visitation under the domestic

relations exception.[11]

       Based upon the foregoing, the Court recommends that none of the state court proceedings

Plaintiff has described in his removal notice or with respect to which he has submitted

documentation be deemed to have been properly removed to, or to be subject to removal to

federal district court.

       **C.      Habeas Corpus Petition**

       Plaintiff has filed his writ for a petition for habeas corpus under 18 U.S.C. §§ 242, 1512

(b)(3), and 1513(b).  All three are criminal statutes.  Section 242 is for criminal deprivation of

rights under color of law.  Section 1512(b)(3) is for hindering, delaying, or preventing

communication to a law enforcement officer or federal judge relating to the possible commission

of a federal offense or violation of conditions of probation, supervised release, parole, or release

---

       [11]  The papers do not provide the Court with sufficient information to determine on initial review whether
the *Younger* abstention, (*see Younger v. Harris*, 401 U.S. 37, 53-54 (1971), or *Rooker Feldman* doctrines apply to
Plaintiff's filings.  *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (federal courts may
not sit in direct review of state court judgments unless directly authorized by Congress).

pending judicial proceedings.  Section 1513(b) is for "knowingly engag[ing] in any conduct and thereby caus[ing] bodily injury to another person or damages to the tangible property of another person, or threaten[ing] to do so, with the intent to retaliate against a person for    (1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in any official proceeding; or (2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer.")  18 U.S.C. § 1513.

None of the three criminal statutes provides a private right of action.  *See Weinstein v. City of New York*, No. 13 Civ. 06301 (LGS), 2014 WL 2991000, at *4 (S.D.N.Y. April 8, 2014) (collecting cases).  Nor has the Court found any legal support for seeking a writ of habeas corpus under any of the criminal statutes.  Furthermore, the Supreme Court long ago held that a habeas petition under 28 U.S.C. § 2254 could not be used to collaterally attack a state decree awarding child custody.  *Lehman v. Lycoming Co. Children's Services Agency*, 458 U.S. 502, 515-16 (1982); *see also Woolsey on behalf of R.M.R. v. Mitzel*, No. 1:17-CV-0074 (TJM/DEP), 2017 WL 2241527, at *2 (N.D.N.Y. Feb. 27, 2017) ("It is well established that a petitioner for habeas relief pursuant to section 2254 is not an appropriate vehicle for challenging a child custody determination.") (citing *Davis v. Baldwin*, 594 F. App'x. 49, 50 (2d Cir. 2015)).

The Court, therefore, recommends that Plaintiff's petition for a writ of habeas corpus be dismissed with prejudice.

## IV.    PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Plaintiff has filed a civil rights complaint under 42 U.S.C. §§ 1983, 1985, and 1986 with

his notice of removal and habeas corpus petition.  (Dkt. No. 1-2.)  As noted above, the Court's

initial review of Plaintiff's complaint presumes he is proceeding solely on his own behalf.

> ### A.    Named Defendants in Plaintiff's Complaint, Including Parties added in Joinder and as Necessary Parties

Plaintiff's complaint names nearly seventy Defendants including those named in the

caption and those identified as "required parties in joinder."  (Dkt. No. 1-2 at 1-5.)  Party

Defendants named in the caption of Plaintiff's complaint include:

> Chenango, Cortland, Onondaga Counties, the State of New York &
> the following additional defendants in joinder: Hon. Kevin M.
> Dowd, Chenango County Supreme Court; Hon. Steven M.
> Dunshee, Chenango County Support Magistrate; Joseph McBride,
> District Attorney; Steven M. Dunshee, Chenango County First
> Assistant District Attorney; Chenango County Public Defender;
> Sabrina Dier   Public Defenders Office; James Taylor, Esq.; James
> H. Fertig, Esq., Court appointed Guardian ad Litem; Chenango
> County Sheriff's Office; Ernest R. Cutting, Sheriff; Joe Warren
> owner of Lakeside Rentals - landlord; Ben Bergman part owner of
> Jackson Bergman LLP; Alyssa Cogden, Jackson Bergman LLP;
> Hon. William Ames; Kristen Monroe, Commissioner Cortland
> County DDS; David K. Knickerbocker, Director of Administrative
> Services, Cortland County DDS; Cortland County CPS; Melissa
> Archer, CPS; Colin [CPS], Supervisor Cortland County Child
> Advocacy Center; Jane Doe, Cortland County; 2 Cortland County
> Officer John Does; S. Francis Williams, Esq.; Cincinnatus CSD -
> Board of Education; Thomas Durkot, Elementary Principal; Cathy
> Aitchison LCSW, Cincinnatus CSD; Carnitra White, County
> Director of Human Resources at Anne Arundel CSCU, City of
> Annapolis, State of Maryland; Nicole Cruz, Broward County,
> Davie, State of Florida.

(Dkt. No. 1-2 at 1-2.)  The following Defendants have been joined by Plaintiff as necessary

defendants:

> Brian J. Doliver, Second Ward Alderman; Detective John Fern;
> Sheila J. Poole, Acting Commissioner NYS Central Register
> OFCS; Sarah Simon, Regional Director of Child Welfare Services;

> Betty Osborne, Commissioner, Cathy Lavoli, Supervisor, Beth
> Beers, and CPS Patricia Luca, Chenango County DSS; Sarah
> Fitzpatrick, Esq., Chenango County DSS; Irene A. Flores, Esq.;
> DCMOBOCES Board of Education Superintendent Doreen Rowe,
> Deputy Superintendent Kim Corcoran, District School Lunch
> Director, Connie Bambino, Asst. District School Lunch Director,
> Pam Rowe, School Lunch Cook; City of Norwich Fire Department,
> Terry Kuhn; Johanna Kuhn, City of Norwich Police Department;
> Chief Joseph Angelino; Sergeant John Doe; Norwich Central
> School District Board of Education President Joseph McBride,
> Vice-President Tom Sutton, and member Howie Sullivan; Gerrard
> O'Sullivan Superintendent; Karrie Stainbauer Director of Special
> Education; Nicole A. Cruz, Special Education Teacher; Christine
> Bienick, NYSUT President, Unadilla Valley Teacher Assoc.; Dr.
> Alfred Barnes; Unadilla Valley Central School District Board of
> Education President Kristen Romavicz, Vice-President Mark
> Davis, Vicky Gregory, Kim Murray, and Robert Mackey;
> Superintendent Mike Brown; Business Official Frank Johnson;
> Building Principal Chris Harper; Elementary Principal Sherri
> Houck; Elementary School Counselor; Chris Wilkinson, Labor
> Negotiations; and Mike Lyn, Regional President.

(Dkt. No. 1-2 at 3-5.)

Another group of defendants added in joinder include Cortland County Sheriff's

Department; Hon. Julie Campbell, Cortland County Family Court; three Jane Doe Cortland

County Family Court Clerks; and four John Doe officers. *Id*. at 6.

**B**.    **Factual Allegations in the Complaint**

The factual allegations in Plaintiff's complaint and his claims for relief arise in

substantial part out of the child support, custody, and visitation disputes between the Plaintiff and

Nicole Cruz. (*See generally* Dkt. No. 1-2.) Reference is also made to both Nicole Cruz and the

Plaintiff having been made the subject of reports of child abuse or maltreatment received by the

SCR. *Id*. at 12; Dkt. No. 1-1 at 27-28. In addition, there are references in the complaint to the

transfer and subsequent termination of Plaintiff's employment. (Dkt. No. 1-2 at 13-14.)

17

Plaintiff has made specific factual allegations against a mere fraction of the Defendants named by him in his original complaint. They include the following.

1.    Defendants Nicole Cruz, Terry Kuhn, and Johanna Kuhn

Plaintiff alleges that beginning in June 2012, he and estranged wife Nicole were in the process of starting a business in the City of Norwich and were approved for loans from the City and Chamber of Commerce. (Dkt. No. 1-2 at 10-11.) Plaintiff claims that Terry Kuhn, acting out of power and jealousy, along with his wife Johanna Kuhn, forced Nicole to force Plaintiff from his home and to default on the loans and a business Plaintiff and Nicole were buying. *Id.* at 11. A short time later, Terry Kuhn, through the abuse of his power as a local firefighter, conspired with his friends at the Chenango County Sheriff's office and buddy Frank Revoir and conjured up baseless false statements about Plaintiff. *Id*. at 11-12. Terry Kuhn also allegedly has the Chenango County Sheriff's Department and the court in his pocket. *Id*. at 19.

The alleged conspiracy caused a temporary order for protection to be issued against Plaintiff, who received no due process, not even a hearing. *Id*. at 12. Plaintiff was required to pick his children up at the police department for three years while one of the Kuhns was president of the Union, and he was harassed and discriminated against the entire time. *Id*. From December 2012 to the present, Nicole Cruz had three indicated reports of child abuse and two indicated reports for child maltreatment. *Id*. Copies were given to Plaintiff by Defendant Sheila Poole, Acting Commissioner of the New York State Office of Children and Family Services ("OCFS"). *Id*.

Plaintiff alleges that Nicole Cruz fled the State in July 2016 in the middle of a child abuse trial, owing Plaintiff over $8,000 in back child support since October 2015. *Id*. at 13. On August

of 2016, Plaintiff learned that Nicole had moved to North Carolina.  (Dkt. No. 1-2 at 13.)

Plaintiff has also alleged:

> 18.    Complainant(s) have been subjected to and have witnessed as well as fell subject to multiple crimes and actions committed by the defendants, including crimes committed and against minor children under the ages of 5 years old. The Complainants minor children were victims of repeated sexual abuse, mental and emotional abuse, and child maltreatment by N. Cruz an elementary Special Education teacher, abused the oldest Minor Child while on duty at work in the School, Johanna Kuhn, Terry Kuhn City of Norwich Paid Fireman, and from (sic) I been told the President of the Union for the Fireman and Police officers, see NYS Registry case # the defendants have committed multiple federal felonies and misdemeanor crimes and actions committed against the complainant.

> 19.    The complainant alleges that the defendants Nicole A. Cruz, Johanna Kuhn and Terry Kuhn, recently have committed Multiple federal crimes including HUD Fraud, mail fraud, recent S. Francis Williams Esq., and Johanna posing as N. Cruz, (I have documentary evidence and eye witnesses to this crime False Impersonation in Cortland County Family Court), falsifying government documents, perjury libel in writing on court documents, Multiple at least 40 counts of False information and Hoaxes placed against the complainant, child abuse, child exploitation, public corruption, Unlawful transfer and Unlawful termination of the complainants tenure position with the NYSED, and conspiracy with 5 counties, 4 in the State of NY and 1 in the State of Maryland.

(Dkt. No. 1-2 at 14-16.)

Plaintiff further alleged that "Nicole Cruz appeared before Chenango County Court and Hon. Kevin M. Dowd in violation of a federal Felony owing the complainants over $8,000 in back non-paid child support, and also had fled the state in the middle of a child abuse custody trial, this abuse was repeated sexual abuse . . ."  *Id*. at 20.

19

2.    Chenango County Sheriff's Department

Plaintiff alleges that members of the Chenango County Sheriff's Department conspired

with Terry Kuhn to conjure up baseless false statements against Plaintiff.  (Dkt. No. 1-2 at 11.)

Plaintiff also alleges that Terry Kuhn has the Chenango County Sheriff's Department in his

pocket.  *Id*. at 19.

3.    Hon. Kevin M. Dowd, New York State Supreme Court Justice, Chenango
County

Plaintiff alleges that after purposefully postponing a custody trial between Plaintiff and

Nicole Cruz for over a year, during which time Nicole fled the State, Judge Dowd held a

"surprise" initial appearance "that apparently overruled the complaints (sic) due process

mandated by the congressional act of  CAPTA Act of 2010 and the Adam Walsh Act 2006."

(Dkt. No. 1-2 at 13.)  Plaintiff claims that he was deprived of the opportunity to be heard and call

witnesses, and that Judge Dowd, who met with counsel behind closed doors for almost an hour,

then told Plaintiff that Nicole had moved and explained an offer being made to Plaintiff.  *Id.*

Plaintiff also alleges that Judge Dowd had his brother-in-law and his assistant pay a staff

member at the Public Defender's Office to impersonate a child care provider at a non-profit

childcare center paid for by Plaintiff without financial assistance from his estranged wife.  *Id*. at

19.  In addition, Plaintiff contends that Judge Dowd's order, received by Plaintiff via email fifty-

nine days after the hearing, was completely illegal and unconstitutional, and that Judge Dowd is

in contempt and in violation of an act of Congress as well as international law and treaties.  *Id*. at

20.  Plaintiff claims that Judge Dowd's order is null and void under the Supremacy Clause,

Cannon Law, and the Fourteenth Amendment, and that Judge Dowd became a witness and

denied Plaintiff his rights under the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth,

Tenth, and Fourteenth Amendments continuously, and purposely, and engaged in a completely

premeditated action with malice.  (Dkt. No. 1-2 at 21.)

### 4.    Hon. William Ames, Cortland County Family Court

In the affidavit in support of his notice of removal and habeas corpus petition, Plaintiff

stated that certain petitions had been transferred to Cortland County Family Court, and Plaintiff

reported for a hearing before Judge Ames on December 21, 2016.  (Dkt. No. 1 at 37.)  The sole

allegation regarding Judge Ames in Plaintiff's civil rights complaint is that:

> The complainant appeared before the Hon. Ames at Cortland County Family
> Court locked and loaded with enough documentation to tear the Court house
> down, the complainant aske (sic) Honorary W. Ames to be herd (sic) at this very
> hearing, my 1st amendment right as a US Citizen, not to mention Son of the
> Revolution.  The Complainant explained clearly and sternly that he had the
> documentation to have the petition dismissed on the ground of documentary
> defense, not to mention the defendant N. Cruz petition also lacks validity nor
> executes any claim.  Hon. W. Ames denied the complainants right to be heard as
> well as right as a pro se litigant, Hon. Ames is also guilty of misappropriate of
> Federal funds by hiring a Law Guardian for an act of fraud and conspiracy.

(Dkt. No. 1-2 at 20.)

### 5.    Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's counsel in the Family Court proceedings

involving child support and visitation issues.  (*See* Dkt. No. 1 at 38.)  In his civil rights

complaint, Plaintiff appears to allege that Williams appeared in Cortland County Family Court

with Johanna Kuhn posing as Nicole Cruz.  (Dkt. No. 1-2 at 15.)

Attorney James Taylor, Esq. was Plaintiff's counsel prior to April 2016.  (Dkt. No. 1 at

40.)   In his civil rights complaint, Plaintiff alleges that Judge Dowd had his brother-in-law, the

Chenango County Public Defender, and his assistant, an associate of Taylor, pay a staff member

at the Public Defender's Office "to impersonate a child care provider at a non-profit childcare

center" paid for by Plaintiff.  (Dkt. No. 1-2 at 19.)

Attorney James Fertig was appointed as Guardian ad Litem for Plaintiff's children in

connection with the child support and visitation proceedings.  (Dkt. Nos. 1 at 6; 1-2 at 1.)   In his

civil rights complaint, Plaintiff alleges that Fertig, as law guardian, engaged in misconduct and

malpractice by: (1) violating the Child Abuse Prevention and Treatment Act ("CAPTA), 42

U.S.C. §§ 5101-5106, thereby denying Plaintiff due process and several other privileges, rights,

services and protections under the Act; and (2) violating 18 U.S.C. § 3509, and the Sex Offender

Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911 *et seq*., transferred to 34

U.S.C. § 20911 (eff. September 1, 2017), thereby denying Plaintiff the services and privileges he

deserved.  (Dkt. No. 1-2 at 21-22.)

6.    Sheila Poole, Acting Commissioner of OCFS

Plaintiff has alleged that Sheila Poole, the Acting Commissioner of the OCFS (Dkt. No.

1-2 at 4), released three indicated reports of child abuse and two indicated reports of child

maltreatment, including sealed reports, from December 2012 to the present to Plaintiff.  *Id*. at 12.

7.    Chenango County Department of Social Services

It is not clear from Plaintiff's complaint that he named the Chenango County Department

of Social Services ("Chenango County DSS") as a Defendant.  He has, however, named

Chenango County.  (Dkt. No. 1-2 at 4.)

Plaintiff alleges that the Chenango County DSS and CPS (1) violated CAPTA, thereby

denying Plaintiff due process and several other privileges, rights, services and protections under

the Act by failing to prosecute defendants; and (2) violated 18 U.S.C. § 3509 and  34 U.S.C. §

20911, *et seq.*, formerly 42 U.S.C. §§ 16911 *et seq.*, thereby denying Plaintiff the protection,

safety, services, and privileges he deserved by failing to prosecute defendants.  (Dkt. No. 1-2 at

21-22.)

        8.    <u>Cortland County Department of Social Services, Commissioner Kristen<br>Monroe, and Director of Administrative Services David Knickerbocker</u>

It is also not clear from Plaintiff's complaint that he named the Cortland County

Department of Social Services ("Cortland County DSS") as a Defendant.  He did, however, name

Kristen Monroe, Commissioner; David Knickerbocker, Director of Administrative Services; and

employees in CPS.  (Dkt. No. 1-2 at 2, 5.)  Plaintiff alleges that Commissioner Monroe and

Knickerbocker tried to trick and then force Plaintiff to rent Monroe's parents' house and stole

$1000 from Plaintiff's grandmother, who last he knew was left in a home with no shower or

means to take one.  (Dkt. No. 1-2 at 2, 19.)

Plaintiff also alleges that the Cortland County DSS and CPS, which is within the

Department: (1) violated CAPTA, thereby denying Plaintiff due process and several other

privileges, rights, services and protections under the Act by failing to prosecute defendants; and

(2) violated 18 U.S.C. § 3509 and 34 U.S.C. § 20911, *et seq.*, formerly cited at 42 U.S.C. §§

16911, *et seq.*, thereby denying Plaintiff the protection, safety, services and privileges he

deserved by failing to prosecute defendants.  *Id.* at 21-22.

        9.    <u>DCMO BOCES and Unadilla Valley Central School District</u>

Plaintiff alleges that he was illegally transferred from DCMO BOCES to Unadilla Valley

Central School District ("Unadilla").   Plaintiff's employment at Unadilla was terminated

effective October 3, 2016. (Dkt. No. 1-1 at 15.) Plaintiff alleges that the termination was

unlawful, and that he was denied tenure and rights under the Taylor Law, and section 75. (Dkt.

No. 1-2 at 13.)

Plaintiff's complaint includes no factual allegations against named Defendants Mike Lyn

or Lynch, Unadilla Principal Chris Harper, Superintendent Robert Mackey, Business Officer

Mike Brown, Food Service Director Kim Corcoran, and Cook Manager Pamela Rowe. In his

affidavit in support of his notice of removal and petition for habeas corpus, Plaintiff states that

when he was illegally transferred to Unadilla, he was stripped of his benefits and forced to fill

two full time management positions at Unadilla while he had custody of his children. (Dkt. No.

1 at 33.) Plaintiff also claims that following his termination, Superintendent Robert Mackey,

named as a Defendant, and unidentified members of the administration at Unadilla, began to

make false allegations against Plaintiff. *Id*.

Furthermore, in his motion papers on his motion for a TRO and preliminary injunction,

Plaintiff claims that Lyn or Lynch was involved in denying Plaintiff a hearing, tenure, and section

75 rights. (Dkt. No. 8-7 at 8.) Plaintiff also claims that he was subjected to involuntary servitude

and peonage, purposefully harassed at work, and bullied by Harper, Mackey, Brown, Corcoran,

and Rowe. *Id*.

### 10.    Conspiracy

Plaintiff alleges in conclusory fashion that Defendants acted in a premeditated conspiracy

for the one objective of covering up the sexual abuse by an elementary school special education

teacher somehow connected to Terry and Johanna Kuhn. (Dkt. No. 1-2 at 23.) Plaintiff has

identified the membership in the conspiracy as follows:

24

> The Defendants constructed a conspiracy, this conspiracy was premeditated, and it was 5 counties wide, including the total of three states, 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD. City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem, my own Self hired attorneys, with constant ex parte all attorney's communication with the judges, Hon. Dowd and Hon. Dunshee. Defendants continually denied the complainant(s) (sic) rights.

*Id*. Plaintiff alleges that the conspirators are "guilty of intentionally interfering, denying, absolutely stripping the complainant of [his] Constitutional privileges, rights, and protections, and did so with malice. The complainant[ ]'s 1st, 2nd, 4th , 5th, 6th 8th, 9th, 10th, 13th (sec. 1) and 14th (equal protection of the law)." (Dkt. No. 1-2 at 23-24.)

## C.    Claims and Relief Requested

Plaintiff has identified "actions" against the Defendants under: (1) 42 U.S.C. § 1983 civil action for deprivation of rights, including violation of Amendments 1, 4-8, 10, and 14 to the Constitution; (2) 42 U.S.C. § 1985 (1)-(3) for conspiracy to interfere with civil rights; (3) 42 U.S.C. § 1986 for neglect to prevent action; (4) 42 U.S.C. § 3631 for criminal interference with right to fair housing; (5) 18 U.S.C. § 245 federally protected activities; (6) 42 U.S.C. § 14141 for pattern and practice; and (7) 18 U.S.C. § 2258 for failure to report child abuse.[12]  (Dkt. No. 1-2 at

---

[12] There is no private right of action under 42 U.S.C. § 3631 (*see DeSouza v. Taiman*, No. 3:16-cv-00490 (MPS), 2017 WL 3444672, at *6 (D. Conn. Aug. 10, 2017) (collecting cases)); 42 U.S.C. § 14141 (*see Miller v. Carpinello*, No. 06 CV 12940 (LAP), 2007 WL 4207282, at *5 (S.D.N.Y. Nov. 20, 2007)); 18 U.S.C. § 245 (*see, Gunter v. Long Island Power Auth/Keyspan*, No. 08 CV 498 (RRM) (LB), 2011 WL 1225791, at *11 (E.D.N.Y. Feb. 15, 2011)); or 18 U.S.C. § 2258.  *See Davis v. City of New Haven*, No. 3:11cv1829 (JBA), 2014 WL 1315660, at *5-6 (D. Con. March 30, 2014).

16.)  Plaintiff also claims to have been the victim of sex discrimination in his employment and to have filed a complaint with the New York State Division of Human Rights.  (Dkt. No. 1-2 at 17, 29.)

Plaintiff seeks monetary damages for sex discrimination; defamation; retaliation and prevention of his business venture in Norwich; loss of tier 4 State retirement benefits; loss of family and loved ones; destruction of social relationships, friendships, and his family relationship; unlawful labor practices; unlawful termination; disruption of the parent child relationship; past, present, and future medical expenses, court and attorney's fees; and the cost of providing a nanny for the children until age eighteen.  *Id*. at 30.  Plaintiff also seeks damages in the amount of $60,000,000, with the ability to seize retirement and properties for illegal actions. *Id*.

In addition, Plaintiff seeks appropriate injunctive and declaratory relief in his complaint. *Id*.

## V.    MOTION TO AMEND

Prior to the Court's initial review of his original filings under 28 U.S.C. § 1915(e), Plaintiff submitted to the Clerk an ex parte motion to amend.  On September 11, 2017, Plaintiff filed a "Motion to Amend due to failure to comply By the State of New York, *et al."*  (Dkt. No. 9 at 1.)  Plaintiff's request to amend his complaint arises out of: (1) New York State's stonewalling his request under the State Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90, his appeals, and his requests for crucial information necessary to amend his complaint; (2) the Defendants/Respondents' failure to return a waiver of service of the summons, object to removal, seek remand, file an answer, file Plaintiff's requests, file any motions; and (3) an unidentified

Defendant's actions in exceeding his or her jurisdiction by repeatedly and irreparably injuring Plaintiff, unlawfully kidnaping his children, and seizing his property. *Id* at 2.

Plaintiff also filed a document entitled "Motion to Amend State Action for violation of a man's I, IV, V, XIV, VI amendments of the US constitution, 42 U.S.C. 1983." (Dkt. No. 9-1.) In the motion, Plaintiff has added as Defendants New York State Governor Andrew Cuomo; Attorney General Eric Schneiderman; Cortland County Sheriff Mark E. Helms; Budd Rigg, Cortland County Undersheriff; Captain Robert Derkson; Sgt. Paul Knapp; and Jane Doe, Deputy. *Id*. at 1. Plaintiff alleges in what he has identified as a "complaint" in the motion to amend that he has served three notices, three requests for waiver of summons, electronic and certified mailings to all of the Defendants in the action, and that because this Court ordered a stay "this means ALL matters pursuant of the case, if this court Cortland County Family Court or Chenango County Family Court or either County department of Social Services Proceed any further in any more unlawful and fraudulent actions against the complainant the complainant will take this matter to the United States Attorney's Office Immediately proceeds any further this will be yet another trespass on the complainant and his people." (Dkt. No. 9-1 at 2.)

Plaintiff also alleges that the Defendants have all been served with FOIL requests and requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as well as the complaint, and that State has stonewalled his FOIL requests and is engaged in a conspiracy to cover up the abuse of his children by a special education teacher and a Norwich fireman in violation of the Federal Child Kidnaping laws.[13] *Id*. at 3.

---

[13] In his complaint, Plaintiff identifies the abuser of his children as N. Cruz. (Dkt. No. 1-2 at 14-16.) However, because Plaintiff never specifically identifies the alleged abuser as his estranged wife, Nicole Cruz, the Court is uncertain as to whether that is the case.

## VI.     MOTION FOR A TRO AND PRELIMINARY INJUNCTION

On September 11, 2017, Plaintiff submitted to the Clerk a "Motion for Verbal Argument

and ORDER to Show Cause, before Honorable Daniel J. Stewart . . . for Preliminary ORDER

and Judgement RULE 72   Pretrial Order."[14]  (Dkt. No. 8.)  Included among Plaintiff's

submissions in support of his motion for a TRO and preliminary injunction are: (1) Table of

Authorities with father's rights case law (Dkt. No. 8-1); (2) Table of Authorities with case law

involving removal of children from the home (Dkt. No. 8-2); (3) "DEMANDANTS DEMAND

WRIT OF QUO WARRANTO DEMAND TO VACATE CPLR 5015(a)(4)," in which Plaintiff

demands that Respondents vacate and dismiss immediately any New York State matters for lack

of subject matter jurisdiction pursuant to CPLR 5015(a)(4) (Dkt. No. 8-3); (4) "NOTICE: Ex

parte Motion for Order to Show Cause for a Writ of Mandamus for Writ of Habeas Corpus; Ex

Parte motion for Order to Show Cause for Writ of Mandamus; Order to Show Cause for

preliminary injunction and Temporary Restraining order; prayer for remedies for irreparable

harm pursuant to Invidious Gender Discrimination, 18 U.S. Code § 1201, Kidnaping, 18 U.S.

Code § 242   Deprivation of rights under color of law, and 18 U.S. Code § 241    Conspiracy

against rights (RUL 72   Pretrial Order)" (Dkt. No. 8-4); (5) Plaintiff's "Declaration,

Proclamation and Reclamation to His natural rights as Son of the revolution & The Original

Republic of 1789" (Dkt. No. 8-5); (6) "Written Objections to Chenango and Cortland County

Family Court for Lack of Subject Matter & Personal Jurisdiction & Cross Claim" (Dkt. No. 8-6);

(7) "Affidavit in support of written objections to the State of New York et al. For Lack of Subject

---

[14]  The undersigned, not Judge Stewart, is the U.S. Magistrate Judge to whom the case has been assigned.

28

Matter Jurisdiction, Personal Jurisdiction, and Cross Claim" (Dkt. No. 8-7); (8) NOTICE: ex

parte Motion Order to Show Cause for Writ of Habeas Corpus ex parte Motion for Order to

Show Cause for Writ of Mandamus" (Dkt. No. 8-8); (9) July 15, 2017, "Actio Contrcto    Actio

Vi Bono Rum Raptorum    Actio Ex Contractu    Actio Mixta    Actio Personum    Actio Ex

Delicto" to Governor Andrew Cuomo (Dkt. No. 8-9); (10) records from the SCR labeled by

Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*"  (Dkt. No. 8-

10); (11) "Order to Show Cause for Injuries of Irreparable Injury caused by Trespass exceeding

Jurisdiction Discrimination, and Malice (Ex Parte)" (Dkt. No. 8-11); (12) Memorandum of the

Law and Laws of a Writ of Quo Warrento (Rule 72    Pretrial order)" (Dkt. No. 8-12); (13)

"Affidavit and Memorandum of the law in Support of a Writ of Quo Warrento and Complaint

pursuant to US federal Codes: 18 U.S.Code § 1201    Kidnaping, 18 U.S. Code 242

Deprivation of rights under color of law, 18 U.S. Code § 241    Conspiracy against rights    28

U.S.C. § 1343(a)(3)" (Dkt. No. 8-13); and (14) collection of statutory provisions labeled by

Plaintiff as "!!CONFIDENTIAL!![,] !! SEALED!![,] *PRIVACY PROTECTION*" (Dkt. No.

14.)

   Unfortunately, Plaintiff's voluminous submissions consist largely of irrelevant material,

repetitive accusations, conclusory assertions, and hard to follow open ended allegations against

frequently unidentified Defendants, with few nonconclusory assertions of wrongdoing by specific

Defendants, and an ill-defined request for the injunctive relief being sought.  As best the Court

can ascertain, Plaintiff's request for injunctive relief is based at least in part on his mistaken

belief that the Court's earlier Order staying this action stayed all state court proceedings and in

essence enjoined any actions by the multitude of Defendants named by him with regard to

matters about which Plaintiff complains herein.  (*See* Dkt. No. 9-1 at 2.)  Plaintiff, failing to

understand that his notice of removal, petition for a writ of habeas corpus, and civil rights

complaint have yet to be accepted for filing by the District Court, also appears to justify his

request for injunctive relief on the absence of any response to those papers by Defendants, for

whom summonses will not be issued unless and until those papers are accepted by the District

Court and Defendants are directed by the District Court to respond in some fashion.  (*See* Dkt.

No. 9 at 2.)

       Plaintiff may be seeking a mandatory injunction directing Defendants to respond to his

notice of removal habeas petition, and civil complaint.  (Dkt. 8-3 at 2.)  Plaintiff has also raised

the State Defendants' failure to respond to his FOIL requests and may be seeking a mandatory

injunction directing a response.  (Dkt. Nos. 8-11 at 5; 8-13 at 2-3.)  Plaintiff claims that the day

after he commenced this action/proceeding, his children were unlawfully seized and taken to

Florida by unidentified "respondents"in violation of federal kidnaping laws, and he may be

seeking injunctive relief with regard to the allegedly illegal seizure.  (Dkt. 8-11 at 2.)  Plaintiff

also claims he is being harassed, defamed, and attacked; he has had false allegations placed

against him on the SCR; and the State has black balled him from future state employment.  (Dkt.

No. 8-11 at 3-4.)  Plaintiff may be seeking injunctive relief with regard to those claims as well.

In addition, Plaintiff is seeking a mandatory injunction directing the payment of back wages and

health care benefits; placing him back on the payroll with benefits; and returning various

property taken from him.  *Id*. at 5-7.

## VII.    LEGAL ANALYSIS OF PLAINTIFF'S CIVIL RIGHTS COMPLAINT, MOTION TO AMEND, AND MOTION FOR A TRO AND PRELIMINARY INJUNCTION

### A.    Elements of a 42 U.S.C. §§ 1983 Claim

Section 1983 provides in relevant part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law," and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir.), *cert. denied*, ___ U.S. ___, 131 S. Ct. 158 (2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

It is well settled that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."[15]  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted).  A

---

[15]  A plaintiff is required to allege state action on the part of the defendants in his complaint; and where he fails to do so, a court may dismiss an action under § 1915(e).  *See O'Neil v. Bebee*, No. 5:09-CV-1133 (GTS/DEP), 2010 WL 502948, at *5 (N.D.N.Y. Feb. 10, 2010).

plaintiff must therefore allege facts showing that a defendant was either a state actor or a private

party acting under color of state law. *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d

Cir. 2002); *see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of America*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States

Constitution regulates only the Government, not private parties, a litigant claiming that his

constitutional rights have been violated must first establish that the challenged conduct

constitutes 'state action.'").  Private actors have been found to engage in "state action" when they

are "willful participant[s] in joint activity with the State or its agents." *Adickes v. S.H. Kress &*

*Co.*, 398 U.S. 144, 152 (1970) (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).

    In order to state a § 1983 conspiracy claim against a private actor, a plaintiff must do

more than plead in conclusory fashion that a defendant "conspired" with a state actor.[16]

*Ciambriello,* 292 F.3d at 324; *see also Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.

1993) ("[C]omplaints containing only conclusory, vague, or general allegations that the

defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are

properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by

specific instances of misconduct.") (citations and internal quotation marks and punctuation

omitted), *overruled on other grounds, Leatherman v. Tarrant County Narcotics Intelligence &*

---

[16]  Plaintiff has also alleged a conspiracy under 42 U.S.C. § 1985(3) and a claim under 42 U.S.C. § 1986.
(Dkt. No. 1-2 at 1.)  However, under § 1985(3), "the conspiracy must [   ] be motivated by some racial or perhaps
otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson,
Lifkin & Jenrette Securities, Corp.*, 7 F.3d 1085, 1088 (2d Cir.  2d Cir. 2000), *overruled on other grounds by
Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).  As noted above, Plaintiff has been identified as White, and there are
no facts in any of Plaintiff's submissions suggesting any otherwise class-based animus.  When a claim under 42
U.S.C. § 1985(3) fails, a claim under 42 U.S.C. § 1986 fails as well.  *See Brown v. City of Oneonta*, 221 F.3d 329,
341 (2d Cir. 2000).

*Coordination Unit*, 507 U.S. 163 (1993).

The elements of a conspiracy claim under § 1983 are: (1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

### B.    Personal Involvement Requirement of § 1983

A § 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Respardo v. Carlone*, 770 F.3d 97, 115 (2d Cir. 2014) ("If a defendant has not personally violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant . . . § 1983 requires individualized, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.")

A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint. *See McAvoy v. Suffolk County Sheriff DeMarco*, No. 14-CV-6293 (SJF) (AKT), 2015 WL 1802601, at *5 E.D.N.Y. April 16, 2015); *McClenic v. Shmettan*, No. 15-CV-00705 (SJF) (SIL), 2015 WL 1930088, at *5 (E.D.N.Y. April 28, 2015); *Rogue v. Iannotti*, No. 3:11-cv-2012 (SRU), 2012 WL 3939922, at *2 (D. Conn. Sept. 10, 2012).

Therefore, the Court recommends dismissal of Plaintiff's complaint as against

Defendants Onondaga County, Chenango County District Attorney Joseph McBride, Steven M.

Dunshee (First Assistant District Attorney), Sabrina Dier, Sheriff Ernest R. Cutting, Joe Warren,

Ben Bergman, Alyssa Cogden, Melissa Archer, Colin Supervisor Cortland County Advocacy

Center), Cortland County Jane Doe, two Cortland County Officer John Does, Thomas Durkot,

Cathy Aitchison, Carnita White, Brian Doliver, Detective John Fern, Sarah Simon, Betty

Osborne, Cathy Lavoli, Beth Beers, Patricia Luca, Sarah Fitzpatrick, Irene Flores, Connie

Bambino, Joseph Angelino, Norwich Sgt. John Doe, Norwich School District Board of

Education President Joseph McBride, Tom Sutton, Howie Sullivan, Gerrard O'Sullivan, Karrie

Stainbauer, Christine Bienick, Dr. Alfred Barnes, Kristen Romavicz, Mark Davis, Vicky

Gregory, Kim Murray, Frank Johnson, Sherri Houck, Chris Wilkinson, three Jane Doe Cortland

County Family Court Clerks, and four John Doe Officers.[17]

Although Plaintiff would ordinarily be granted leave to amend to allege facts plausibly

showing that the Defendants listed above had violated his constitutional rights under § 1983, for

reasons discussed below, the Court finds that allowing amendment in this case would be futile.

### C.    Eleventh Amendment Immunity

Plaintiff has sued New York State.  (Dkt. No. 1-2 at 1.)  It is well settled that in the

absence of consent by the state or abrogation of immunity by Congress under the Fourteenth

---

[17]  The Court has not included Defendants Lyn or Lynch, Harper, Brown, Corcoran, or Rowe on the list of those against whom dismissal is recommended for failure by Plaintiff to include any allegations of wrongdoing by them in the complaint because of the allegations against them in his TRO and preliminary injunction papers.  (Dkt. No. 8-7 at 8.)  The Court has recommended dismissal against school board members and administrators at the Cincinnatus School District and Norwich Central School for lack of factual allegations against them in the complaint.  Because it appears that they have been named as Defendants with respect to claims involving Plaintiff's minor children, which should not be addressed by the District Court without the interests of the children being properly represented, the Court would recommend dismissal even if Plaintiff had included allegations to that effect.

Amendment, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55-56 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). The Eleventh Amendment also bars suit against state officials when "the state is the real, substantial party in interest." *Ford Motor Co. v. Department of the Treasury*, 323 U.S. 459, 464 (1945), *overruled on other grounds by Lapides v. Board of Regents of the Univ. System of Georgia*, 535 U.S. 613 (2002).

Although the allegations in Plaintiff's complaint are inadequate to provide notice of any claim against the State, in his motion to amend Plaintiff complains of the State's alleged bad faith in stone-walling his FOIL request and his appeals and failing to provide information necessary to finish his complaint. (Dkt. No. 9 at 1.) Federal courts have no jurisdiction to enforce requests for information made under the state FOIL. *See Rios v. New York Executive Dept. of Parole*, No. No. 07-CV-3598 (DLI) (LB), 2008 WL 150209, at * 2 (E.D.N.Y. Jan. 14, 2008). Plaintiff's recourse is the commencement of a CPLR Article 78 proceeding in state court. *Id*.

In addition, although Plaintiff has not named the OCFS as a Defendant in his complaint, he has alleged that the State agency was a member of a conspiracy to deny Plaintiff of his constitutional rights. (Dkt. No. 1-2 at 23-24.) Were the agency a named Defendant, Plaintiff's conspiracy claim under § 1983 against it would be barred by the Eleventh Amendment.

Finding that Plaintiff has failed to allege any claim against New York State with respect to which there has been consent to suit by the State or an abrogation of Eleventh Amendment

immunity by Congress, the Court recommends that Plaintiff's complaint be dismissed with prejudice against the State of New York and to the extent Plaintiff intended to name the OCFS as a Defendant, against the agency as well.

### D.    Judicial Immunity

In his original complaint, Plaintiff has named as Defendants the Hon. Kevin M. Dowd, Chenango County Supreme Court; Hon. Steven M. Dunshee, Chenango County Support Magistrate; the Hon. William Ames, Cortland County Family Court; and the Hon. Julie Campbell, Cortland County Family Court.[18]  (Dkt. No. 1-2 at 1, 4, 6.)   All are sued in connection with the support, visitation, and custody proceedings involving Plaintiff and his estranged wife Nicole.  (*See generally* Dkt. Nos. 1, 1-2, and 9-1.)

It is well-established that judges have absolute immunity from suit for acts performed in their judicial capacities.  *Bradley v. Fisher*, 13 Wall 335, 80 U.S. 335 (1871); *accord, Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam) (holding that "judicial immunity is an immunity from suit, not just from the ultimate assessment of damages") (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Immunity from suit is overcome in only two narrow circumstances.  "First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity."  *Mireles*, 502 U.S. at 11.  "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction."  *Id.*

The Supreme Court has "generally concluded that acts arising out of, or related to,

---

[18]   While Plaintiff did not include specific factual allegations against Judge Campbell in his complaint, he did contend in his habeas corpus petition that Judge Campbell dismissed all of his Cortland County Family Court petitions and "apparently" placed a conditional discharge against Plaintiff.  (Dkt. No. 1 at 41-42.)

individual cases before the judge are judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d

Cir. 2009). Judges enjoy absolute immunity even when a plaintiff offers allegations of "bad faith

or malice." *Mireles*, 502 U.S. at 11. A judge cannot "be deprived of immunity because the

action he took was in error . . . or was in excess of authority." *Id*. at 13 (quoting *Stump v.

Sparkman*, 435 U.S. 349, 356 (1978)).

Because the allegations in Plaintiff's complaint indicate that his claims against Judges

Dowd, Ames, and Campbell, and Support Magistrate Dunshee were all related to the support,

visitation, and/or custody proceedings between Plaintiff and Nicole Cruz, the Court finds that

they are all entitled to judicial immunity and recommends dismissal of Plaintiff's complaint

against them with prejudice on judicial immunity grounds.

### E.    Plaintiff's Conspiracy Claim

Plaintiff has alleged a conclusory claim for conspiracy against:

> 3 School Districts, BOCES, my Superiors at work, teachers,
> administrators, DA, ADA, DDS, Chenango County Sheriff's
> Office, City of Norwich PD[,] City of Norwich FD. City of
> Norwich, Chenango County Family Courts, Chenango Count (sic)
> Child Support DDS, Chenango County Child Protective Services,
> Cortland County Child Protective Services, Onondaga County
> Regional offices for Child Welfare, the defendant N. Cruz
> Attorney, The OFCA Albany, NY, the Law Guardian Ad Litem,
> my own Self hired attorneys, with constant ex parte all attorney's
> communication with the judges, Hon. Dowd and Hon. Dunshee.

(Dkt. No. 1-2 at 23.)

Plaintiff claims that those Defendants conspired for the sole purpose of covering up the

sexual abuse, apparently of Plaintiff's children, by an elementary school special education

teacher connected to Terry and Johanna Kuhn, possibly Nicole Cruz. *Id*. at 23-24. Plaintiff's

37

complaint is devoid of facts regarding the alleged sexual abuse, and is equally devoid of facts plausibly showing that the identified parties conspired to interfere with, deny, or strip Plaintiff of his constitutional rights. *Id. See Dwares*, 985 F.2d at 100 (requiring allegations of specific acts of misconduct as a part of the conspiracy). Furthermore, because the rights of Plaintiff's minor children would clearly be implicated in any conspiracy to cover up sexual abuse by a teacher, the Court finds that consideration of the issue without proper representation of the interests of the children would be improper.

Therefore, the Court recommends that Plaintiff's conspiracy claim against 3 School Districts, BOCES, my Superiors at work, teachers, administrators, DA, ADA, DDS, Chenango County Sheriff's Office, City of Norwich PD[,] City of Norwich FD, City of Norwich, Chenango County Family Courts, Chenango Count (sic) Child Support DDS, Chenango County Child Protective Services, Cortland County Child Protective Services, Onondaga County Regional offices for Child Welfare, the defendant N. Cruz['s] Attorney, the OFCA Albany, NY, the Law Guardian Ad Litem, Plaintiff's own Self hired attorneys, and the Hon. Dowd and Hon. Dunshee be dismissed.

### F.    Chenango and Cortland Counties

Plaintiff has named Chenango and Cortland Counties as Defendants. (Dkt. No. 1-2 at 1.) Plaintiff has asserted claims against both the Chenango and Cortland County Departments of Social Services and Sheriff's Departments. Because the Departments of Social Services and Sheriff's Departments are administrative arms of their respective counties, the Court will treat Plaintiff's claims against the County Departments as claims against the Counties themselves and

recommend dismissal of the complaint with prejudice against both the Departments of Social

Services and Sheriff's Departments.  *See Mulvihill v. New York*, 956 F. Supp. 2d 425, 427

(W.D.N.Y. 2013).

1.    <u>Claims Against the Departments of Social Services</u>

Plaintiff claims in wholly conclusory fashion that the Chenango and Cortland County

Departments of Social Services violated CAPTA, 18 U.S.C. § 3509, and SORNA, 34 U.S.C. §§

20911, *et seq*., formerly cited at 42 U.S.C. §§ 16911, *et seq*.  (Dkt. No. 1-2 at 21-22.)  CAPTA

does not create a private right of action for sexual and physical abuse, neglect, and maltreatment

while in foster care.  *See Alger v. County of Albany, New York*, 489 F. Supp. 2d 155, 159

(N.D.N.Y. 2006) (collecting cases).  Moreover, it if did that would be a claim that should not be

addressed in this action in which the interests of Plaintiff's minor children are not represented by

counsel.  *See, e.g., Ingrao v. County of Albany, NY,* No.1:01-CV-730 (TJM), 2006 WL 2827856

(N.D.N.Y. Oct. 2, 2006) (counseled lawsuit raising unsuccessful CAPTA claim by plaintiffs as

parents and natural guardian of an infant).

18 U.S.C. § 3509, which is entitled "Child victims' and child witnesses' rights," is a

criminal statute that provides for the manner in which child victims and their right to privacy is

protected in connection with the judicial process in criminal matters involving abuse, including

sexual abuse.  If by chance a person were found to have a private right of action under the

provision, it would be Plaintiff's minor children, whose interests are not before the Court in this

litigation.  SORNA provides for the registration of convicted sex offenders and appears to have

no relevance whatsoever to Plaintiff's lawsuit.

2.    Claims Against the Sheriff's Departments

The sole claim against the Chenango County Sheriff's Department is that members of the Department conspired with Terry Kuhn to conjure up baseless claims against Plaintiff resulting in the issuance of a temporary protective order against Plaintiff.  (Dkt. No. 1-2 at 11-12.) Plaintiff's conclusory claim of conspiracy is inadequate to state a claim under § 1983.  *See Pangburn,* 200 F.3d at 72.  Plaintiff has alleged no specific facts plausibly showing wrongdoing by the Cortland County Sheriff's Department resulting in the violation of Plaintiff's constitutional rights under § 1983.

Based upon the foregoing, the Court finds that Plaintiff has failed to state a cause of action against either Chenango or Cortland County and recommends that the complaint be dismissed as against them.

**G.    Nicole Cruz and Terry and Johanna Kuhn**

Although the relationship between Nicole Cruz and Terry and Johanna Kuhn is not well explained in the complaint, the Kuhns appear to be Nicole's friends.  The allegations in the complaint indicate that Nicole and Johanna Kuhn are private actors.  Terry Kuhn is a member of the City of Norwich Fire Department.  (Dkt. No. 1-2 at 14-16.)  However, except for wholly conclusory allegations that Terry Kuhn abused his power as a Norwich fireman by conspiring with his friends at the Chenango County Police Department to conjure up baseless false statements against Plaintiff which resulted in issuance of a temporary order of protection against Plaintiff, the allegations against him arise of out his actions as an individual rather than a state

actor.[19]  *Id*. at 11-12.

Nicole Cruz is alleged to have joined with the Kuhns in forcing Plaintiff from his home and causing him to default on a loan Plaintiff and his estranged wife had on a business they were buying.  *Id*. at 11.   Plaintiff alleges that Nicole fled the State in July of 2016 in the middle of a child abuse trial owing Plaintiff over $8,000 in child support.  *Id*. at 13.   According to Plaintiff, Nicole and Terry and Johanna Kuhn are guilty of multiple federal felonies and misdemeanors against him including HUD fraud, mail fraud, false impersonation, falsifying government documents, and unlawful termination of Plaintiff's tenured position in the New York State Education Department.  ("NYSED").  *Id*. at 14-16.

The factual allegations against the three do not plausibly show that they were acting under color of state law with regard to Plaintiff's claims.  *See Cornejo*, 592 F.3d at 127.  Moreover, the allegations of conspiracy by Terry Kuhn are wholly conclusory and therefore inadequate to make a plausible showing that he was acting in concert with state actors.  *See Dwares*, 985 F.2d at 100. Therefore, the Court recommends that the complaint be dismissed as against Nicole Cruz and Terry and Johanna Kuhn for failure to state a claim under § 1983.  The Court further recommends that the dismissal be with prejudice given the absence of factual allegations in the complaint suggesting Plaintiff could state a cause of action against them under § 1983 if given leave to amend.

---

[19]  Plaintiff also alleges that Terry Kuhn's buddy Frank Revoir was involved in the conspiracy.  (Dkt. No. 1-2 at 11-2.)  That is the sole mention of Revoir in the complaint.  He has not been identified as a state actor and the wholly conclusory allegation that he was part of a conspiracy is insufficient to state a claim against him under § 1983.  *See Dwares*, 985 F.2d at 100.  Therefore the Court recommends dismissal of the complaint against Revoir and that the dismissal be with prejudice since the allegations in the complaint give no indication Plaintiff could state a claim against him.

### H.    Attorney Defendants Williams, Taylor, and Fertig

Attorney S. Francis Williams was Nicole Cruz's attorney in connection with the child support, visitation, and custody dispute and is alleged to have appeared in Cortland County Family Court with Johanna Kuhn posing as Nicole.  (Dkt. Nos. 1 at 38; 1-2 at 15.)  Attorney Taylor was Plaintiff's attorney in the domestic relations dispute for a period of time.  (Dkt. No. 1 at 40.)  The sole allegation against Taylor in Plaintiff's complaint is that an associate of his was involved in paying a third party to impersonate a child care provider at the daycare center attended by Plaintiff's children.  (Dkt. No. 1-2 at 19.)  Attorney James Fertig was appointed as a guardian ad litem for Plaintiff's children, and Plaintiff has alleged that he engaged in misconduct and malpractice in violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Private attorneys do not act under color of state law and are not state actors for purposes of § 1983 simply by virtue of their state-issued licenses to practice law.  *See Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975) (private attorney not a state actor).  Similarly, public defenders and court-appointed counsel do not act under color of state merely by virtue of their position.  *Harrison v. New York*, 95 F. Supp. 3d 293, 328-29 (E.D.N.Y. 2015) (collecting cases).  Guardians ad litem are included among court-appointed counsel who do not act under color of state law by virtue of their position.  *Neustein v. Orbach*, 732 F. Supp. 333, 346 (E.D.N.Y. 1990).  Furthermore, Plaintiff has failed to plead any nonconclusory facts showing that the three attorneys were conspiring with state actors.  *See Dwares*, 985 F.2d at 100.

Moreover, for the reasons set forth above in the analysis of Plaintiff's claims against Defendants Chenango and Cortland Counties, the Court finds that Plaintiff has failed to state a

claim against Fertig violation of CAPTA, 18 U.S.C. § 3509, and SORNA.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed as against Defendants Williams, Taylor, and Fertig with prejudice inasmuch as a better pleading will not correct the deficiencies in Plaintiff claims.

## I.    Kristen Monroe and David Knickerbocker

Plaintiff claims that Monroe and Knickerbocker, both officials in the Cortland County DSS, attempted to trick and then force Plaintiff to rent Monroe's parents' house.  (Dkt. No. 1-2 at 2, 19.)  Plaintiff has not alleged facts plausibly showing that Monroe and Knickerbocker were acting under color of state law in connection with the rental of Monroe's parents' house.  Nor has he alleged facts showing that Monroe or Knickerbocker deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *See Cornejo,* 592 F.3d at 127.

Therefore the Court recommends that the complaint be dismissed as against Monroe and Knickerbocker, and because the allegations against them do not remotely support the existence of a civil rights claim against them under § 1983, that the complaint be dismissed against them with prejudice.

## J.    Sheila Poole

While Plaintiff has alleged that Poole, in her capacity as Acting Commissioner of the NYS OCFS, released indicated reports of child abuse and mistreatment of Plaintiff  children by him and Nicole Cruz, his complaint is devoid of factual allegations plausibly showing that she deprived him of rights, privileges, or immunities secured by the Constitution or laws of the

United States by doing so.  *See Cornejo,* 592 F.3d at 127.

Therefore, the Court recommends that the complaint be dismissed as against Poole, and that in light of the failure by Plaintiff to allege any facts suggesting he might be able to plead a § 1983 claim against Poole the dismissal be with prejudice.[20]

### K.    DCMO BOCES and Unadilla Valley Central School District

Plaintiff claims, *inter alia*, that his transfer from DCMO BOCES to Unadilla was illegal, that his termination was unlawful in that he was denied tenure, rights under the Taylor Law, and Section 75 rights, and that Defendant Lyn or Lynch was involved in the denial.  (Dkt. Nos. 1-1 at 15; 1-2 at 13; 8-7 at 8.)   Plaintiff also claims that he was harassed, bullied, and forced into involuntary servitude by Defendant Harper, Mackey, Brown, Corcoran, and Rowe at Unadilla.  (Dkt. No. 8-7 at 8.)  According to Plaintiff, he was also the victim of sex discrimination in his employment and has filed a complaint with the New York State Division of Human Rights.  (Dkt. No. 1-2 at 17, 29.)

The Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "does not confer federal jurisdiction over labor disputes among states, their employees, and the unions who represent them."  *Baumgart v. Stony Brook Children's Serv., P.C.*, 249 F. App'x 851, 852 (2d Cir. 2007).  Public employees covered under the Public Employees' Fair Employment Act ("Taylor Law"), N.Y. Civ. Serv. Law § 201(7) are precluded from filing federal claims under the LMRA.  *See Sales v. Clark*, No. 14-CV-8091 (PAC)(SN), 2017 WL 892609, at *5 (S.D.N.Y.

---

[20]  As noted above, Plaintiff has alleged that the OCFS was part of a conspiracy to cover up sexual abuse against Plaintiff's minor children by a special education teacher which the Court has recommended be dismissed. There are no allegations in Plaintiff's complaint suggesting that Poole played any role in the alleged conspiracy.

Feb. 3. 2017).  Plaintiff concedes he is covered under the Taylor Law.  (Dkt. No. 1-2 at 13.)

Furthermore, Plaintiff's claims, if any, against the individual Defendants for involuntary servitude, harassment, and bullying are state law claims over which this Court has no jurisdiction.  "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erec. Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Federal jurisdiction exists only when a "federal question" is presented (28 U.S.C. § 1331), or where there is "diversity of citizenship" and the amount in controversy exceeds $75,000 (28 U.S.C. § 1332).  *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 136 (2d Cir. 2002).  Federal question jurisdiction exists if a plaintiff's claim "aris[es] under the Constitution, laws, or treaties of the United States.  28 U.S.C. § 1331.

Plaintiff's claims against DCMO BOCES and Unadilla and the individual Unadilla Defendants do not present a federal question.[21]  Moreover, diversity jurisdiction requires complete diversity between Plaintiff and all of the Defendants, which does not exist in this case. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("complete diversity [is required] between all plaintiffs and all defendants.").

In addition, it is not clear from the complaint that the amount in controversy exceeds $75,000.  "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to be a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago*, 93 F.3d

---

[21]  A plaintiff bears the burden of establishing subject matter jurisdiction over his claims, including citing the relevant federal statute.  *Cherry v. New York City Dept. of Corr.*,     F. App'x    , 2017 WL 4457140 (Mem), at *1 (2d Cir. Oct. 5, 2017.)

1064, 1070 (2d Cir. 1996) (citation omitted); *see also Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994). The amount in controversy is determined at the time action is commenced. *Id.*

Finally, Plaintiff claims to have filed a sex discrimination complaint with the New York Human Rights Division but has provided no information regarding the nature and status of that claim, including whether the EEOC has issued a right to sue letter. Therefore, the Court recommends dismissal.

Based upon the foregoing, the Court recommends that Plaintiff's complaint be dismissed against DCMO BOCES, Unadilla, Harper, Mackey, Brown, Corcoran, and Rowe, and that with the exception of his sex discrimination claim against his employer, that the dismissal be with prejudice.

### L.    Domestic Relations Exception

The Court has recommended dismissal on various grounds of all of Plaintiff's claims either with or without prejudice. Even if it had not, with the exception of Plaintiff's employment claims, all of the claims asserted by him in his civil rights complaint fall within the domestic relations exception discussed above, which divests the district court of subject matter jurisdiction because the claims relate, directly or indirectly, to the issues of support, custody, and visitation. *See Ankenbrandt,* 504 U.S. at 703. Therefore, the Court recommends that Plaintiff's complaint, with the exception of his employment related claims, be dismissed with prejudice under the

domestic relations exception.[22]

### M.    Plaintiff's Motion to Amend

Plaintiff's motion to amend his complaint does not change the Court's recommendation that his civil rights action be dismissed.  Plaintiff's notice to amend involves the failure of the State and perhaps other Defendants to respond to his FOIL requests, Defendants' failure to return waivers of summonses and to respond to papers he has served on them in the action, and the alleged kidnaping of his children.  (Dkt. No. 9 at 2.)  As noted above, federal courts have no jurisdiction to enforce requests for information made under the state FOIL.  *See Rios,* 2008 WL 150209, at *2.  Furthermore, inasmuch as Plaintiff's complaint has not yet been accepted for filing, Defendants are under no obligation to return service waivers or respond to any of Plaintiff's papers.

Finally, there is no private right of action under 18 U.S.C. § 1201, the federal criminal statute relating to kidnaping.  *See Giano v. Martino*, 673 F. Supp. 92, 95 (E.D.N.Y.), *aff'd*, 853 F.2d 1429 (2d Cir. 1987) (Table).  Moreover, to the extent the alleged kidnaping of Plaintiff's minor children is a part of the custody dispute between Plaintiff and his estranged wife, Plaintiff's claim falls within the domestic relations exception to subject matter jurisdiction.[23]

Therefore, the Court recommends that Plaintiff's motion to amend (Dkt. No. 9) be denied.

---

[22]  The Court intends for its recommendation for dismissal with prejudice to apply solely to Plaintiff and to have no impact on pursuit of the minor children's claims.

[23]  The Court has refrained from considering the legal rights the minor children may have in connection with the alleged kidnaping.

### N.    Motion for a TRO and a Preliminary Injunction

Inasmuch as the Court is recommending dismissal of Plaintiff's complaint, its recommends that Plaintiff's motion for a TRO and a preliminary injunction be denied as moot. *See Melnitzky v. Lopreto*, No. 06 Civ. 13206 (SHS), 2006 WL 3500016, at *4 (S.D.N.Y. Dec. 4, 2006) (request for a TRO and preliminary injunction moot where underlying complaint dismissed). Even if the request were not moot, the Court would recommend denial because Plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits of his claims to make them a fair ground for litigation, and a balance of hardships decidedly tipping in his favor. *See Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Therefore, the Court recommends that Plaintiff's motion for a TRO and preliminary injunction (Dkt. No. 8) be denied as moot, or in the alternative, on the merits.

**ACCORDINGLY**, the Court hereby

**RECOMMENDS** that if there are presently any state court proceedings that arguably could be covered by Plaintiff's notice of removal (Dkt. No. 1) that the District Court issue an order remanding them to state court, and if not, that the Court find that no state court proceedings have been properly removed to state court; and it is further

**RECOMMENDED** that Plaintiff's petition for a writ of habeas corpus (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED** that Plaintiff's motion to amend his complaint (Dkt. No. 9) be

**DENIED**; and it is further

     **RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1-2) be **DISMISSED** on initial review under 28 U.S.C. 1915(e)(2)(B)(ii), and that with the exception of Plaintiff's sex discrimination claim which is the subject of his Human Rights Division complaint, the dismissal be **WITH PREJUDICE**; and it is further

     **RECOMMENDED** that Plaintiff's motion for a TRO and a preliminary injunction (Dkt. No. 8) be denied as moot or, in the alternative, on the merits; and it is further

     **RECOMMENDED** that the District Court order that the determination in this matter have no effect on the legal rights of Plaintiff's minor children; and it is hereby

     **ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[24]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

---

[24]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

Dated:   October 26, 2017
         Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2017 WL 4457140
Only the Westlaw citation is currently available.
This case was not selected for
publication in West's Federal Reporter.
RULINGS BY SUMMARY ORDER DO NOT HAVE
PRECEDENTIAL EFFECT. CITATION TO A
SUMMARY ORDER FILED ON OR AFTER JANUARY
1, 2007, IS PERMITTED AND IS GOVERNED BY
FEDERAL RULE OF APPELLATE PROCEDURE
32.1 AND THIS COURT'S LOCAL RULE 32.1.1.
WHEN CITING A SUMMARY ORDER IN A
DOCUMENT FILED WITH THIS COURT, A PARTY
MUST CITE EITHER THE FEDERAL APPENDIX
OR AN ELECTRONIC DATABASE (WITH THE
NOTATION "SUMMARY ORDER"). A PARTY CITING
A SUMMARY ORDER MUST SERVE A COPY OF IT
ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals,
Second Circuit.

Bernard CHERRY, Plaintiff-Appellant,

v.

NEW YORK CITY DEPARTMENT OF
CORRECTION, Eric Yuen, Attorney-Trials and
Litigation Division, Defendants-Appellees.

16-3725
|
October 5, 2017.

Appeal from a judgment of the United States District
Court for the Eastern District of New York (Cogan, *J.*).

**\*1  UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Bernard Cherry, pro
se, Bronx, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: DEBRA ANN LIVINGSTON, GERARD
E. LYNCH, Circuit Judges, JED S. RAKOFF, District
Judge. *

## SUMMARY ORDER

Appellant Bernard Cherry ("Cherry"), proceeding *pro
se*, appeals from a judgment *sua sponte* dismissing
his complaint against his former employer, the New
York City Department of Correction ("DOC"), and
a DOC attorney. Cherry was fired in 2007 after an
administrative law judge at the Office of Administrative
Trials and Hearings ("OATH") found him guilty of
excessive absenteeism and failure to comply with orders.
The Appellate Division affirmed. In 2008, Cherry sued
the City, DOC, and several officials, asserting claims for
employment discrimination. The district court dismissed
that case on timeliness grounds, and we affirmed. In
2016, Cherry filed this action under Federal Rules
of Civil Procedure 60(d)(1) and (3), alleging that the
defendants committed fraud on the court by submitting
forged documents during the OATH hearing. We assume
the parties' familiarity with the underlying facts, the
procedural history of the case, and the issues on appeal.

The district court interpreted Cherry's complaint as a
request to vacate the judgment in Cherry's employment
discrimination suit. On appeal, however, Cherry clarifies
that he was actually asking the district court to vacate
the OATH decision. *See* Br. of Appellant Bernard Cherry
at 4–5 ("[Judge Cogan] believes that I wanted him to
vacate his ruling in his [2008] decision against me. In
my complaint, I asked the Court to vacate the (OATH)
decision ... because fraud on the court was and still is
present *in that decision*.") (emphasis added). Although we
must construe *pro se* complaints "liberally and interpret
them 'to raise the strongest arguments that they suggest,' "
*Kirkland v. Cablevision Systems*, 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (quoting *Burgos v. Hopkins*, 14 F.3d
787, 790 (2d Cir. 1994)), Cherry explicitly states that he
was requesting the district court to vacate the judgment of
the state administrative law judge. Accordingly, we affirm
the district court's dismissal on the grounds of lack of
subject matter jurisdiction.

A plaintiff bears the burden of establishing subject matter
jurisdiction over his own claims. *Makarova v. United
States*, 201 F.3d 110, 113 (2d Cir. 2000). It is apparent
from the face of Cherry's complaint that there is no
diversity jurisdiction under 28 U.S.C. § 1332. It is also
apparent that there is no federal question jurisdiction under

28 U.S.C. § 1331. Cherry cites no relevant federal statute in his complaint or in his brief on appeal. Cherry does cite Federal Rules of Civil Procedure 60(d)(1) and (3), but it is well-settled that the Federal Rules of Civil Procedure "do not provide an independent ground for subject matter jurisdiction over an action for which there is no other basis for jurisdiction." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir. 1990). Nor would Cherry's complaint survive if we construed it as alleging a claim under 42 U.S.C. § 1983, since he filed this suit after the relevant three-year statute of limitations elapsed. *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004). Finally, the district court correctly refused to exercise ancillary jurisdiction over Cherry's claims, since Cherry is seeking relief from judgment in a different tribunal than the one that handed down the judgment, and there is no independent ground for jurisdiction. *See* 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2868 (3d ed. 1998); *see also United States v. Beggerly*, 524 U.S. 38, 46, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (noting that "an independent action brought *in the same court as the original lawsuit*" does not "require[ ] an independent basis for jurisdiction") (emphasis added).

**\*2** We have considered Cherry's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's judgment.

### All Citations

--- Fed.Appx. ----, 2017 WL 4457140 (Mem)

Footnotes

\*        Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1315660
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Loretta DAVIS and K.D., Plaintiffs
v.
CITY OF NEW HAVEN, et al., Defendants.

Civil No. 3:11cv1829 (JBA).
|
Signed March 30, 2014.

**Attorneys and Law Firms**

Loretta Davis, New Haven, CT, pro se.

K.D., New Haven, CT, pro se.

Richard J. Buturla, Warren L. Holcomb, Berchem, Moses
& Devlin, P .C., Milford, CT, for Defendants.

**RULING ON PENDING MOTIONS**

JANET BOND ARTERTON, District Judge.

**\*1** Plaintiffs Loretta Davis and Keyonna Davis [1],
proceeding pro se, bring this action against Defendants
City of New Haven, New Haven Board of Education,
Amanda Weires, Frank Costanzo, Fallen Daniels,
and Delores Garcia–Blocker pursuant to 42 U.S.C. §
1983, alleging selective treatment in violation of their
Fourteenth Amendment right to equal protection (Count
One), retaliation in violation of their First Amendment
rights (Count Two), a state-law claim for intentional
infliction of emotional distress (Count Three), and a
state-law claim for negligent supervision and failure to
supervise (Count Four). (*See* Am. Compl. [Doc. # 25].)
Defendants move [Doc. # 74] for summary judgment on
each of Plaintiffs' claims, arguing that they are entitled to
judgment as a matter of law and that there are no genuine
issues of material fact remaining in this case. After the
summary judgment motion was fully briefed, Plaintiffs
moved to consolidate this case [Doc. # 85], to subpoena
Connecticut police records [Doc. # 86], and to supplement
the pleadings [Doc. # 88]. For the reasons that follow,
Defendants' motion for summary judgment is granted
with respect to Plaintiffs' federal claims, the Court declines

to exercise supplemental jurisdiction over Plaintiffs' state-
law claims, and Plaintiffs' motions to consolidate, to
subpoena police records, and to supplement the pleadings
are denied.

**I. Background**

Plaintiff Keyonna Davis, and her mother, Plaintiff
Loretta Davis, are African American, and reside together
in New Haven, Connecticut. (Am. Compl. [Doc. # 25]
¶¶ 3–4; Ans. [Doc. # 27] ¶¶ 3–4.) Ms. Davis was a
student at the Cooperative Arts & Humanities High
School ("Co-op"), a public magnet school in New Haven.
(Am. Compl. ¶ 4; Ans. ¶ 4.) She was a junior during the
2010 to 2011 school year and a senior during the 2011
to 2012 school year. (Am. Compl. ¶¶ 6, 31; Ans. ¶¶ 6,
31.) During Ms. Davis's junior year, Defendant Garcia–
Blocker was the head principal of Co-op (Garcia–Blocker
Aff. [Doc. # 74–3] ¶ 3), Defendant Costanzo was an
assistant principal at Co-op (Costanzo Aff. [Doc. # 74–4]¶
2), Defendant Daniels was head of the science department
at Co-op (Am.Compl.¶ 10), and Defendant Weires, who is
Cacausian, was a first-year chemistry and physics teacher
at Co-op (Weires Aff. ¶ 2). That year, Ms. Davis was
enrolled in Defendant Weires's seventh-period chemistry
class, which was held every other day. (Weires Aff. ¶ 4;
Garcia–Blocker Aff. ¶ 4.)

**A. November 2010 Incident**

On November 1, 2010, Ms. Davis missed school due
to an excused absence, and therefore did not take the
first-quarter exam that Defendant Weires held in her
seventhperiod chemistry class that day. (Weires Aff. ¶
5.) Several other students, both African American and
Caucasian, missed the exam that day. (*Id.*) A few days
later, a group of students, including Ms. Davis, stayed
after class to discuss making up the exam with Defendant
Weires. (Weires Aff. ¶ 6; Keyonna Davis Dep. Tr., Ex.
1 to Defs.' Loc. R. 56(a)1 Stmt. [Doc. # 74–5] at 39–
40.) [2] Ms. Davis was talking with her friends while she
waited for Defendant Weires to finish helping another
student. (Keyonna Davis Dep. Tr. at 40.) Defendant
Weires thought she overheard Ms. Davis talking about
another student who had been a victim of bullying, and
so she asked Ms. Davis what she had said. (Weires Aff. ¶
6; Keyonna Davis Dep. Tr. at 40.) Ms. Davis denied that
she had said anything, but Defendant Weires continued
to ask what Ms. Davis had said "about Shelby." (Weires
Aff. ¶ 6; Keyonna Davis Dep. Tr. at 40.) Ms. Davis felt

that Defendant Weires was "trying to verbally attack" her —she became very upset and walked out of the classroom with one of her friends. (Weire Aff. ¶ 6; Keyonna Davis Dep. Tr. at 40.)

**\*2** When she got home that day, Ms. Davis told her mother about the incident with Defendant Weires. (Keyonna Davis Dep. Tr. at 41.) Mrs. Davis called Co-op immediately and set up a meeting with Defendant Costanzo for the next day to discuss the incident. (Loretta Davis Dep. Tr., Ex. 2 to Defs.' 56(a)1 Stmt. at 9.) Mrs. Davis met with Defendants Costanzo and Daniels the next morning and informed them that Defendant Weires had a "meltdown" and was "verbally abusive" towards Keyonna. (*Id.* at 10.) Mrs. Davis also told Defendants Costanzo and Daniels that Keyonna had told her that Defendant Weires "seemed to be more aggressive towards the black students" in her chemistry class. (*Id.* at 11.) Defendant Costanzo then held a meeting with Mrs. Davis, Ms. Davis and Defendant Weires. (Costanzo Aff. [Doc. # 74–4] ¶ 4; Weires Aff. ¶ 7.) The parties discussed the incident from the previous day, and Defendant Weires explained that she had been concerned about bullying. (Keyonna Davis Dep. Tr. at 47.) Mrs. Davis then asked whether Defendant Weires was racially biased. (*Id.* at 47–49; Loretta Davis Dep. Tr. at 13.) Defendant Weires responded that she believed everyone was prejudiced to some degree, and that she was prejudiced to some degree against certain students. (Keyonna Davis Dep. Tr. at 50; Loretta Davis Dep. Tr. at 13.) Defendant Weires did not explain in what way she was prejudiced or against whom she was prejudiced. (Loretta Davis Dep. Tr. at 13.) After Defendant Weires made this statement, Ms. Davis became very upset and left the meeting crying. (Keyonna Davis Dep. Tr. at 51.)

After the meeting with Defendants Weires and Costanzo, Mrs. Davis met with Defendant Garcia–Blocker and Defendant Costanzo. (Loretta Davis Dep. Tr. at 24; Garcia–Blocker Aff. [Doc. # 74–3] ¶ 5.) Mrs. Davis informed Defendant Garcia–Blocker about the comment Defendant Weires made at the earlier meeting, and asked Defendant Garcia–Blocker to transfer Keyonna to a different chemistry class. (Loretta Davis Dep. Tr. at 24; Garcia–Blocker Aff. ¶ 5; Costanzo Aff. ¶ 5.) The only other seventh-period chemistry class was a significantly more difficult Advanced Placement class for which Ms. Davis did not qualify, and the only other junior chemistry class taught by a teacher other than Defendant Weires

conflicted with Ms. Davis's class schedule. (Garcia–Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.) Defendant Garcia–Blocker therefore denied Mrs. Davis's request to transfer Keyonna, and stated that staying in Defendant Weires's class would be a valuable learning experience for Keyonna in dealing with difficult people. (Garcia–Blocker Aff. ¶ 6.) Defendant Garcia–Blocker also promised to speak with Defendant Weires regarding the incident and to check in on her seventh-period chemistry class to make sure that Keyonna was being treated fairly. (*Id.;* Costanzo Aff. ¶ 5; Loretta Davis Dep. Tr. at 26–27.) Ms. Davis does not believe that she was treated differently by Defendants Garcia–Blocker or Costanza because of her race with respect to this incident. (Keyonna Davis Dep. Tr. at 78.)

**\*3** Defendant Garcia–Blocker did personally speak with Defendant Weires and periodically looked in on Keyonna's seventh-period chemistry class during her daily walkthrough of the school. (Garcia–Blocker Aff. ¶ 7.) Defendant Garcia–Blocker never observed Defendant Weires treat Ms. Davis unfairly during these periodic check-ins. (*Id.*) However, Ms. Davis claims that on the day after the meeting with Defendant Weires, Defendant Weries passed over her in class when she raised her hand. (Keyonna Davis Dep. Tr. at 51–52.) Ms. Davis felt as if Defendant Weires would call on African American students less frequently than Caucasian students and that Defendant Weires overlooked the African American students in the class. (*Id.* at 56–58.) Defendant Weires had a policy of only answering questions during class if they could be addressed with a brief explanation. (Weires Aff. ¶ 9.) However, Defendant Weires informed the students that she was available before and after class to assist students with more complicated questions. (*Id.*) Ms. Davis would stay after class about once every other week with her friends to get extra help from Defendant Weires, but Ms. Davis felt that this extra instruction was not very helpful. (Keyonna Davis Dep. Tr. at 56, 77; Weires Aff. ¶ 9.)

### B. Grading Difficulties

Ms. Davis felt that Defendant Weires began to tamper with her grades after the incident in November. (Keyonna Davis Dep. Tr. at 82.) Defendant Weires, along with the other teachers at Co-op, usedengrade.com to post grades during Ms. Davis's junior year of high school. (Weires Aff. ¶ 10.) Before the incident with Defendant Weires in November, Ms. Davis's interim progress report indicated that she was getting a B in chemistry. (Keyonna Davis

Dep. Tr. at 59.) However, Ms. Davis's final grade for the first quarter was a C. (Weires Aff. ¶ 14; Grade Report, Ex. 9 to Pls.' Aff. [Doc. # 78–1].) During that quarter, Ms. Davis received ten extra credit points and 100% for classroom participation. (Weires Aff. ¶ 14, Grade Report.) Ms. Davis received either a B-or a C+ as a final grade in chemistry. (*Compare* Weires Aff. ¶ 15 (noting that Ms. Davis received a B-) *with* Report Card, Ex. 12 to Pls.' Aff. (noting that Ms. Davis received a C+).) The highest grade in Defendant Weires's seventh-grade chemistry class that year was an A. (Weires Aff. ¶ 15.) [3] The next highest grade was a B+, and the third highest grade was a B-. (*Id.*) One student received an A, one student received a B+, and two or three students received a B-. (*Id.*) The highest grade received by a Caucasian student was a C+. (*Id.*)

During her first year, Defendant Weires struggled with organization and grading. (Garcia–Blocker Aff. ¶ 10.) She lost or misplaced assignments and had great difficulty reporting students' grades in an accurate and timely fashion onengrade.com. (*Id.*) These difficulties became more pronounced in the second half of the school year, especially after a flood in Defendant Weires's car destroyed several students' assignments. (*Id.;* Weires Aff. ¶ 12.) Defendant Garcia–Blocker spoke with Defendant Weires regarding these issues, and provided her remedial assistance, to which Defendant Weires was receptive. (*Id.* ¶¶ 10–11.) As a result of Defendant Weires's difficulties, Defendant Garcia–Blocker received numerous complaints from the parents of both African American and Caucasian students regarding grade discrepancies. (Garcia–Blocker Aff. ¶ 10.) In March of 2011, Mrs. Davis complained to Defendants Garcia–Blocker and Costanzo about her concerns relating to Keyonna's chemistry grade. (*Id.* ¶ 8; Costanzo Aff. ¶ 6.)

 **\*4** On March 30, 2011, Mrs. Davis filed a written complaint with the U.S. Department of Education Office of Civil Rights ("OCR"), alleging that Ms. Davis had been discriminated against by Defendant Weires and that the administration had retaliated against Ms. Davis as a result of her complaint about this discrimination. (*See* OCR Report, Ex. B to Costanzo Aff. at 1.) On April 1, 2011, Defendants Garcia–Blocker and Costanzo met with Mrs. Davis regarding her grading concerns. (Costanzo Aff. ¶ 6.) During the meeting Mrs. Davis demanded that they file a complaint against Defendant Weires, but none was filed. (*Id.*) The OCR conducted a full investigation of Mrs. Davis's complaint and determined that there

was insufficient evidence to substantiate her claim that Keyonna was subjected to a hostile environment and retaliated against on the basis of her race. (OCR Report at 8.) After the OCR complaint was filed, Defendants offered to move Ms. Davis to the seventh-period AP chemistry class for the rest of the year, and to provide additional instruction from the AP teacher to assist her with the more advanced material, but Mrs. Davis declined the offer. (Garcia–Blocker Aff. ¶ 12.)

## C. Senior Day

Ms. Davis also attended Co-op as a senior during the 2011 to 2012 school year. (Compl. ¶ 31; Ans. ¶ 31.) Senior Day, which is a school day on which seniors get to skip class and attend various activities, was held on November 7, 2011. (Keyonna Davis. Dep. Tr. at 35.) Students had to fulfill several requirements by November 4, 2011 in order to participate in Senior Day—they needed to have two teacher recommendations and to have entered a list of at least four colleges into their CSNav accounts, which are online accounts to assist students who were preparing to attend college. (*Id.* at 6, 22.) A week before Senior Day, Defendant Daniels, the senior college advisor, informed Ms. Davis that she was missing both of her required recommendation letters from her file. (*Id.* at 9, 11.) About five days before Senior Day, Ms. Davis contacted both of her teacher recommenders and they informed her that they had already submitted the required recommendation letters. (*Id.* at 11.) However, on Senior Day, when Ms. Davis checked the list of eligible students, it indicated that she was missing one teacher recommendation and her college list. (*Id.* at 16.) Ms. Davis immediately went to see her guidance counselor, Ms. White, who confirmed that both letters were in Ms. Davis's file. (*Id.* at 17.) Ms. Davis then called her mother, who came to the school and attended a meeting with her daughter and Ms. Daniels. (*Id.* at 19.) During the meeting, Ms. Daniels accessed Ms. Davis's CSNav account, which indicated that it had been accessed at 7:30am that morning and the last two colleges of the required four had been added at that time. (*Id.* at 19–20.) Ms. Daniels and Ms. Davis were the only two people with access to Ms. Davis's CSNav account, but Ms. Davis denied making the changes that morning. (*Id.* at 21.) Ms. Davis became upset at the implication that she had logged into her account after the deadline and began to cry, to which Ms. Daniels responded by laughing at her. (*Id.* at 22.)

2014 WL 1315660

**\*5** Ms. Davis and her mother then left the meeting with Ms. Daniels. (*Id.* at 28, 33.) They went to Ms. Davis's guidance counselor's office to make copies of her letters of recommendation to prove that they were in Ms. Davis's file. (*Id.*) However, by the time they returned, Ms. Daniels had left her office and gone onto the stage to address the seniors. (*Id.* at 34.) Ms. Davis and her mother waited in the main office for Ms. Daniels for about twenty minutes, and then left the school. (*Id.* at 34–35.) They made no attempt to locate any other administrators to resolve the misunderstanding. (*Id.* at 63–65.) Ms. Davis does not believe that Ms. Daniels treated her any differently during this incident because of her race. (*Id.* at 79.) Ms. Davis did not have any other issues with Defendants her senior year. (*Id.* at 37.) She did not miss any other activities, and attended her Senior Prom and Graduation ceremonies. (*Id.* at 35–36.)

## II. Plaintiffs' Motion to Consolidate

Plaintiffs move pursuant to Federal Rule of Civil Procedure 42 to "consolidate" this case. Rule 42 provides that: "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." However, Plaintiffs have failed to identify the action with which they wish this action to be consolidated, and a review of this District's electronic filing system indicates that there are no other cases filed by Plaintiffs pending in this District. Therefore, Plaintiffs' motion to consolidate is denied, in the absence of any case with which to consolidate the pending action. The Court notes that Plaintiffs have included the names of Kimberly Carolina and Daniel Diaz as defendants in the caption of their motion to consolidate. Ms. Carolina and Mr. Diaz were named as defendants in Plaintiffs' original pro se complaint, but were terminated when Plaintiffs' former counsel filed the Amended Complaint [Doc. # 25], which omitted any claims against these individuals. To the extent that Plaintiffs wish to join Ms. Carolina and Mr. Diaz to this action, and assert new claims against them, that request will be discussed below, in the context of Plaintiffs' motion to supplement the pleadings.

## III. Plaintiffs' Motion to Supplement the Pleadings

After Defendants' summary judgment motion was fully briefed, Plaintiffs moved to supplement their pleadings, seeking to join Kimberly Carolina and Daniel Diaz as

defendants and to assert new claims against each of the Defendants under 20 U.S.C. § 7283 and 18 U.S.C. §§ 2252, 2255, 2256, 2258, 2258E, 2259, 3663, and 3663A. Plaintiffs style this motion as a motion to "supplement the pleadings," but because the motion appears to reference events occurring before the original complaint in this case was filed, the Court will construe Plaintiffs' motion as a motion to amend the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 15(a). *Compare* Fed.R.Civ.P. 15(d) (limiting supplemental pleadings to transactions, occurrences, or events, dating from after the original complaint) *with* Fed.R.Civ.P. 15(a) (governing amendments to pleadings). Defendants oppose this motion, arguing that Plaintiffs cannot show they have good cause to file an amendment that post-dates the deadline for amended pleadings set forth in the scheduling order in this case.

**\*6** After a responsive pleading has been filed, "a party may amend its pleading only with the opposing party's written consent or the court's leave ... [which] the court should freely give when justice so requires." Fed.R.Civ.P. 15(a)(2). Rule 15 has been applied liberally, so that the Federal Rules "facilitate a proper decision on the merits." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (*quoting Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The Court has broad discretion to determine whether or not to allow a party to amend its complaint, considering "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Id.* Though Rule 15 is applied liberally, "Rule 16(b) may limit the ability of a party to amend a pleading if the deadline specified in the scheduling order for amendment of the pleadings has passed. *Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 243 (2d Cir.2007); Fed.R.Civ.P. 16(b). Under the Rule 16(b) standard, a party may obtain a modification of the scheduling order only "upon a showing of good cause."

Federal Rule of Civil Procedure 21 governs the addition of new parties to an action, and provides that parties may be added by court order "on such terms as are just." Under Rule 21 "courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial

system, and the impact the amendment would have on each of the parties already named in the action." *Sly Magazine, LLC v. Weider Publ'ns, LLC,* 241 F.R.D. 527, 532 (S.D.N.Y.2007). However, courts are guided by "the same standard of liberality afforded to motions to amend pleadings under [Fed.R.Civ.P.] 15," when determining whether a plaintiff should be permitted to add parties to an action. *Soler v. G & U, Inc.,* 86 F.R.D. 524, 527–28 (S.D.N.Y.1980).

As a preliminary matter, Plaintiffs' proposed amended complaint consists of a string of statutory citations and alleges no facts whatsoever in support of their proposed claims under those statutes. Without any factual support for their claims, Plaintiffs' proposed amendments are futile. Furthermore, the majority of the statutes cited by Plaintiff are criminal statutes relating to child pornography offenses, statutes governing orders of restitution in criminal cases, and congressional findings with respect to sexual harassment. None of these statutes appear to give rise to a private right of action with the exception of 18 U.S.C. § 2255, which creates a private right of action for victims of child pornography, and thus any claims under those statutes would be futile.

With respect to Plaintiffs' proposed claims under 18 U.S.C. § 2255, the Court infers based on the procedural history of this case that these claims relate to a previous allegation by Plaintiffs that Defendant Weires used Keyonna Davis's name to advertise child pornography. In the original complaint, Loretta Davis alleged that when she performed a google search of the file path for the grade site that Defendant Weires maintained for Keyonna, one of the websites in the search results was a pornographic website with links to child pornography. The Amended Complaint, which was filed by Plaintiffs' then-counsel, omitted all references to these allegations and alleged no claims against Ms. Carolina or Mr. Diaz. Before the pending summary judgment motion was filed, Plaintiffs attempted to amend their complaint to reintroduce these allegations. (*See* Mot. to Amend [Doc. # 46].) Magistrate Judge Margolis denied this motion, concluding that Plaintiffs lacked good cause to amend after the deadline for amended pleadings in the parties' scheduling order had expired. (*See* Order [Doc. # 54].)[4] Thus, Plaintiffs' instant motion appears to be an attempt to relitigate that ruling.

**\*7** Plaintiffs have made no new allegations in their motion to supplement that would establish good cause to amend the complaint after the deadline for amended pleadings set forth in the scheduling order in this case. (*See* Scheduling Order [Doc. # 24] (setting November 30, 2012 as the deadline for amended pleadings).) Furthermore, Plaintiffs' proposed claim pursuant to 18 U.S.C. § 2255 appears to be futile as Plaintiffs do not appear to claim that Keyonna Davis appeared in any of the alleged pornographic images. Even if Plaintiffs were able to establish that they had good cause for their untimely amendment and that such amendment was not futile, an amendment of the complaint to add additional parties and claims at this late date, after the close of discovery and months after the summary judgment motion was filed, would unduly prejudice Defendants. *See Enzo Biochem, Inc. v. Applera Corp.,* 243 F.R.D. 249–50 (D.Conn.2007) (denying leave to amend where the motion to amend was filed one day after the summary judgment motions were filed and thirty-one months after the answer was filed). Therefore, Plaintiffs' motion to supplement the pleadings is denied.[5]

## IV. Defendants' Motion for Summary Judgment[6]

Defendants move for summary judgment on each of Plaintiffs' claims, arguing that Plaintiffs have failed to identify any genuine issues of material fact that would preclude the Court from granting judgment in Defendants' favor.

### A. Equal Protection

Plaintiff Keyonna Davis brings a claim against all Defendants for the violation of her Fourteenth Amendment right to equal protection. In order to establish an equal protection violation, Ms. Davis must show that (1) Defendants treated her differently from other similarly situated individuals and (2) that such selective treatment was based on an impermissible consideration such as race or religion. *Kajoshaj v. New York City Bd. of Educ.,* 543 F. App'x 11, 15 (2d Cir.2013) (citing *Diesel v. Town of Lewisboro,* 232 F.3d 92, 103 (2d Cir.2000)). "To be 'similarly situated,' the individuals with whom [a plaintiff] attempts to compare [herself] must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 64 (2d Cir.1997). In this case, Ms. Davis claims that she was treated differently from her peers on the basis of her race. Defendants argue

that Ms. Davis has failed to meet her burden of production on either of the elements of her claim.

### 1. Defendant Weires

Ms. Davis claims that she was subjected by selective treatment on the basis of her race by Defendant Weires in several respects: (1) that Defendant Weires refused to allow her to make up her first-quarter exam; (2) that Defendant Weires tampered with her chemistry grade; and (3) that Defendant Weires refused to assist her when she had questions about the subject matter of the course. Defendants argue that Ms. Davis has failed to establish either prong of her selective treatment claim with respect to any of these issues.

**\*8** With respect to the missed exam, Defendant Weires avers that she told all of the students who missed the first-quarter exam that they could not make up the exam based on her misunderstanding of the school district's policy regarding make-up exams. (Weires Aff. ¶ 11.) Defendant Weires also avers that when she discovered her mistake, she excluded the first-quarter exam grade from the calculation of the final grade for each of the students who had missed the exam. (Id.) Plaintiffs have not offered any evidence to contradict these statements. Therefore, there is no evidence in the record based on which a jury could reasonably conclude that Ms. Davis was treated differently than any of the other students who missed the exam, whether on the basis of her race or otherwise.

With respect to the claim that Defendant Weires tampered with Ms. Davis's chemistry grade, a review of the record establishes that the parents of both African American and Caucasian students raised complaints with Co-op regarding the grading in Defendant Weires's classes. (Garcia–Blocker Aff. 1 10.) As discussed *supra*, during her first year, Defendant Weires struggled greatly with organization and grading. (Id.) Plaintiffs have offered no evidence to contradict Defendant Garcia–Blocker's statement that these grading difficulties affected both Caucasian and African American students. Furthermore, the record reflects that there were no Caucasian students in the class who received a higher final grade that Ms. Davis. Although the parties dispute whether Ms. Davis received a B- or a C+ as her final chemistry grade, there is no evidence to contradict the fact that the highest grade received by a Caucasian student in Defendant Weires's seventh-period chemistry class was a C+. (Id. ¶ 15.) Ms. Davis also received high marks on some of her quarterly

grade reports—she received the maximum amount of extra credit available during the first quarter, and received 100% for classroom participation that quarter. (Id. ¶ 14; Grade Report.) Based on this record, a reasonable jury could not conclude that Ms. Davis was treated differently than her classmates with respect to her grades, whether on the basis of her race or otherwise.

Finally, with respect to Ms. Davis's claim that Defendant Weires refused to assist her with her classwork, Ms. Davis reports that the day after she and her mother met with Defendants Weires and Costanzo, Defendant Weires passed over her in class when she raised her hand. (Keyonna Davis Dep. Tr. at 51–52.) Ms. Davis has expressed her subjective belief that Defendant Weires called on African American students less frequently than Caucasian students. (Keyonna Davis Dep. Tr. at 56–58.) However, other than this subjective belief, there is no evidence in the record to suggest that Defendant Weires called on African American students in her class less frequently than Caucasian students.[7] Furthermore, Defendant Weires avers that she informed her students that she was available before and after class to assist students with more complicated questions. (Weires Aff. ¶ 9.) Ms. Davis would stay after class about once every other week with her friends to get extra help from Defendant Weires. (Id.; Keyonna Davis Dep. Tr. at 56, 77.) Based on Ms. Davis's own admission at her deposition, Defendant Weires did provide regular assistance to her and her friends after class. Therefore, Ms. Davis has failed to put forth sufficient evidence based on which a jury could conclude that she received differential treatment on the basis of her race with respect to the assistance Defendant Weires provided to her students.

**\*9** Defendants' motion for summary judgment is thus granted with respect to Ms. Davis's equal protection claim against Defendant Weires.

### 2. Defendant Daniels

It appears that Ms. Davis's equal protection claim against Defendant Daniels is based on Defendant Daniels's refusal to allow her to participate in Senior Day. However, Plaintiff has failed to allege the existence of any similarly situated comparators with respect to this claim. Furthermore, even if there were evidence in the record based on which a jury could conclude that Ms. Davis was treated differently than other students with respect to

Senior Day eligibility, Ms. Davis stated in her deposition that she does not believe that Ms. Daniels treated her any differently during this incident because of her race. (Keyonna Davis Dep. Tr. at 79.) A review of the record does not reveal any other evidence based on which a jury could infer that Defendant Daniels, who is African American (*id.*), was motivated by racial animus when she accused Ms. Davis of tampering with her CSNav account and refused to permit her to attend Senior Day. Therefore, Ms. Davis cannot satisfy the second element of her equal protection claim against Defendant Daniels and the Court thus grants Defendants' motion for summary judgment with respect to that claim.

### 3. Defendants Costanzo and Garcia–Blocker

To the extent that Ms. Davis's equal protection claims against Defendants Costanzo and Garcia–Blocker are based on their failure to adequately supervise Defendants Daniels and Weires, these claims must fail because the Court has granted summary judgment on Ms. Davis's underlying claims against those Defendants. Without an underlying constitutional violation, there can be no supervisory liability for that violation. However, it appears that Ms. Davis may also be claiming that Defendants Costanzo and Garcia–Blocker violated her right to equal protection by refusing to transfer her to another chemistry class. Plaintiffs have not identified any similarly situated comparators who requested and were granted a transfer. Thus, Ms. Davis cannot satisfy the first element of her equal protection claim against these Defendants. Furthermore, even assuming that Plaintiffs could identify similarly situated comparators, the record reflects that the only other seventh-period chemistry class was an AP class for which Ms. Davis did not qualify, and that the other available junior chemistry class conflicted with Ms. Davis's class schedule. (Garcia–Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.) Notwithstanding these conflicts, when Mrs. Davis filed her complaint with the OCR, Defendant Garcia–Blocker offered to transfer Ms. Davis to the seventh-period AP chemistry class with additional individualized instruction to compensate for the more difficult course material, and Mrs. Davis declined this offer. (Garcia–Blocker Aff. ¶ 12.) In her deposition, Ms. Davis stated that she does not believe that she was treated differently by Defendants Garcia–Blocker or Costanza because of her race. (*Id.* at 78.) A review of the record reveals no other evidence based on which a jury could reasonably conclude that the decision not to transfer Ms. Davis to another chemistry class was made on the

basis of her race. Therefore, Ms. Davis has not offered sufficient evidence to support her equal protection claims against Defendants Garcia–Blocker and Costanzo and Defendants' motion for summary judgment on those claims is granted.

### B. First Amendment Retaliation

**\*10** Both Ms. and Mrs. Davis bring claims for retaliation in violation of their First Amendment rights against each of the Defendants. To succeed on their First Amendment retaliation claims, Plaintiffs must establish that: (1) they have a right protected by the First Amendment; (2) Defendants' actions were motivated or substantially caused by their exercise of that right; and (3) Defendants' actions caused them some injury. *Dorsett v. Cnty. of Nassau,* 732 F.3d 157, 160 (2d Cir.2013). Absent a showing of some other concrete harm, Plaintiffs must establish that Defendants' actions effectively chilled the exercise of their First Amendment rights. *Id.*

### 1. Plaintiff Keyonna Davis

Ms. Davis alleges that Defendants retaliated against her for her complaint to her mother about Defendant Weires's alleged bias and her mother's filing of an OCR complaint on her behalf (1) when Defendant Weires tampered with her grades and refused to help her in class, (2) when Defendants Garcia–Blocker and Costanzo refused to transfer her to another chemistry class, and (3) when Defendant Daniels denied her permission to attend Senior Day.

Defendants argue that they are entitled to summary judgment because Ms. Davis cannot establish that her complaints to her mother regarding Defendant Weires were protected speech in that they did not address a matter of public concern.[8] However, in making this argument, Defendants attempt to import the standard for public employee First Amendment retaliation claims into a case involving private citizens. *See Hoyt v. Andreucci,* 433 F.3d 320, 329–30 (2d Cir.2006) (laying out standard for public employee cases). Even if this standard were applicable in the case of a public school student and her private-citizen parent, Ms. Davis's complaint to her mother, that her mother relayed to school officials, was that Defendant Weires "seemed to be more aggressive towards the black students" in her chemistry class. (Loretta Davis Dep. Tr. at 11.) Such a complaint would implicate the Fourteenth Amendment rights of all of the students taught

by Defendant Weires and thus would rise above a mere personal grievance to address a matter of public concern.

Defendants next argue that Ms. Davis has failed to establish that any of the alleged retaliatory acts were motivated by the exercise of her First Amendment rights. With respect to the alleged retaliatory acts committed by Defendant Weires, the alleged grading discrepancies and failure to assist Ms. Davis with her classwork did occur very soon after Ms. Davis and her mother complained about Defendant Weires to school administrators. However, while temporal proximity can give rise to an inference of retaliation, the undisputed record reflects that Defendant Weires had serious difficulties completing her grade reports in an accurate and timely fashion, and that these difficulties affected many students of different races in her class. (*See* Garcia–Blocker Aff. ¶ 10.) The record also reflects that Ms. Davis received high marks on some of her assignments (Weires Aff. ¶ 14; Grade Report), and that she received an above-average grade in her chemistry class, that was at least as high as the highest grade received by a Caucasian student. (*Id.* ¶ 15.) Furthermore, Defendant Weires had a policy of addressing complicated questions after class and Ms. Davis does not dispute that Defendant Weires frequently provided her such after-class assistance over the course of the school year. (*See* Keyonna Davis Dep. Tr. at 56, 77; Weires Aff. ¶ 9.) Based on this record, a reasonable jury could not conclude that Ms. Davis's grade reports or Defendant Weires's decision to provide assistance after class, rather than during class, were motivated by Ms. Davis's complaint regarding Defendant Weires.

**\*11** With respect to Defendant Garcia–Blocker's and Costanzo's decision not to transfer Keyonna to another chemistry class, although this decision was made on the same day as Ms. Davis's complaint, Plaintiffs do not dispute that the only other seventh-period chemistry class was an AP class for which Ms. Davis did not qualify, and that the other available junior chemistry class conflicted with Ms. Davis's class schedule. (Garcia–Blocker Aff. ¶ 6; Costanzo Aff. ¶ 5.) Notwithstanding these conflicts, when Mrs. Davis filed her complaint with the OCR, Defendant Garcia–Blocker offered to transfer Ms. Davis to the seventh-period AP chemistry class with additional individualized instruction to compensate for the more difficult course material, and Mrs. Davis declined this offer. (Garcia–Blocker Aff. ¶ 12.) Thus, Defendants actually reconsidered the allegedly retaliatory action after

an additional complaint had been filed. Such behavior does not give rise to an inference of retaliation. In light of this undisputed evidence, a reasonable jury could not conclude that the decision not to transfer Ms. Davis to another chemistry class was motivated by her exercise of her First Amendment rights.

Finally, with respect to the Senior Day incident involving Defendant Daniels, this incident took place a year after Ms. Davis's original complaint to school officials and nearly eight months after her mother filed a complaint with the OCR. Furthermore, Plaintiffs do not dispute that neither complaint involved Defendant Daniels personally. (Loretta Davis Dep. Tr. at 75.) Although a temporal connection can be "enough, in and of itself ... to permit a reasonable jury to find causation," *Summa v. Hofstra Univ.,* 708 F.3d 115, 127 (2d Cir.2013), "[t]he cases that accept mere temporal proximity [between the complaint and the alleged adverse action] as sufficient evidence of causality ... uniformly hold that the temporal proximity must be very close," *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (internal quotation marks omitted). Here, many months had passed between the protected activity and the alleged retaliatory action, and the alleged retaliatory actor was not even implicated by the protected activity. Absent other evidence of a retaliatory motive on the part of Defendant Daniels a reasonable jury could not conclude that her actions on Senior Day were taken in retaliation for Ms. Davis's complaints.

Therefore, Defendants' motion for summary judgment is granted with respect to Ms. Davis's First Amendment retaliation claim.

### 2. Plaintiff Loretta Davis

Mrs. Davis alleges that Defendants committed a host of retaliatory acts against her as a result of her complaints to the school district and the OCR. [9] Based on her responses at her deposition, Mrs. Davis appears to allege the following as the basis for her First Amendment retaliation claim in the Amended Complaint: (1) Defendant Garcia–Blocker's and Defendant Costanzo's decision not to move Keyonna to another chemistry class; (2) her inability to get in touch with the district supervisor or the superintendent to file additional complaints; (3) Defendant Weires's alleged tampering with Keyonna's grades; (4) Defendant Garcia–Blocker's failure to look after Keyonna; (5)

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Defendant Costanzo's refusal to file a complaint against Defendant Weires; and (6) Defendant Daniels's refusal to allow Keyonna to participate in Senior Day.

**\*12** Defendants argue that they are entitled to summary judgment on Mrs. Davis's First Amendment retaliation claim because she cannot show that she suffered any injury as a result of the alleged retaliation. Nearly all of the retaliatory acts of which Mrs. Davis complains directly impacted her daughter rather than her. Thus, Mrs. Davis did not suffer any concrete injury as a result of the alleged retaliation. However, she would still have standing to pursue her claim provided that she could establish that her speech was chilled as a result of the retaliation. Here, Plaintiff filed the OCR complaint after the vast majority of the alleged retaliatory acts had taken place. She continued to call school administrators and complain even after the OCR complaint had been filed. (*See* Costanzo Aff. ¶¶ 6–7.) She also lodged complaints with Defendant Daniels during the next school year. There is no evidence to suggest that anyone ever threatened to take any action against Mrs. Davis that would have deterred "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Washington v. Cnty. of Rockland,* 373 U.S. 310, 320 (2d Cir.2004). Thus, with the exception of the allegation of retaliation by Defendant Daniels, which occurred after the OCR complaint was filed, Mrs. Davis has failed to establish a viable claim of First Amendment retaliation. Furthermore, as discussed above, there is insufficient evidence in the record for a jury to conclude that Defendant Daniels's decision to deny Keyonna permission to attend Senior Day was motivated by Mrs. Davis's exercise of her First Amendment rights. Therefore, the Court grants Defendants' motion for summary judgment with respect to Mrs. Davis's First Amendment retaliation claim.

## C. *Monell* Claim

Plaintiffs also allege a *Monell* claim for municipal liability against the City of New Haven and the New Haven Board of Education arising from the alleged violation of their First and Fourteenth Amendment rights by the individual Defendants. Because the Court has granted summary judgment on both of Plaintiffs' constitutional claims, summary judgment must also be granted on Plaintiffs' *Monell* claim. "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization

where that organization's failure to train, or the policies or customs that it has sanctioned led to an independent constitutional violation." *Segal v. City of New York,* 459 F.3d 207, 219 (2d Cir.2006). Thus, Defendants' motion for summary judgment is granted as to Plaintiffs' *Monell* claim.

## D. Remaining State Law Claims

Having granted summary judgment on all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims for intentional infliction of emotional distress and negligent supervision. *See* 28 U.S.C. § 1367(c)(3); *Carnegie Mellon Univ. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity —will point toward declining to exercise jurisdiction over the remaining state-law claims."). There is no showing of special circumstances here that would justify deviation from this general rule. *Cf. Garden Catering– Hamilton Ave., LLC v. Wally's Chicken Coop, LLC,* No. 3:11CV1892 (JBA), 2014 WL 810821, at \*12 (D.Conn. Feb.28, 2014) (exercising discretionary supplemental jurisdiction where "both parties [we]re smaller businesses with an ongoing dispute, and they [we]re in particular need of a prompt adjudication").

## V. Conclusion

**\*13** For the foregoing reasons, Defendants' Motion [Doc. # 74] for Summary Judgment is GRANTED as to Plaintiffs' federal claims, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Plaintiffs' Motion [Doc. # 85] to Consolidate is DENIED; Plaintiffs' Motion [Doc. # 86] to Request Subpoena is DENIED as moot; and Plaintiffs' Motion [Doc. # 88] to Supplement the Pleadings is DENIED. The Clerk is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2014 WL 1315660

## Footnotes

1    Ms. Davis was a minor when this case was filed and thus the case caption does not reflect her full name. Since then, she has reached the age of majority and thus the Court will refer to her by her full name in this opinion.

2    Defendant Weires misunderstood the school district's policy on make-up exams, and at some point in time, she informed the students who missed the first quarter exam that they could not make up the exam for credit. (Weires Aff. ¶ 11.) Thus, Ms. Davis did not make up the exam she missed. (*Id.*) So as not to penalize students for her misunderstanding, Defendant Weires did not include the first quarter exam when calculating the final grades for the first quarter. (*Id.*)

3    In her affidavit, Defendant Weires avers that the highest grade in the class was a B, but this appears to be a typo, because she goes on to mention that the next highest grade was a B+. (*See* Weires Aff. ¶ 15.)

4    Magistrate Judge Margolis also granted Defendants' motion [Doc. # 80] to strike all references to the alleged pornographic website from Plaintiffs' opposition to the motion for summary judgment. (*See* Rul. on Mot. to Strike [Doc. # 83].)

5    Plaintiffs also move [Doc. # 86] to subpoena Connecticut police records related to their complaints regarding the alleged pornographic website. Because the Court has denied Plaintiffs' motion to amend and the issue of the website has no bearing on the claims in the Amended Complaint, Plaintiff's motion requesting a subpoena is denied as moot.

6    Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir.2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.,* 453 F.3d 112, 116 (2d Cir.2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " *Bouboulis v. Transp. Workers Union of Am.,* 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed.R.Civ.P. 56(c).

7    In her deposition, Ms. Davis stated that some of her friends shared this belief (Keyonna Davis Dep. Tr. at 56–58) and the OCR Report indicates that some students in the focus group reported that Defendant Weires yelled at African American students in her class more frequently than Caucasian or Hispanic students (OCR Report at 3). However, absent any affidavits or deposition testimony from any of these students, these statements represent inadmissible hearsay and thus the Court may not rely on them in evaluating Defendants' summary judgment motion.

8    Defendants acknowledge that the OCR complaint was protected speech.

9    In her deposition, Mrs. Davis appeared to allege retaliation based on Defendants' failure to report Defendant Weires for the purported pornographic website. (Loretta Davis Dep. Tr. at 68.) However, because these allegations were not included in the Amended Complaint, the Court will not address them.

---

**End of Document**                                                         © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2017 WL 3444672
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Hailee R. DESOUZA, Plaintiff,
v.
Edward TAIMAN, Defendant.

No. 3:16-cv-00490
|
Signed 08/10/2017

**Attorneys and Law Firms**

Hailee R. DeSouza, Vernon, CT, pro se.

Kerry R. Callahan, Melanie A. Orphanos, Updike, Kelly
& Spellacy, PC, Hartford, CT, for Defendant.

**RULING ON MOTION TO DISMISS**

Michael P. Shea, U.S.D.J.

**\*1** Plaintiff Hailee DeSouza, *pro se*, sues Defendant
Edward Taiman, Mr. DeSouza's former attorney, based
on allegations arising from a state court eviction action
in which Mr. Taiman represented Mr. DeSouza against
a landlord seeking to evict him. In his seven-count
First Amended Complaint ("Compl."), Mr. DeSouza
alleges that, motivated by racial animus, Mr. Taiman
conspired with the landlord's counsel and court officials
to violate Mr. DeSouza's constitutional and statutory
rights. (ECF No. 35.) Specifically, Mr. DeSouza's First
Amended Complaint alleges (i) interfering, coercing or
intimidating Mr. DeSouza regarding his housing rights in
violation of 42 U.S.C. § 3617 (count one), (ii) violations
of Mr. DeSouza's First, Fourth, Fifth, Sixth, Eighth,
and Fourteenth Amendment rights under 42 U.S.C. §
1983 (count two), (iii) conspiring to interfere with Mr.
DeSouza's civil rights in violation of 42 U.S.C. § 1985(2)
and (3) (count three), (iv) denying Mr. DeSouza equal
protection under the law in violation of 42 U.S.C. § 1981
(count four), (v) interfering with Mr. DeSouza's rights
under the Fair Housing Act, 42 U.S.C. § 3631 et. seq.
(count five), (vi) conspiring to violate Mr. DeSouza's
constitutional rights under 18 U.S.C. § 241 (count six), and

(vii) depriving Mr. DeSouza of constitutional rights under
color of law in violation of 18 U.S.C. § 242 (count seven).

Mr. Taiman moves to dismiss Mr. DeSouza's complaint
under Rules 12(b)(1) and 12(b)(6) of the Federal Rules
of Civil Procedure. For the reasons stated below, the
Court GRANTS Mr. Taiman's motion to dismiss all
counts because Mr. DeSouza fails to allege facts that plead
federal claims.

**I. FACTUAL BACKGROUND**

Mr. DeSouza is a resident of Park West Apartments
located in Vernon, Connecticut. (Compl. at 2.) Mr.
DeSouza retained Mr. Taiman as his attorney when Mr.
DeSouza's landlord sued him for eviction on June 14,
2014. (*Id.* at 3.) Mr. DeSouza alleges that shortly after
being retained, Mr. Taiman suggested that Mr. DeSouza
"move out" of his apartment at the end of his lease. (*Id.*
at 3.) Mr. DeSouza alleges that he instructed Mr. Taiman
that he had done nothing wrong and that he wanted to
take his case to trial against his landlord. (*Id.*) On August
29, 2014, during a scheduled court date at the Rockville-
Vernon Courthouse, Mr. Taiman allegedly lied to him as
part of a conspiracy with the landlord's counsel and a
representative of the court to coerce Mr. DeSouza into
signing a settlement agreement in his eviction case. (*Id.* at
3-7.) According to Mr. DeSouza, the conspiracy aimed to
prevent him from appearing in front of a superior court
judge, to intimidate him, and to hold him in the court
employee's office until he agreed to a settlement. (*Id.* at 7.)

Allegedly, on September 12, 2014, the agreement he was
coerced into signing was used against him in court and,
subsequently, Mr. Taiman allowed him to be called as
a witness for Mr. DeSouza's landlord against his wishes.
(*Id.* at 9.) Mr. DeSouza also alleges that Mr. Taiman's
failure to demand a trial for Mr. DeSouza during the
August 29 court appearance caused Mr. DeSouza to be
terminated from his construction job because of "constant
unlawful, nuisance harassment calls to Mr. DeSouza['s]
employer." (*Id.* at 11.)

**\*2** As a result of Mr. Taiman's actions, Mr. DeSouza
claims he suffered damages, including extreme stress,
anxiety, loss of sleep, stress disorder, emotional pain
and distress, heartburn, ulcers, mental anguish, elevated
heart rate, irregular heartbeat, and an increased need for
treatment and medication. (*Id.* at 12.)

## II. PROCEDURAL HISTORY

Mr. DeSouza filed his initial complaint on March 25, 2016 (ECF No. 1), and Mr. Taiman moved to dismiss on May 31, 2016. (ECF No. 17.) I granted Mr. Taiman's motion to dismiss on Rule 8 grounds, finding that the complaint did not contain "a short and plain statement of the grounds for the court's jurisdiction," or "a short and plain statement of the claim showing that the pleader is entitled to relief." (ECF No. 30)(quoting Fed. R. Civ. P. 8(a)(1),(a)(2)). I granted Mr. DeSouza leave to file an amended complaint addressing deficiencies in his original complaint. (ECF No. 30.)

Mr. DeSouza filed his First Amended Complaint on March 23, 2017[1] and Mr. Taiman filed the current motion to dismiss for lack of jurisdiction on April 19, 2017. (ECF No. 36.)

### III. LEGAL STANDARDS

#### A. Rule 12(b)(1)

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d. Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The court construes the complaint liberally and accepts all factual allegations as true. *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009).

#### B. Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), a court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may allow a case to proceed only if the complaint pleads "enough facts to state a claim to

relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When a plaintiff submits a complaint *pro se*, the court must construe the allegations liberally, raising "the strongest arguments [they] suggest[ ]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. *See Hogan v. Fischer*, 738 F. 3d 509, 515 (2d Cir. 2013)("[A] *pro se* complaint must state a plausible claim for relief.")(citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

### IV. DISCUSSION

**\*3** As Mr. Taimen has moved to dismiss the complaint under Rule 12(b)(1) and Rule 12(b)(6) of Fed. R. Civ. P., I first consider the jurisdictional arguments raised by him. "Where ... a motion to dismiss is made on the ground that the court lacks subject matter jurisdiction as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first, since lack of subject matter jurisdiction may render the other challenges moot." *Nat'l Shooting Sports Found v. Malloy*, 986 F. Supp. 2d 118, 122 (D. Conn 2013) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)).

A. Mr. DeSouza Has Alleged an Injury in Fact that is Fairly Traceable to the Challenged Actions of Mr. Taiman (Counts One to Seven)

Mr. Taiman argues that the Court lacks subject matter jurisdiction over Mr. DeSouza's claims because Mr. DeSouza lacks standing. Specifically, he contends, Mr. DeSouza has not alleged any causal connection between his conduct and Mr. DeSouza's alleged injuries and a favorable decision would not redress his alleged injuries. (ECF No. 36 at 5.)

A plaintiff has standing to sue if he has "(1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision." *Nat'l Shooting Sports Found.* 986 F. Supp. 2d at 122. "If after considering all of the relevant materials, we are unable to discern a basis for the plaintiff's standing, the complaint must be dismissed." *Thompson*, 15 F.3d at 249.

Mr. DeSouza satisfies the constitutional standing requirement because he claims emotional distress, a concrete and actual injury, as a result of Mr. Taiman's actions. (ECF No. 35 at 12.) Mr. DeSouza alleges his injuries stem from a conspiracy between Mr. Taiman, court officials, and counsel for Mr. DeSouza's landlord. While, as discussed below, his allegations are insufficient to plead a cognizable federal claim, they are adequate to plead standing. *See, e.g. Leibovitz v. N.Y.C. Transit Auth.*, 252 F.3d 179, 185 (2d Cir. 2001) (emotional trauma suffered as a result of a hostile work environment was an "injury ... sufficient to establish standing under Article III.")

### B. Mr. DeSouza Fails to State a Claim for Which Relief Can Be Granted (Counts One to Seven)

#### 1. Fair Housing Act (Count One)

In his first count, Mr. DeSouza alleges that Mr. Taiman coerced, intimidated, threatened, or otherwise interfered with his rights in violation of 42 U.S.C. § 3617, a provision of the Fair Housing Act. Section 3617 provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The rights protected by Sections 3603-3606 include the right to be free from discrimination on the basis of race, color, religion, sex, family status, national origin, or handicap, in the purchase or rental of a dwelling and related transactions. *See* 42 U.S.C. §§ 3603-06.

"In order to prevail on a § 3617 claim, a plaintiff must show: "(1) that the plaintiff was engaged in a protected activity; (2) that the defendant was aware of this activity; (3) that the defendant took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action." *Robbins v.*

*Conn. Inst. for the Blind*, No. 3:10-cv-1712 (JBA), 2012 WL 3940133, at *6 (D. Conn. Sept. 10, 2012).

**\*4** Mr. DeSouza's complaint fails to allege any facts suggesting that Mr. Taiman interfered with his exercise of any rights protected by the Fair Housing Act, because it fails to allege that Mr. DeSouza was engaged in any transaction related to the rental or purchase of a dwelling. Mr. Taiman, as alleged in the complaint, was acting as a lawyer representing a client in a lawsuit, not as a renter or seller of real property or as a real estate agent, broker, or appraiser. The complaint's description of the eviction proceeding concerning Mr. DeSouza's apartment does not suffice to bring this case under the Fair Housing Act because an eviction proceeding is not a rental or sale transaction and does not otherwise fall within the statute. Further, Mr. DeSouza does not make any non-conclusory allegations that Mr. Taiman's actions were in retaliation for the exercise of his Fair Housing rights; he alleges no facts suggestive of a retaliatory motive. *See Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) (affirming dismissal of a claim under Section 3617 because "a retaliation claim does require a showing of a particular state of mind, i.e. a retaliatory motive," and because "[n]o non-conclusory allegation of fact showing such a motive is in the complaint.") Thus, Mr. DeSouza's 42 U.S.C. § 3617 claim is dismissed.

#### 2. Section 1983 (Count Two)

In his second count, Mr. DeSouza alleges that Mr. Taiman deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "[T]he acts of private attorneys are not deemed to be under color of state law, and an otherwise private person acts under color of state law only if he or she conspires with state officials to deprive another of federal rights." *Kash v. Honey*, 38 Fed. Appx. 73, 75-76 (2d Cir. 2002) (internal citations and quotation marks omitted).

To state a claim against a private entity on a section 1983 conspiracy

theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act. Put differently, a private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents. A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.

*Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)(internal citations and quotation marks omitted).

Mr. DeSouza does not allege any facts, beyond merely conclusory allegations, to suggest that Mr. Taiman was a state actor or that there was a conspiracy to deprive him of his constitutional rights between Mr. Taiman and any state actor. In the absence of any factual basis to support a conspiracy, and because Mr. Taiman himself is not a state actor, but instead a private attorney, Mr. DeSouza fails to state a claim under 42 U.S.C. § 1983.

### 3. Section 1985 (Count Three)

In his third count, Mr. DeSouza alleges that Mr. Taiman conspired to deter him from attending or testifying in court by use of force, threats or intimidation in violation of 42 U.S.C. § 1985(2). A conspiracy claim under Section 1985(2):

> [R]equires (1) a conspiracy (2) for the purpose of impeding, hindering, obstructing, or defeating in any manner, (3) the due course of justice in any [state court], (4) with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

*Marshall v. Webster Bank, N.A.*, No. 3:10-cv-908, 2011 WL 219603 at *9 (D. Conn., Jan. 21, 2011). Mr. DeSouza

also alleges that Mr. Taiman conspired to deprive him of his right to equal protection under the law by preventing him from advocating for himself in a legal proceeding under 42 U.S.C. § 1985(3). A conspiracy claim under Section 1985(3):

> **\*5** [R]equires a plaintiff to allege: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). In order to prevail under either claimed subsection of 42 U.S.C. § 1985, Mr. DeSouza must "provide some factual basis supporting a meeting of the minds, such that defendant[ ] entered into an agreement, express or tacit, to achieve the unlawful end." *Kalderon v. Finkelstein*, 495 Fed. Appx. 103, 108 (2d Cir. 2012).

Mr. DeSouza's Section 1985(2) claim provides no facts to support a meeting of the minds, and further, provides no facts to prove intent on Mr. Taiman's part to impede justice or deny Mr. DeSouza equal protection under the law. To the contrary, Mr. DeSouza's complaint alleges that he attended court and testified on his own behalf. *See* ECF No. 35 at 9. Mr. DeSouza's Section 1985(3) claim similarly fails to plead any facts establishing a conspiracy or any intent to deprive his equal protection or property rights. Further, Mr. DeSouza pleads no facts suggesting racial or class-based discriminatory animus. For all these reasons, he fails to state a claim under 42 U.S.C. § 1985.

### 4. Section 1981 (Count Four)

In his fourth count, Mr. DeSouza alleges that Mr. Taiman interfered with Mr. DeSouza's "right ... to make and enforce contracts, to sue, be [a party], give evidence, and

to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "To establish a § 1981 claim, a plaintiff must show: 1) that he is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendant; and 3) that the discrimination concerned one or more of the activities enumerated in § 1981." *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 261 (2d Cir. 2000). While Mr. DeSouza's complaint alleges sufficient facts to meet the first prong, it stumbles on the second and third prongs. The second prong requires "alleged facts which give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Mr. DeSouza's complaint does not allege any facts to support even a "minimal inference of discriminatory motivation," relying instead solely on conclusory allegations. In support of his claim that Mr. Taiman intended to discriminate against him on the basis of his race, Mr. DeSouza provides only conclusory remarks such as "oppressive RACISTS bias motives contrary to and in violation of the law," (ECF No. 35 at 13), "defendant with evil and demonic RACISTS intent," (*Id.*), and "[t]he defendant, a deviant, evil conman with oppressed racial motives...." (*Id.* at 6.) Further, as noted above, the complaint provides no facts suggesting that Mr. Taiman interfered with Mr. DeSouza's right to be a party, give evidence, or take any of the other actions identified in the statute. As noted, the complaint alleges that Mr. DeSouza was a party to an eviction action and testified at trial. Therefore, his 42 U.S.C. § 1981 claim is dismissed.

5. Mr. DeSouza's Claims Under 18 U.S.C. §§ 241, 242 and 42 U.S.C. § 3631 Invoke Criminal Statutes That Provide No Private Right of Action (Counts Five, Six and Seven)

**\*6** Mr. DeSouza alleges that Mr. Taiman violated 18 U.S.C. §§ 241 and 242, and 42 U.S.C. § 3631. Because these are criminal statutes, they provide no private cause of action. *Xu v. Neubauer*, 166 F. Supp. 3d. 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action."). *See also Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972)("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government, not ... by private complaints."); *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009)("[F]ederal criminal statutes do not provide private causes of action"). Thus, Mr. DeSouza has failed to state a claim in these counts. *Hill v. Didio*, 191 Fed. Appx. 13, 14 (2d Cir. 2006)("[T]here is no private right of action under section 242 ... nothing in the language or structure of section[ ] 241 ... suggests that Congress intended to create a private right of action...."; *See also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *Alaji Salahuddin v. Alaji*, 232 F.3d 305, 308, 311–12 (2d Cir. 2000); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). *Branson v. Malott*, No. 1:11-CV-807, 2012 WL 1950274, at *7 (S.D. Ohio 2012)(Noting 42 U.S.C. § 3631 is "criminal in nature and there is no private right of action for violation of this section.") *See also Blechinger v. Sioux Falls Housing and Redevelopment Comm'n*, No. 12-4004, 2012 WL 174653, at *3 (D.S.D. Jan. 20, 2012); *Jack v. Stubblefield*, No. 5:09–cv–46, 2009 WL 1809931, at *2 (W.D. Va. June 22, 2009).

## V. CONCLUSION

For the reasons stated above, the motion to dismiss (ECF No. 36) is GRANTED because Mr. DeSouza has failed to state a claim for which relief can be granted.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2017 WL 3444672

---

Footnotes

1    Plaintiff initially filed his First Amended Complaint on March 20, 2017 (ECF No. 32), and subsequently refiled with minor edits on March 23, 2017. (ECF No. 35.) The Court will treat Plaintiff's most recent filing (ECF No. 35) as the operative complaint.

---

                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 464189
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Diane FLOOD, as Guardian of the
Person and Property of Anne Marie
Flood, an Incapacitated Person, Plaintiff,
v.
CSX TRANSPORTATION, INC., Defendant.

No. 11–CV–162S.
|
Feb. 13, 2012.

**Attorneys and Law Firms**

Alan D. Voos, John F. Maxwell, Maxwell Murphy, LLC, Buffalo, NY, for Plaintiff.

J. Christine Chiriboga, Anspach, Meeks, Ellenberger, LLP, Buffalo, NY, for Defendant.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**I. INTRODUCTION**

*\*1* Plaintiff Diane Flood, as guardian of the person and property of Anne Marie Flood, commenced this action on January 30, 2008 by filing a summons and complaint in the New York State Supreme Court, County of Erie. On February 25, 2011 Defendant CSX Transportation ("CSX") filed a Notice of Removal to this Court. Presently before this Court is Plaintiff's Motion to Remand. For the reasons discussed below, Plaintiff's motion is granted. [1]

**II. BACKGROUND**

On January 30, 2008 Plaintiff filed her complaint in the New York State Supreme Court, County of Erie against CSX and then-defendant the Town of Hamburg, New York ("Hamburg"). (Notice of Removal, ¶ 4, Docket No. 1.) The complaint asserted various claims for negligence

as well as violations of Sections 21, 53–a and 53–b of the New York State Railroad Law arising out of the collision between a train operated by CSX and Anne Marie Flood's vehicle on November 24, 2007, resulting in Flood suffering traumatic brain injuries. (Id. ¶ 12.)

On January 11, 2010, the Honorable Timothy J. Drury, New York Supreme Court Justice, granted Hamburg's motion for summary judgment. (Id. ¶ 15.) Justice Drury's order was filed on January 20, 2010 and notice of entry was served on January 22, 2010. (Id. ¶ 16.) Plaintiff appealed that decision to the Appellate Division, Fourth Judicial Department, but that court affirmed the lower court's decision on December 30, 2010. (Id. ¶ 17.) Hamburg served Notice of Entry of the order on Plaintiff on January 5, 2011. (Id.)

Thereafter, CSX filed its notice of removal on February 25, 2011. (Docket No. 1.) Plaintiff responded with the present motion to remand, filed on March 25, 2011. (Docket No. 5.) The parties' briefs were deemed submitted on April 22, 2011, at which time this Court took Plaintiff's motion under advisement without oral argument.

**III. DISCUSSION**

**A. Defendant's Removal and Plaintiff's Motion to Remand**

A civil action brought in state court may be removed by a defendant to a federal district court of original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions arising under the Constitution, treaties, or laws of the United States, and over all civil actions between citizens of different states, if the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a)(1).

Out of respect for states' rights and in keeping with the limited jurisdiction of federal courts, removal jurisdiction is "strictly construed," with all doubts resolved against removal. Syngenta Corp Prot., Inc. v. Henson, 537 U.S. 28, 32, 123 S.Ct. 366, 154 L.Ed.2d 368 (2002); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir.2007). And the removing party bears the burden of establishing proper jurisdiction. United Food & Commercial Workers Union v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir.1994); Funeral Fin. Sys., Ltd. v. Solex Express, Inc., No. 01–

CV6079(JG), 2002 WL 598530, at *3 (E.D.N.Y. Apr.11, 2002) (noting that in the face of a motion to remand, the burden falls on the defendant to prove the existence of jurisdiction and that the case is properly in federal court).

**\*2** Defendant removed this action on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Defendant contends that the state court's dismissal of Plaintiff's claims against Hamburg leave only diverse parties, namely CSX, a Virginia corporation with its principle place of business in Jacksonville, Florida, and Plaintiff, a New York resident and citizen. (Notice of Removal ¶¶ 5, 10.)

Plaintiff challenges Defendant's removal for failure to comply with the 30–day notice and 1–year commencement deadlines under 28 U.S.C. § 1446(b), as well as because Defendant waived its right to remove this action by engaging in extensive litigation in state court.

### 1. § 1446(b)'s 30–day removal limit

28 U.S.C. § 1446(b) provides that:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other part from which it may first be ascertained that the case is one which is or has become removable.

The 30–day statutory time limit is mandatory, but failure to adhere to it constitutes a procedural, rather than a jurisdictional, defect. *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.,* 422 F.3d 72, 75 (2d Cir.2005) (describing thirty-day deadline for notice of removal under § 1446(b) as "mandatory and rigorously enforced, but not jurisdictional") *BNY W. Trust v. Roman,* No. 3:11–cv–274 (CSH), 2011 WL 2461899, at *1 (D. Conn. June 20, 2011). However, the mere fact that a state court granted a motion for summary judgment or motion to dismiss resulting in "the involuntary dismissal of non-diverse parties does not make an action removable." *Quinn v. Aetna Life & Casualty Co.,* 616 F.2d 38, 40, n. 2 (2d Cir.1980).

The purpose of this distinction is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, producing renewed lack of complete diversity in the state court action, a result repugnant to the requirement in 28 U.S.C. s 1441 that an action, in order to be removable, be one which could have been brought in federal court in the first instance.

*Id.* (internal citations omitted).

Here, Justice Drury's decision was filed on January 20, 2010. Applying the reasoning in *Quinn,* this did not make the action immediately removable. *See id.* Instead, the action became removable once the time available to Plaintiff to appeal the decision expired. *Kobza v. Target Stores, Inc.,* No. 09–CV–00865(S)(M), 2009 WL 5214489, at *3 (W.D.N.Y. Dec.29, 2009) (report and recommendation) (noting that action might become removable "where the plaintiff allows the deadline for an appeal of the dismissal order to lapse without taking an appeal"); *Mahl Brothers Oil Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 307 F.Supp.2d 474 (W.D.N.Y.2004) (holding that Plaintiff's failure to appeal state court order constituted voluntary act and thus did not bar removal).

**\*3** Here, Plaintiff did, however, appeal Justice Drury's decision to the Appellate Division, Fourth Judicial Department, which affirmed the decision on December 30, 2010. Plaintiff received notice of the Appellate Division's decision on January 5, 2011. From that point, Plaintiff had 30 days, plus an additional five days because the notice was received by mail, to seek an appeal with the New York Court of Appeals. N.Y.C.P.L.R. § 5513 (McKinney 1999). Accordingly, Defendant's time to file its notice of removal did not start running until Plaintiff had fully exhausted its options on appeal on February 10, 2011 the expiration date for any further review of the Appellate Division's decision. *See Atlanta Shipping Corp. v. Int'l Modular Housing, Inc.,* 547 F.Supp. 1356, 1360 n. 8, (S.D.N.Y.1982) (noting that where possibility of appeal no longer existed removal can be allowed).

2012 WL 464189

Defendant's filing of its notice of Removal on February 25, 2011 was therefore within the 30–day deadline set forth in § 1446.

### 2. § 1446(b)'s 1–year Commencement Deadline

In addition to the 30–day notice deadline, 28 U.S.C. § 1446(b) also provides that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." Here, CSX did not file its notice of removal until three years after the case was originally filed, well outside the 1–year commencement deadline. Following the plain words of the statute, Plaintiff's Motion to Remand could be granted on this basis.

Resisting that result, Defendant asks this Court to apply the doctrine of equitable tolling, adopted by the court in *Hill v. Delta International Machinery Corp.,* 386 F.Supp.2d 427 (S.D.N.Y.2005). That decision held that a court could allow an extension of the 1–year commencement deadline where "the plaintiff acted tactically to avoid removal and the interests of justice favor removal." *Id.* (quoting *In re Rezulin Prods. Liab. Litig. (MDL No. 1348),* Nos. 00 Civ. 2843(LAK), 02 Civ. 6827(LAK), 2003 WL 21355201, at *2 (S.D.N.Y. June 4, 2003) ("*In re Rezulin*" )). To reach this conclusion, the court in *Hill* first analogized the 1–year commencement deadline to § 1446(b)'s procedural 30–day notice deadline. *Id.* at 430. The Hill court then determined that, on this basis, the 1–year deadline was also procedural, and could be extended. *Id.* Whether such an extension is warranted could be ascertained by considering "the plaintiff's behavior, the fairness to the defendant of allowing or denying the extension, and the systemic interest in efficiency and respect for the state courts." *Id.* at 431. Elaborating on these factors, the first considers whether "plaintiffs engaged in tactics designed to prevent defendant from removing the case to federal court." *See Meding v. Receptopharm, Inc.,* No. 08–CV–2367 (SLT) (MDG), 2008 WL 4610303, at *8 (E.D.N.Y. Oct. 15, 2008). The second factor looks to whether defendant exhibited a lack of diligence in seeking removal. *See Clark v. Nestle USA, Inc.,* No. Civ.A. 04–1537, 2004 WL 1661202, at *2 (E.D.La. July 22, 2004). Finally, the third factor weighs against removal where "substantial progress" had been made in the state forum. *Hill,* 386 F.Supp.2d 431.

*\*4 A review of the relevant case law shows that the Second Circuit has not conclusively determined whether the 1–year commencement deadline can be equitably tolled, *Meding,* 2008 WL 4610303, at *8, although the Fifth Circuit has allowed removal pursuant to the equitable tolling doctrine, *Tedford v. Warner–Lambert Co.,* 327 F.3d 423, 426–27 (5th Cir.2003); *Brown v. Descheeny,* No. 09–0021, 2010 WL 1141156, at *2 (S.D.Miss. Mar.22, 2010); *Monk v. Werhane Enterprises, Ltd.,* No. 06–4230, 2006 WL 3918395, at *4 (E.D.La. Nov.27, 2006). Other district courts in the Second Circuit have applied reasoning similar to that in Hill. *See Torah Soft Ltd. v. Drosnin,* No. 00 Civ. 676(JCF), 2003 WL 22077414, at *4 (S.D.N.Y. Sept.8, 2003); *In re Rezulin,* 2003 WL 21355201, at *2.

Following in the footsteps of the Court's decision in *Meding,* this Court need not take a position on whether the 1–year commencement deadline is jurisdictional or procedural because here CSX has failed to clearly demonstrate that Plaintiff manipulated the state litigation to prevent CSX from removing this case to federal court. *See* 2008 WL 4610303, at *8.

This action was commenced on January 30, 2008 against both Hamburg and CSX. Plaintiff did not wait until CSX threatened removal to add Hamburg as a party and thus destroy diversity. *See Hill,* 386 F.Supp.2d at 433 (noting that non-diverse defendant was included in initial complaint). Though CSX claims that Plaintiff's causes of action against Hamburg were legally and factually non-cognizable and that Plaintiff failed to conduct any discovery, Plaintiff opposed Hamburg's motion for summary judgment in a 20–page memorandum. (Opposition to Summary Judgment, Docket No. 9–6.) Were this Court to adopt CSX's arguments, it would have to find the doctrine of equitable tolling applicable anytime a plaintiff's cause of action was dismissed on a motion for summary judgment. This is plainly insufficient. Alternatively, CSX would have this Court conduct an intensive review of the legal basis for Plaintiff's claims against Hamburg, and the state court's decision, to determine whether Plaintiff's claims were frivolous. Given that neither of the courts that considered Plaintiff's claims against Hamburg described the claims in such terms and that the claims were dismissed on a motion for summary judgment, as opposed to a motion to dismiss, such scrutiny is not warranted.

This is not to say that there does not appear to have been significant delay in the course of litigating the state court action. Nevertheless, those delays occurring during discovery were attributable to both Plaintiff and CSX. Plaintiff apparently adjourned a number of depositions that were originally scheduled for June 12, 2008 such that they were not concluded until August 31, 2009. CSX, for its part, sought a protective order against Plaintiff's motion to compel, and itself moved to compel the deposition of one of Plaintiff's experts, a motion that resulted in an appeal to the Appellate Division, Fourth Department. *See Meding,* 2008 WL 4610303, at *8 (noting that it was defendant, not plaintiffs, who expanded scope of action by moving for order requiring filing of formal pleadings). While this Court does not challenge the parties' good faith in carrying out discovery, and resisting demands they considered inappropriate, it is inevitable that such motion practice will lead to some delay that cannot entirely be left at Plaintiff's doorstep. Additionally, it appears that the law firm representing Plaintiff dissolved in the fall of 2009, resulting in some delay that cannot be attributed to Plaintiff's intentional manipulation. (Attorney's Reply Affirmation, ¶ 3, Docket No. 9.)

**\*5** CSX points an accusing finger at Plaintiff's "half-hearted" appeal from Justice Drury's decision granting Hamburg's motion for summary judgment. But that decision was not filed until January 20, 2010, almost a year after the expiration of the 1–year commencement deadline. There would be no need for Plaintiff to further delay the litigation by dragging out the appeals process because she would have already fulfilled her objective. Any further delay would be unnecessary to Plaintiff's alleged goal of avoiding removal.

Other cases in which plaintiffs were found to have committed the kind of tactical manipulation alleged here are easily distinguishable. This is not a case in which a plaintiff waited until a few days after the 1–year deadline had passed before voluntarily dismissing claims against the only non-diverse defendant. *See In re Rezulin,* 2003 WL 21355201, at *2. Nor is this a case in which a plaintiff hid the true extent of his damages until just after the expiration of the 1–year time period. *See Styron,* 2011

WL 721473, at *5. Instead, this is simply a complicated case involving many witnesses and difficult discovery questions. [2] "[W]hen a party files a motion to remand challenging the removal of an action from state court, the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." *Hill,* 386 F.Supp.2d at 429 (internal quotations omitted). That burden has not been met here. Accordingly, Plaintiff's Motion to Remand will be granted.

**3. § 1446 Waiver of Defendant's Right to Remove**
Plaintiff also argues that remand is appropriate because CSX waived its right to remove by demonstrating an intent to litigate in state court. *See Hill v. Citicorp,* 804 F.Supp. 514, 517 (S.D.N.Y.1992). Having found removal improper on the basis of § 1446(b)'s 1–year commencement deadline, this Court does not reach this additional argument.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is granted.

## V. ORDERS

IT IS HEREBY ORDERED, that Plaintiff's Motion to Remand (Docket No. 5) is GRANTED.

FURTHER, that the Clerk of the Court is directed to transfer this case to the New York State Supreme Court, County of Erie.

FURTHER, that the Clerk of the Court is directed to take the steps necessary to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 464189

Footnotes

**Flood v. CSX Transp., Inc., Not Reported in F.Supp.2d (2012)**

2012 WL 464189

1    In support of her Motion to Remand, Plaintiff filed a Memorandum of Law; an Attorney Affidavit, with Exhibits; a Reply Memorandum; and an Attorney Reply Affirmation, with Exhibits. (Docket Nos. 5. 9.) In opposition to Plaintiff's motion, Defendant filed a Memorandum of Law; and an Attorney Affidavit, with Exhibits. (Docket Nos. 7, 8.)

2    Indeed, CSX submitted notices of non-party deposition for as many as 50 witnesses. (Ex. D, Docket No. 9–4.)

---

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1225791
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Emma GUNTER, Plaintiff,
v.
LONG ISLAND POWER
AUTHORITY/KEYSPAN, Defendant.

No. 08 CV 498(RRM)(LB).
|
Feb. 15, 2011.

**Attorneys and Law Firms**

Emma Gunter, Rockville, NY, pro se.

Elisa M. Pugliese, Cullen and Dykman LLP, Hicksville, NY, for Defendant.

***REPORT AND RECOMMENDATION***

BLOOM, United States Magistrate Judge.

**\*1** Plaintiff, Emma Gunter, files this *pro se* case under various federal and state laws alleging defendant unlawfully denied her requests for a utility account. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure .[1] The Honorable Roslynn R. Mauskopf referred defendant's motion to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that the motion should be granted in part and denied in part and that the action should be stayed so that plaintiff may present the surviving state law claims to the Long Island Power Authority for its administrative review.

BACKGROUND

This case revolves around plaintiff's numerous attempts to apply for a utility account with defendant. Defendant Long Island Power Authority/Keyspan ("LIPA" or defendant) is a wholly-owned subsidiary of the Long Island Power Authority ("Authority"), "a corporate

municipal instrumentality and political subdivision of the State of New York." Cestra Aff. ¶ 3.

Plaintiff resided at 21 Howard Street, Rockville Center, New York (hereinafter, "the residence"), which she co-owned with her then-husband Max Fequiere. Def.'s 56.1 Statement[¶¶] 4–5, Ex. 7 to Pugliese Aff. at p. 7, lines 2–6.[2] Defendant provided electricity to the residence under an account naming only Mr. Fequiere as the customer of record. Def.'s 56.1 Statement ¶¶ 11–12.

Beginning in May 2005, Mr. Fequiere stopped paying the electric bill Ex. C. to Cestra Aff. Due to the mounting arrears, defendant shut off the electricity on May 23, 2006. Def.'s 56.1 Statement ¶ 13. That same day, plaintiff called the Authority identifying herself as "Emma Gunter," a "tenant," who was in the process of buying the residence. *Id.* She agreed to pay the current electric bill of $346.80 and to bring in proof of ownership when she received it to change the account to her name. Ex. D to Cestra Aff. at entry 5–23–06. Plaintiff sent her daughter to defendant's office with a check for $367 and service was reconnected. Def.'s 56.1 Statement ¶ 15. Plaintiff avers that in May 2006 she went to defendant's office to request an account, but "her verbal application ... was denied until Max Fequiere or anyone living at the property [paid] Mr. Fequiere['s] bill." Ex. A. to Pl.'s Opp. to Def.'s Mot. for Summ. Jt. ("Pl.'s Opp.") at 6 (Plaintiff's sworn responses to Defendant's First Set of Interrogatory Requests).

In July 2006, plaintiff divorced Mr. Fequiere. Def.'s 56.1 Statement ¶ 7. By the terms of the Judgment of Divorce and pursuant to a deed recorded on November 6, 2006, plaintiff became the sole owner of the residence. *Id.* ¶ 7–9. In September 2006, plaintiff showed a LIPA employee, who had come to the residence, her "closing documents" but he told her to take the deed to the LIPA office. Ex. A. to Pl.'s Opp. at 6; Ex. D to Cestra Aff. (entry 9–20–06). On an unspecified date, plaintiff went to the LIPA office to request an account. Ex. A. to Pl.'s Opp. at 6. An employee and manager of defendant refused plaintiff's "closing documents" because there was no deed. *Id.* They told her that "Max Fequiere['s] account ha[d] to be paid before any other account would be established at the location." *Id.*

**\*2** In the meantime, plaintiff paid some but not all of the arrears on Max Fequiere's account. Def. 56.1 Statement ¶¶ 18–20. On January 11, 2007 and January 12, 2007,

plaintiff called defendant to state that she had purchased the residence but did not yet have a copy of the deed. *Id.* ¶ 16. On January 26, 2007, Max Fequiere contacted LIPA to request his account be closed and identified plaintiff for the first time as his ex-wife. *Id.* ¶ 21.

On January 30, 2007, plaintiff's daughter, Sarah Jones, applied for an account with defendant, stating that she began renting a room at the residence in June 2006. *Id.* ¶ 22. Since Ms. Jones's mail and her social security number revealed that she had been associated with the residence since 2003, defendant told Ms. Jones to get the owner of the premises to come into the LIPA office with proof of identification and ownership to take over service. *Id.*

Instead, Ms. Jones filed an action in New York Supreme Court, Nassau County, seeking to restrain LIPA from turning off service. *Id.* ¶ 24. Ms. Jones alleged that a child lived at the premises who used a breathing apparatus. *Id.* ¶ 25. The Supreme Court in Nassau County denied Ms. Jones's Order to Show because she failed to serve LIPA with her supporting papers for the application and because the dispute was subject to the primary jurisdiction of the Authority. Pugliese Aff. at Ex. 12.

Since no one was paying the electric bill, LIPA terminated service at the premises for nonpayment on or about June 5, 2007. Def.'s 56.1 Statement ¶ 30. Ms. Jones appealed the denial of her OSC and received a stay from the Appellate Division pending the hearing of the appeal. *Id.* ¶ 31. The stay was conditioned on Ms. Jones first paying LIPA $2,500. *Id.* Ms. Jones paid the $2,500 and service was restored, but she failed to perfect her appeal. After the appeal was dismissed, defendant again terminated service to the residence. *Id.* ¶¶ 34–35.

When another LIPA employee came to the residence in September 2008, he took copies of plaintiff s deed, closing documents, and filings from the instant action and advised plaintiff to visit the Nassau County Department of Social Services. Ex. A. to Pl.'s Opp. at 6. The Nassau County Department of Social Services denied plaintiff's request for emergency assistance. *Id.* Plaintiff was subsequently "criminally charged with child welfare endangerment and child neglect and her family removed because she did not have a utility account." *Id.*

In November 2008, plaintiff met with a LIPA Government liaison representative, who told plaintiff that "he wanted

money for the account since the time [Mr. Fequiere] left" and that plaintiff should bring the deed to the LIPA office. *Id.* at 7. That same month, plaintiff returned to the LIPA office with the deed. Def.'s 56.1 Statement ¶ 40. A LIPA employee created an account on plaintiff's verbal request, without making a photocopy or requiring a written application. Ex. A to Pl.'s Opp. at 7. This account at the premises remains active. Def.'s 56.1 Statement ¶ 40.

**\*3** Plaintiff brings this action alleging that defendant discriminated against her on the basis of her marital status by demanding that she pay her ex-husband's debt and that defendant's requirement that she show them a deed prior to opening an account violated her equal protection rights. She also raises various claims stemming from defendant's alleged failure to properly notify her when her applications were denied and violations of the Authority's rules as well as state and federal laws protecting utility consumers. Plaintiff moved for a preliminary injunction when she commenced this action; that motion was denied. The parties then conducted discovery. Defendant now moves for summary judgment on the grounds enumerated below. Plaintiff opposes the motion and defendant has replied.

## STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* [3] A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (quoting *Anderson,* 477 U.S. at 248); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto*

*v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000); *see also Baker v. The Home Depot,* 445 F.3d 541, 543 (2d Cir.2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendant's motion for summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"[A]n opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must —by affidavit or as otherwise provided in this rule —set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e) (2); *see Matsushita,* 475 U.S. at 586–87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson,* 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagra Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (quoting *Anderson,* 477 U.S. at 252). Here, because plaintiff is proceeding *pro se,* we read her papers "liberally and interpret them to raise the strongest arguments that they suggest." *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006) (quoting *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal quotation marks omitted)).

**\*4** Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. *See* Local Rule 56.1(a); *see also Gianullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003); *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 72 (2d Cir.2001). Defendant submitted a statement of undisputed facts pursuant to Local Rule 56.1(a). Even though plaintiff failed to file a Rule 56.1 statement, the Court "must be satisfied that the citation to the evidence in the record supports the assertion." *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004); *see Gianullo,* 322 F.3d at 143 n. 5. Therefore, the Court reviews the entire record and deems admitted only those

facts in defendant's Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

## DISCUSSION

### I. Marital Status Discrimination under the ECOA
The Equal Credit Opportunity Act (the "ECOA") was enacted in 1974 to "eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Mays v. Buckeye Rural Elec. Coop.,* 277 F.3d 873, 876 (6th Cir.2002). *See also* Equal Credit Opportunity Act, Pub.L. No. 93–495, § 502, 88 Stat. 1521, 1521 (1974). ("The Congress finds there is a need to insure that [institutions] exercise their responsibility to make credit available ... without discrimination on the basis of sex or marital status.") The ECOA prohibits any creditor from discriminating against an applicant on the basis of race, color, religion, national origin, sex, marital status, or age. *See* 15 U.S.C. § 1691(a)(1). Under the statute, the Court may grant equitable relief or declaratory relief, including actual damages and punitive damages, against "[a]ny creditor who fails to comply with any requirement imposed under this subchapter ...." 15 U.S.C. § 1691e(a)-(c).

Plaintiff alleges that defendant denied her an account based on her marital status and that "defendant['s] actions ... pursuant to custom, policy and/or [sic] have the effect of discrimination on the basi[s] of marital status." Am. Compl. ¶ 8. As the ECOA permits both disparate impact or disparate treatment claims, *Powell v. Am. Gen. Fin., Inc.,* 310 F.Supp.2d 481, 487 (N.D.N.Y.2004), the Court liberally construes plaintiff's amended complaint to raise both types of claims.

### A. Disparate Impact
In order to establish a prima facie case that defendant's practices caused disparate impact on the basis of one of the prohibited grounds under the ECOA, plaintiff must "(1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship exists between the two." *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 160 (2d Cir.2001). To meet this requirement, plaintiff must "demonstrate with statistical evidence that the practice or policy has

an adverse effect on the protected group." *Jones v. Ford Motor Credit Co.,* No. 00–CV–8330, 2002 WL 88431, at *3 (S.D.N.Y. Jan.22, 2002) (McKenna, J.). Plaintiff alleges that defendant's policy of requiring an applicant living at an address tied to a delinquent account to (a) provide proof of ownership or legal occupancy or (b) pay the outstanding debt even when the delinquent account is not in the applicant's name, discriminates against applicants on the basis of marital status. However, she provides no statistical evidence of the causal link between the practice and an adverse effect on married or single individuals. Accordingly, plaintiff fails to establish a prima facie claim under a disparate impact theory.

B. Disparate Treatment

**\*5** Although the Second Circuit has not ruled on whether the Title VII burden-shifting analysis applies to the ECOA claims, various other Circuit courts and lower courts in this Circuit have applied the Title VII burden-shifting analysis to the ECOA claims. *See Mays,* 277 F.3d at 876–877; *Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 893 (1st Cir.1992). *But see Latimore v. Citibank Fed. Sav. Bank,* 151 F.3d 712, 714 (7th Cir.1998) (since applicants are not competing against each other for a single job, the burden should not shift to defendant to provide a legitimate nondiscriminatory reason for choosing one applicant over another). *See also Powell,* 310 F.Supp.2d at 487; *Gross v. U.S. Small Bus. Admin.,* 669 F.Supp. 50, 52 (N.D.N.Y.1987). In light of these precedents, the Court analyzes plaintiff's claim under the traditional burden-shifting analysis.

Under this analysis, if plaintiff first establishes a prima facie case of discrimination, the burden of proof shifts to defendant to provide a legitimate, non-discriminatory reason for the challenged action. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). If defendant does so, the burden shifts back to plaintiff to establish that this reason was actually a pretext for discrimination. *Id.* To establish a prima facie case of discrimination under the ECOA, plaintiff must establish that: (1) she was a member of a protected class, (2) she applied for credit from defendant, (3) she was qualified for credit but defendant denied her credit application, and (4) defendant continued to engage in the type of transaction in question with other parties with similar qualifications. *Mays,* 277 F.3d at 877; *Michigan Protection and Advocacy Serv. v. Babin,* 18 F.3d 337, 346 (6th Cir.1994). [4] Plaintiff is a member

of a protected class: over the course of her applications to defendant, she was married to and subsequently divorced from the delinquent account holder. Ex. 8 to Pugliese Aff. Plaintiff also lived in and owned the residence that was serviced by defendant. Pl.'s Opp. at 3. Since plaintiff does not establish that defendant opened accounts for similarly-situated individuals, she has failed to establish a prima facie case. Nonetheless, even assuming plaintiff had established a prima facie case, plaintiff provides no evidence to demonstrate that defendant's proffered reason for initially denying her request for a utility account was a pretext for discrimination.

Defendant states that it denied plaintiff an account because she never provided a deed. Under the Long Island Power Authority Tariff for Electric Service ("Tariff"), where there are arrears at the premises to be served or service was terminated for nonpayment, defendant may require "reasonable proof of the date the applicant became responsible at the address to be serviced. This may consist of a copy of a lease, deed, bill of sale, etc." Tariff, Original Leaf No. 40, attached as Ex. A to Pugliese Reply Aff. Absent this rule, a power company would be required to "continue service to a dwelling, even though the present account has a large overdue balance, just because a request is made by another member of that dwelling to put the account in his or her name." *Havnsworth v. S. Carolina Elec. & Gas Co.,* 488 F.Supp. 565, 568 (D.S.C.1979). This requirement does not discriminate on the basis of marital status: "Had plaintiff been her ex-husband's brother, instead of his wife, under the same circumstances of consumption, the same request would have been treated in the same manner." *Id.* at 567. In fact, defendant herein also denied plaintiff's daughter's request to open an account in her name unless the daughter provided proof of legal ownership or legal occupancy prior to opening a new account. Cestra Aff. ¶ 15. Plaintiff's unsworn memorandum of law stating that defendant did not require a deed from two unknown applicants as well as her ex-husband is insufficient to create a material issue of fact in dispute in this matter. Pl.'s Mem. of Law at 4.

**\*6** Plaintiff is correct that requiring an applicant for utility service to pay off her present or former spouse's utility bill—based on the fact of marriage—may violate the ECOA. *See McGee v. E. Ohio Gas Co.,* No 99–CV–813, 2002 WL 448480 (S.D.Ohio Mar.26, 2002) (Marbley, J.) (denying summary judgment where plaintiff alleged utility violated the ECOA through a practice of

transferring arrears of husband onto wife's individual account); *In re Brazil,* 21 B.R. 333 (Bankr.N.D.Ohio 1982) (utility's requirement that wife provide an order of separation or proof that husband with delinquent account moved out of residence discriminated on the basis of marital status under the ECOA). *But see Haynsworth,* 488 F.Supp. 565 (rule permitting utility to deny application of "a member of the household of a former customer who is indebted to the Company, except upon payment of such indebtedness" did not violate the ECOA because it applied to all cohabitants at residence, regardless of marital status).

However, plaintiff does not provide any evidence from which a jury could infer that defendant denied her an account on the basis of her marriage, treated her more harshly than others, or favored others outside of her protected class. Plaintiff also fails to establish evidence that defendant, at the time it denied plaintiff an account, even knew that plaintiff had been married to Max Fequiere. Plaintiff identified herself as a tenant at the property and consistently used her maiden name. Cestra Aff. ¶ 7, Ex. D at entries 05–23–06, 09–20–06, 1–11–07, 1–12–07. Defendant's records reflect—and nothing in plaintiff's submissions contradicts—that plaintiff was first identified as Max Fequiere's ex-spouse on January 26, 2007. Cestra Aff. ¶ 14, Ex. D at entry 1–26–07. The only application plaintiff made after that date was granted. [5] Absent evidence that defendant knew of her marital status at the time it denied plaintiff's application or any other evidence that defendant favored others outside plaintiff's protected class, no jury could infer that defendant's actions were motivated by discrimination based on her marital status. *Mitchell,* 350 F.3d at 49. Accordingly, defendants' motion for summary judgment on plaintiff's claim of discrimination under the ECOA should be granted.

## II. ECOA Regulations

### A. Written Notice Requirement under ECOA
Under the ECOA, within 30 days after a completed application is denied, a creditor must provide a written notice specifying the reasons for the denial or disclosing the applicant's right to a statement of reasons. *See* 12 C.F.R. § 202.9(a)(1) and (2). Also, within 30 days after receiving an incomplete application, the creditor must provide written notice of the denial or the incompleteness and must provide an opportunity to supplement the

application. *See* 12 C.F.R. § 202.9(c). Public utilities, which can be creditors under the ECOA if their "charges for service, delayed payment, and any discount for prompt payment" are filed with or regulated by a government unit," are required to give written notice of such adverse actions. 15 U.S.C. § 1691(d); 12 C.F.R. § 202 .3(a). *See also Mays,* 277 F.3d at 878–9. Plaintiff alleges that defendant failed to provide her with written notice of adverse action in violation of 12 C.F.R. § 202.9. Amended Compl. at ¶ 10. Defendant's motion for summary judgment does not address this claim. Accordingly, this claim should proceed.

### B. Use of Information Regarding Spouse
**\*7** Plaintiff also alleges that defendant's "use of information about her former spouse violated the ECOA regulations, 12 C.F.R. § 202.5(c) and (d). Amended Compl. ¶ 9. Section 202.5(d)(1) provides that the creditor shall not inquire about an applicant's marital status; however, this section is inapplicable to public utilities, which may include defendant. *See* 12 C.F.R. § 202.3(a)(2)(i). Section 202.5(c) states that absent certain enumerated circumstances, "a creditor may not request any information concerning the spouse or former spouse of the applicant." As defendant's motion does not address these claims, they should proceed.

## III. Constitutional Claims

### A. State Action
Plaintiff brings two Constitutional claims under 42 U.S.C. § 1983, which states that "[e]very person who, under color of any statute, ordinance, regulation or custom or usage of any State" who deprives an individual of "rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. To prevail on a Section 1983 claim, plaintiff must first prove that defendant acted "under color of state law." *Hollander v. Copacabana Nightclub,* 624 F.3d 30, 33 (2d Cir.2010). Defendant argues that "it is not necessarily clear that [defendant's] activities would ... constitute state action." Def.'s Mem. of Law at 10.

The Supreme Court and the Second Circuit have held that privately owned utility companies are not state actors, even though they are heavily regulated and serve a public function. *Jackson v. Metro. Edison Co.,* 419 U.S. 345,

351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Taylor v. Consol. Edison Co. of N.Y.,* 552 F.2d 39, 46 (2d Cir.1977). However, where a utility company is "municipally owned and controlled, the actions of [such a utility] are clearly 'state actions.' " *Craft v. Memphis Light, Gas. & Water Div.,* 534 F.2d 684, 687 (6th Cir.1976), *aff'd* at 436 U.S.I (1978). *See also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) ("a nominally private entity" is "a state actor when it is controlled by an 'agency of the State' " or "when government is 'entwined in its management and control.' ").

The record before the Court belies defendant's contention that it is not a state actor. While defendant originated as a private utility company, "in 1986, the New York State Legislature created a public authority known as the [Authority] to replace the [defendant] and provide an adequate supply of electricity" to defendant's service area. *In re LIPA Ratepayer Litigation,* 47 A.D.2d 899, 900, 850 N.Y.S.2d 609 (2d Dep't 2008). Pursuant to this legislative fiat, "LIPA entered into a merger agreement to acquire [defendant's] assets, including "all franchise and utility service responsibilities for all ultimate consumers of gas and electricity within [defendant's] former service territory." *City of New York v. LIPA,* 14 A.D.3d 642, 642, 789 N.Y.S.2d 309 (2d Dep't 2005). *See generally* N.Y. Pub. Auth. Law Section 1020–a. As a result, defendant became a "wholly owned subsidiary of" the Authority, Cestra Aff. ¶ 3, and all of defendant's net earnings and assets are distributed to the Authority. Ex. B at ¶ 9 to Cestra Aff. The Authority, by statute is "a corporate municipal instrumentality and political subdivision of the State of New York," Cestra Aff. ¶ 3, *see also* N.Y. Public Authorities Law § 1020–c, which is for purposes of Section 1983 a state actor. *See Mack v. Port Auth. of N.Y. & N.J.,* 225 F.Supp.2d 376, 383 (S.D.N.Y.2002). *See also Blazina v. Port Auth. of N.Y. & N.J.,* No. 06–CV–481, 2008 WL 919671 (S.D.N.Y. Apr. 1, 2008) (Fox, Mag. J.) (municipal corporate instrumentality is a state actor for purposes of Section 1983).

**\*8** As the record before the Court shows defendant is controlled by an agency of the state, the Court does not credit defendant's argument that it is not a state actor. *Brentwood Acad.,* 531 U.S. at 296. *See also Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (Amtrak is a state actor for constitutional purposes, despite its statutory

designation as a private entity, because it was organized for governmental objectives and directed and controlled by federal appointees).

B. Due Process

Plaintiff claims that defendant denied her due process of law under the Fourteenth Amendment. There are two elements to a successful due process violation claim: plaintiff must show (1) she possessed a protected liberty or property interest and (2) that she was deprived of that interest without due process. *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001).

Property interests protected by the Constitution "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). "It is well-settled that the expectation of utility service rises to the level, articulated in [*Board of Regents,* 408 U.S. 564] ... of a 'legitimate claim of entitlement' in the category of property interests protected by the Due Process Clause." *Ransom v. Marrazzo,* 848 F.2d 398, 409 (3d Cir.1988) (citing *Memphis Light, Gas, & Water Div.,* 436 U.S. at 9).

Nonetheless, defendant argues "[i]t is not clear that [plaintiff] has a constitutionally protected property interest in continued electric service" and cites *Midkiff v. Adams County Reg'l Water Dist.,* 409 F.3d 758, 762 (6th Cir.2005). Def's Mem. of Law at 11. However, *Midkiff* is limited to plaintiffs who as tenants did not have a property right to water service because they were precluded, by the regulations of the water district, from being customers of the water district. Moreover, the Sixth Circuit in *Midkiff* found that "no provision in [the Ohio law that established the water district] require[d] a water district to provide service to any particular individual or group." *Midkiff,* 409 F.3d at 764.

In contrast, plaintiff here is the property owner who satisfied all the requirements under defendant's regulations for establishing an account. Moreover, similar to the Tennessee laws that were the basis for the property right in continued electricity service recognized in *Memphis Light, Gas, & Water Div.,* 436 U.S. at 1, New York law mandates that utilities may not terminate utility service at will but only under certain

enumerated conditions and after providing proper notice. *See generally* N.Y. Pub. Service Law Art. 2 and §§ 117, 118. The Authority and defendant are required to follow this mandate and have enacted these requirements in their own rules. N.Y. Pub. Auth. Law 1020–cc; Original Leaf No. 25(I)(C)(l–2); Original Leaf No. 114, *et seq.* [6] This is an independent source of state-authorized law that gives rise to a legitimate claim of entitlement to electricity from a municipal utility. [7] *Pilchen v. City of Auburn,* 728 F.Supp.2d 192, 199 (N.D.N.Y. Aug.5, 2010) (finding tenants have a due process property interest in water service).

**\*9** Defendant next argues that it gave plaintiff sufficient notice of the *termination* of electricity. Def.'s Reply Mem. of Law at 4. However plaintiff claim rests on, and Second Circuit case law supports, the principle that due process protection can cover an applicant *seeking* a service or benefit. The Circuit has held that "[s]tatutory language may so specifically mandate benefits awards upon demonstration of certain qualifications that an applicant must fairly be recognized to have a limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility." *Kapps v. Wing,* 404 F.3d 105, 116 (2d Cir.2005). *See also Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 489–90 (3d Cir.1980) ("due process must attach to the process of determining ineligibility, whether at the outset or after receipt of benefits").

In this case, the applicable rule provides that "the Authority will provide service when a Residential Applicant provides his or her name, address, telephone number, address of prior account (if any), prior account number (if any) unless Exceptions to provision of service apply. Tariff, Original Leaf No. 39(II)(A)(3). The only exceptions include applicants with an unpaid balance or requests for short-term service without the required deposit. *Id.* at (II)(A)(4). Additionally, the Authority may require proof of identification and the date the applicant assumed legal responsibility for the premises where there are arrears at the property. Tariff, Original Leaf No. 40(II)(A)(5) & (7). This is sufficiently specific and objective criteria such that plaintiff has a limited property interest entitling her to an "administrative process that determines eligibility [that] comports with due process ." *Kraebel v. N.Y. City Dep't of Hous. & Preserv. & Dev't,* 959 F.2d 395, 405 (2d Cir.1992).

As the instant record fails to demonstrate whether defendant afforded plaintiff an administrative process to determine her eligibility that comported with due process, the Court should deny defendant's motion for summary judgment on plaintiff's due process claim.

### C. Equal Protection

Plaintiff alleges that the Tariff creates two classes of applicants: One class is comprised of applicants for service who reside at addresses where there are no arrears; these applicants can apply for an account over the phone and do not have to provide proof of legal responsibility for the account. The second class is comprised of applicants who apply for services at an address for which a significant amount of arrears are owed; these applicants must provide property deeds, leases to the property, or are told to bring the property owner to the office to pay the account. Pl.'s Mem. of Law at 9. Plaintiff claims that this differential treatment by defendant violated her right to equal protection.

As plaintiff does not pin her equal protection cause of action on membership in a protected class or on a fundamental right, the Court must determine whether there is a rational basis for this differential treatment. *Pilchen,* 728 F.Supp.2d at 202. Under this test, "[t]here need only be a "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Lewis v. Thomson,* 252 F.3d 567, 582 (2d Cir.2001). "[A]ny reasonably conceivable state of facts' " will suffice to satisfy rational basis scrutiny," and "the burden falls to the party attacking the statute as unconstitutional to 'negate every conceivable basis which might support it.' " *Id.* (citing *Madden v. Kentucky,* 390 U.S. 83, 88 (1940)).

**\*10** Defendant asserts that the purpose of this Tariff is to "ensure that persons pay for the service that they have consumed and that persons do not fraudulently receive service for which they do not pay." Pugliese Reply Aff. ¶ 7. Otherwise, defendant would preferentially treat those who fail to pay for electricity and be forced to spread the cost of the theft of service on everyone in the form of higher rates. *Id.*

The requirements set forth in the Tariff are rationally related to the achievement of defendant's stated purpose: to ensure that persons pay for the service they have consumed. Absent this requirement, a power company would be required to continue service to a delinquent

dwelling on the request of another member of the residence, even if he or she were responsible for the bill. Indeed, it appears that over the years, numerous utility customers have tried to circumvent their obligations to pay for utility services in this manner. For example, in *Jackson v. Metropolitan Edison Co.,* 419 U.S. at 347, the plaintiff, after failing to pay her electricity bill, tried to change the account to the name of her 12–year–old son. Similarly, here, plaintiff identified herself as a "tenant" and assisted her daughter in trying to set up an account, even though plaintiff lived at the address and her daughter was associated with the address at the time the arrears were incurred. Given the potential for abuse, the Tariff requiring proof of the date of legal responsibility is a rational way to prevent fraud and theft of service by co-habitants of a single residence. *Cf Haynsworth,* 488 F.Supp. at 568 ("no resort to the imagination is needed to envision the abuses that could ensue in a 'commune' situation" if a utility were required to create a new account based on every application from every member of the household).

As this scheme is rationally related to collecting payments for services used, it does not violate plaintiff's equal protection rights. Nor would defendant's request that plaintiff pay Max Fequiere's debt violate her equal protection rights. Plaintiff was a co-owner of the property and lived on the premises, using defendant's services, while the arrears were incurred. In this situation, even if the name on the delinquent account is not plaintiff's, "an owner's property is benefitted by the utility services, and it is eminently reasonable" for the utility to condition the continuation of service on the payment of the arrears for "service to the benefitted property." *Chatham v. Jackson,* 613 F.2d 73, 80 (5th Cir.1980). [8] Since plaintiff and her property benefitted from the electricity defendant provided, it was similarly reasonable for defendant to request that plaintiff pay the outstanding debt for services on plaintiff's residence. [9]

Plaintiff cites several cases in which courts found equal protection violations when a utility terminated an account or denied an application for an account based on the arrears of a landlord or unrelated prior tenant. However, those policies failed the rational basis test because they were "divorce[d] ... entirely from the reality of legal accountability for the debt involved" and were therefore "devoid of logical relation to the collection of unpaid [utility] bills from the defaulting debtor," a landlord or

tenant unrelated to plaintiff. *Davis v. Weir,* 497 F.2d 139, 144–145 (5th Cir.1974) (water department's rejection of tenant's request for an account on the grounds that landlord refused to pay the water bill failed rational basis test). *See also Pilchen,* 728 F.Supp.2d at 204 (no rational basis to deny tenant a utility account where a landlord failed to pay the water bill even though the tenant timely paid rent, which included water charges); *O'Neal v. City of Seattle,* 66 F.3d 1064, 1068 (9th Cir.1995) (no rational basis to deny a utility account based on a prior unrelated tenant's failure to pay the water bill); *Craft,* 534 F.2d at 689–690 (no rational basis to deny tenant a utility account based on arrears run up when plaintiff did not live on the premises). [10]

**\*11** In contrast here, the practice of requiring proof of legal responsibility is rationally related to preventing theft of service and defendant's request that plaintiff pay for the arrears on service to the residence was rational in light of the fact that plaintiff was the co-owner and lived at the premises when the arrears accrued. Accordingly, defendant's motion for summary judgment on plaintiff's equal protection claims should be granted.

### IV. Claims under 18 U.S.C. §§ 242 and 245

Plaintiff alleges defendants violated 18 U.S.C. §§ 242 and 245. There is no private right of action under either 18 U.S.C. § 242 or § 245, which are provisions of the United States Code that criminalize certain civil rights violations and authorize the government to prosecute individuals. *Robinson v. Oversease Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994) (no private right of action under Section 242) *accord Christian v. Town of Riga,* 649 F.Supp.2d 84, 90 (W.D.N.Y.2009); *McNeil v. Aquilos,* 831 F.Supp. 1079, 1087 (S.D.N.Y.1993) (no private right of action under Section 245) *accord John's Insulations, Inc. v. Siska Constr. Co.,* 774 F.Supp. 156, 163 (S.D.N.Y.1991). Accordingly, defendant's motion for summary judgment on these claims should be granted.

### V. STATE LAW CLAIMS

#### A. New York Social Services Law

Defendant is correct that the Social Services laws and regulations plaintiff cite, *see* Amended Compl. ¶¶ 17–23, do not apply to a utility. These laws create obligations only on a social services district. For example, 18 NYCRR § 352.5(d) & (e) are the social service district's standards

of financial assistance for nonutility heating fuel and utility service. Section 350–j of the New York Social Services law provides that a "social services district shall provide emergency assistance as herein defined." Similarly, 18 NYCRR § 372.2 outlines when "emergency assistance must be provided immediately by a social services district." Sections 352.2(c) & (d) of the same title sets the social service district's schedules for monthly grants and allowances. As defendant is not a social services district, plaintiff's claims against defendant based on these laws and regulations should be dismissed.

Plaintiff also alleges defendant violated various provisions of the New York Public Service Law. Amended Complaint at ¶¶ 21–22. [11] However, "the rates, services, and practices relating to electricity owned or operated by the [A]uthority shall not be subject of the public service law or to regulation by, or the jurisdiction of, the public service commission ...." N.Y. Public Auth. Law § 1020–s. Since defendant is owned by the Authority, the Public Service Laws cited by plaintiff are inapplicable and these claims against defendant should be dismissed.

Plaintiff asserts that Section 1020–cc of the New York Public Authorities Law renders the Social Services laws and Public Service Laws applicable to defendant. Section 1020–cc provides that "the authority shall also establish rules and regulations with respect to providing to its residential ... customers those right and protections provided in article two and sections one hundred seventeen and one hundred eighteen of the public service law and section one hundred thirry-one-s of the social services law." Section 131–s of the Social Services law requires a social service district to pay, under certain circumstances, the utility bills of recipients of public assistance benefits, supplemental security income benefits or additional state payments. The Authority and defendant have created rules that comply with this section of the Social Services law. For example, the Authority's Tariffs prohibit defendant from denying service to an applicant having arrears where the arrears will be paid by a social services commissioner and require special notice to social services officials prior to terminating service to an individual on public assistance. See Tariff, Original Leaf No. 39, First Revised Leaves No. 124–125. Neither the Tariffs nor Public Authorities Law 1020–cc graft the emergency assistance obligations of a social services district onto defendant herein.

**\*12** Plaintiff is correct however that N.Y. Public Authorities Law § 1020–cc obligates defendant to follow rules which mirror the Public Service Laws regarding applications, termination, and notice. As such, the Court should construe plaintiff's claims to allege a violation of LIPA's Tariff, rather than the Public Service law. For the reasons set forth below, the Court should dismiss these claims without prejudice under the doctrine of primary jurisdiction.

### B. Failure to Comply with Defendant's Tariff

Plaintiff claims that defendant failed to provide her with an account because of Max Fequiere's debt, failed to provide her with written notice of the denial of her account, and failed to provide her with an account despite a child with health needs requiring a electronic nebulizer in violation of LIPA's Tariff. These claims should be dismissed without prejudice and the action should be stayed to permit plaintiff to submit these claims to the Authority.

As the Second Circuit has explained, "the primary jurisdiction doctrine applies 'whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.' Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp., 84 F.3d 91, 97 (2d Cir.1996) (quoting United States v. Western Pac. R.R. Co., 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)). The doctrine serves two interests: "consistency and uniformity in the regulation of an area which [the legislature] has entrusted to [an agency]; and the resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims." Golden Hill Paugussett Tribe of Indians v. Weicker, 39 F.3d 51, 59 (2d Cir.1994). Courts have uniformly held that disputes involving billing or service with a utility company are subject to the primary jurisdiction of the Public Service Commission ("PSC"), a state agency. Guglielmo v. Long Island Lighting Co., 83 A.D.2d 481, 445 N.Y.S.2d 177 (1981) (billing dispute and discontinuance of service due to nonpayment was subject to primary jurisdiction of PSC); Brownsville Baptist Church v. Consol. Edison Co. of New York, 272 A.D.2d 358, 707 N.Y.S.2d 493 (2d Dep't 2000) (claim challenging reasonableness of rates, rules, or practices is subject to primary jurisdiction of PSC).

Although defendant is not subject to the jurisdiction of the PSC, the Authority, just like the PSC, is an agency with "the authority, and established procedures, for investigating and adjudicating" disputes. *Guglielmo,* 83 A.D.2d at 483, 445 N.Y.S.2d 177. The Authority has the power to review plaintiff's claims. Section N.Y. Public Auth. Law § 1020–f provides that the Authority shall have "all of the powers necessary or convenient to carry out the purposes and provisions of this title, including" the power "[t]o make any inquiry, investigation, ... which the authority may deem necessary to enable it effectively to carry out the provisions of this title, and for that purpose, to take and hear proofs and testimony...." N.Y. Public Auth Law § 1020–f(y). *Cf* N.Y. Public Service Law § 66(5) (the PSC shall have the power to examine utilities and make determinations "after a hearing had upon its own motion or upon complaint, that the rates, charges or classifications or the acts or regulations of any [utility] are unjust ... or in violation of any provision of law.").

**\*13** Similarly, the procedures for complaints heard by the Authority mirror the procedures of the PSC. Under both regulatory schemes, the customer must first submit the complaint to the utility and if dissatisfied with the result, may file a complaint which will be investigated by the staff of the Authority or PSC. Cestra Aff. at Ex. H; 16 NYCRR § 11.20; 12.1(a). Both the Authority and the PSC may request further information from either side and may conduct an onsite inspection or test. Cestra Aff. at Ex. H; 16 NYCRR § 12.1(c) & (d). Neither the PSC or the Authority may terminate service while a complaint is pending. Cestra Aff. Ex. H; 16 NYCRR § 12.3. Both are required to report their decisions in plain language either orally or, at the customer's request, in writing, *see* Cestra Aff. Ex. H; 16 NYCRR § 12.4. Under the PSC scheme, a customer can request an informal hearing or further review and if necessary appeal any subsequent decision to the PSC. 16 NYCRR §§ 12.5 & 12.13. Under the LIPA scheme, the customer may appeal the decision to the Authority's President and Chief Executive Officer, who are required to notify the customer of its decision in writing. *See* Cestra Aff. Ex. H. [12]

Plaintiff's claim that defendant failed to comply with its own Tariff is within the purview and expertise of the Authority. *Guglielmo,* 83 A.D.2d at 484, 445 N.Y.S.2d 177 (propriety of LILCO's calculation of charges and discontinuance of service were matters within the PSC authority and expertise); *Lamparter v. Long*

*Island Lighting Co.,* 90 A.D.2d 496, 496, 454 N.Y.S.2d 751 (2d Dep't 1982) (reasonableness and application of defendant's backbilling and service discontinuance rules were questions of fact that must first be considered by the PSC). While there is an exception to the primary jurisdiction doctrine where a complaint presents only questions of law, *Guglielmo,* 83 A.D.2d at 485, 445 N.Y.S.2d 177, there are numerous factual disputes in this case. These include whether plaintiff applied for an account, whether she showed defendant a bill of sale sufficient to verify legal responsibility, what defendant actually told her in denying her requests for an account, and whether defendant provided plaintiff notice of the denial. [13] Because plaintiff's claims require an application of the Authority's Tariff to numerous disputed facts, the Court should "stay its hand until the agency has applied its expertise to [these] salient questions." *Engelhardt v. Consol. Rail Corp.,* 756 F.2d 1368, 1369 (2d Cir.1985). I therefore respectfully recommend that this action should be stayed to provide plaintiff an opportunity to raise her claims with defendant and the Authority. *Guglielmo,* 83 A.D.2d at 489, 445 N.Y.S.2d 177 (where there are statute of limitations concerns, the proper course is to *sua sponte* stay an action pending final resolution with utility authority). [14]

**C. Unfair, deceptive and unconscionable practices**
Defendant's motion does not address plaintiff's fifth claim for relief alleging that "defendant[ ] knowingly committed certain unfair, deceptive, and unconscionable acts or practices in violation of Federal and State laws." Amended Compl. ¶ 12. Accordingly, these claims survive the instant motion. To the extent plaintiff's claims are grounded on defendant's failure to abide by its own Tariff or the reasonableness of the Tariffs, plaintiff should raise these claims in her administrative complaint to defendant and the Authority.

**VI. Damages**
**\*14** Defendant argues that plaintiff's claims must be dismissed because "[e]ven if the Court were to hold plaintiff had successfully proven the elements of her claim, ... she is unable to prove damages." Def.'s Mem. of Law at 22. This argument is without merit. Actual damages are not required under the ECOA, even for violation of the ECOA notice provision, because "pursuant to the relevant provisions of the ECOA

2011 WL 1225791

'punitive damages may be awarded even absent a showing of any actual damages.' *Stoyanovich v. Fine Art Capital LLC,* No. 06–CV–13158, 2007 WL 2363656, at * 2 (S.D.N.Y. Aug. 17, 2007) (Stein, J.) (quoting *Anderson v. United Finance Co.,* 666 F.2d 1274, 1278 (9th Cir.1982)). Moreover, to the extent that any of plaintiff's remaining claims require proof of actual damages, plaintiff's sworn statement that she was deprived of the use of her home appliances and constructively evicted from her home, Ex. A to Pl. Opp. at 8, is sufficient to raise a material issue of fact regarding plaintiff's actual damages. Accordingly, this portion of defendant's motion should be denied.

## VII. Claims on Behalf of Family Members

To the extent that plaintiff raises any claims on behalf of her family members, she lacks the legal capacity to maintain this lawsuit. Only licensed attorneys may represent another individual in federal court. *Berrios v. New York City Hous. Auth.,* 564 F.3d 130, 132 (2d Cir.2009); *Cheung v. Youth Orchestra Found., Inc.,* 906 F.2d 59, 61 (2d Cir.1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child). Accordingly, these claims should be dismissed without prejudice. *Berrios,* 564 F.3d at 135.

## CONCLUSION

I respectfully recommend that defendant's motion for summary judgment should be granted as to plaintiff's discrimination under the ECOA, her equal protection claim, all claims brought under 18 U.S.C. § 242 and 245, all claims brought under the New York Public Service and Social Services Law, and any claims brought on behalf of another individual. I recommend that defendant's motion for summary judgment should be denied as to plaintiff's due process claim and claims that defendant violated the 12 CFR § 202.5(c), and 12 C.F.R. § 202.5(d)(1), and the ECOA notice requirement. Finally, I respectfully recommend that this action should be stayed so that plaintiff may assert claims arising under defendant's Tariff to the defendant and Authority for administrative review. I recommend that plaintiff be afforded 30 days to file such a complaint with defendant and the Authority and that defendant should apprise the Court of the status of plaintiff s administrative complaint within 60 days.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed.R.Civ.P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital District Physician's Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1225791

## Footnotes

1    Defendant provided plaintiff with the requisite notice pursuant to Local Civil Rule 56.2. Docket entry # 66.

2    Defendant's 56.1 Statement states that plaintiff co-owned the residence in 2004 or 2005. However, at plaintiff s deposition, she stated she co-owned the property in 2003 or 2004. Ex. 7 to Pugliese Aff. at p. 7, lines 2–6.

3    Recent amendments to the Federal Rule of Civil Procedure 56 became effective on December 1, 2010. The substance of the Rule remains the same, however some of the language has changed. The Court cites the former Rule which was still in effect when the instant motion was filed.

4    Defendant asserts the fourth element is that defendant showed a preference for someone outside the protected class, citing *Powell v. Am. Gen. Finan., Inc.,* 310 F.Supp.2d 481 (N.D.N.Y.2004). However, in analogous cases, the Second Circuit has not included this element as part of a plaintiffs a prima facie case. *See. e.g .,* *Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir.2003) (prima facie case only requires plaintiff show they are members of the protected class, were qualified to rent or purchase, were rejected, and that the housing opportunity remained available to other renters or purchasers); *Estate of Hamilton v. City of New York,* 627 F.3d 50, 55 (2d Cir.2010) (prima facie case of discriminatory failure to promote

under Title VII requires plaintiff show she was a member of the protected class, applied for the job and was qualified for the job, was rejected for the position, and the position remained open and the employer continued to seek applicants having plaintiff's qualifications).

5    Plaintiff states in her memorandum of law that she provided defendant with a copy of the deed in December 2006 but was still denied and told she should pay her ex-husband's debt before she would be given an account. Pl.'s Mem. of Law at 5. This unsworn statement is insufficient to withstand defendant's motion. According to defendant's business records, on January 11, 2007, plaintiff told defendant's employee that she did not know what papers to bring in. Cestra Aff. at Ex. D. On January 12, 2007, plaintiff called defendant to advise that she "had problem getting closing papers ... Deed hasn't come in yet." *Id.*

6    The Tariffs are available at http:// www.lipapower.org/pdfs/lipatariff.pdf (last visited on January 31, 2011).

7    Defendant does not argue that the Tariffs are anything less than agency regulations. Indeed it would be difficult to argue, as defendant does, that the Tariff creates a governmental administrative process that customers are obliged to exhaust, Def.'s Mem. of Law at 17, but that these regulations lack force of law to support a legitimate claim of entitlement.

8    The *Chatham* court found that it was reasonable for the city to "impose a lien and threaten to terminate service to the benefitted property when service is not paid for," *id.,* even though the owner of the property was not personally liable for the arrears. Although defendant did not seek to impose a lien here, under New York law, they could have sought to collect the debt from plaintiff under theories of unjust enrichment and quantum meruit. *Long Island Lighting Co. v. 800 Front Street Corp.,* 26 Misc.2d 1235(A), 2010 WL 918436, at * 1–3 (N.Y. Sup. Nassau County Jan. 25, 2010) (Landlord, who did not have a contract with LIPA, was liable under theories of unjust enrichment and quantum meruit to pay for utility account where his property received the "full benefit" of plaintiff's services). *See also Haynsworth,* 488 F.Supp. at 567, 569 (defendant could deny request for utility account on the ground that there existed an outstanding balance in account of husband because plaintiff used the services and there was an implied contract that she would pay for the services).

9    The Court notes that the *Chatham* court held that intermediate scrutiny applied to an equal protection claim based on the denial of utility service. Under this test, "classifications ... [for utility applicants] are valid if they serve important governmental objectives and are substantially related to achievement of those objectives." *Chatham,* 613 F.2d at 80. Even if the Court were to find this test applied to plaintiff's claims, defendant's scheme would pass muster. The goal of remaining financially sound is an important governmental objective. *Id.* For the same reasons stated above, the practice of requiring proof of legal responsibility or requiring a property owner to pay arrears incurred when she resided at the premises is substantially related to this objective.

10    One court held that it did not violate the equal protection clause to deny water and sewer service to residents based on the presence of a lien against the property because this scheme was logically related to the general goal of collecting debts. *Ransom v. Marrazzo,* 848 F.2d at 413.

11    More specifically, plaintiff cites Sections 36 (requiring written notice of a denial of an application for service), 43 (the complaint handling procedures), 32.2. (conditions for termination of service), 31 (rules for applications for service), 23 (granting the PSC power to order a utility to continue or restore service whenever a person's health or safety is at risk) of the New York Public Service Law. *Id.*

12    The Tariff states that a customer shall file a complaint with the Authority's "manager," which the Court assumes to be defendant. The Court directs defendant to clarify in writing the correct entity and address for plaintiff's administrative complaint and any subsequent appeal upon receipt of this Report and Recommendation. Defendant asserts that the Authority's decision would be subject to a more deferential standard of review from this Court. Defs.' Mem. of Law at 21 n. 1. Whether or not this assertion is true, if plaintiff chooses to forego the administrative complaint process, she shall inform the Court and opposing counsel of this decision within 30 days. She may then continue with her federal claims in this case. However, she would be waiving the claims subject to the primary jurisdiction of the Authority.

13    It is unclear what if any notice defendant gave to plaintiff in denying her application. The applicable tariff states that defendant must provide notice when defendant requires a written application, Tariff, Original Leaf No. 40(II)(A)(6)) or written notice when an application is incomplete, Tariff, Original Leaf No. 42(II)(B)(4). Similarly, when an application is denied, both oral and written notice of the denial is required. Tariff, Original Leaf No. 43. The contents of the written notification will "(a) [g]ive reason(s) for the denial of service, (b) [s]pecify what the applicant must do to be approved for service, and (c) [a]dvise the applicant that he or she may file a complaint in accordance with the provisions of this Tariff regarding the denial of service." *Id.* The instant record does not reflect what notice defendant gave to plaintiff herein.

14    As the Court finds that the doctrine of primary jurisdiction is dispositive, it need not consider defendant's argument to dismiss these claims at this juncture for failure to exhaust administrative remedies. The doctrine of exhaustion of administrative remedies "holds that a litigant must generally pursue all available administrative remedies before seeking

judicial review of an administrative action." *Golden Hill Paugussett Tride of Indians,* 39 F.3d at 58. Should plaintiff fail to completely exhaust the Authority's complaint procedure within a specified time, defendant may renew its motion on this ground.

---

**End of Document**                                                © 2017 Thomson Reuters. No claim to original U.S. Government Works.

---

2006 WL 2827856
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Heidi J. INGRAO and Bradley B. Ingrao, as Parents
and Natural Guardians of RBI, an infant, Plaintiffs,

v.

The COUNTY OF ALBANY, NEW YORK, and The
County of Montgomery, New York, Defendants.

No. 1:01-CV-730.
|
Oct. 2, 2006.

**Attorneys and Law Firms**

John K. Powers, Patrick J. Higgins, Powers, Santola Law
Firm, Albany, NY, for Plaintiffs.

Christine K. Krackeler, Adrienne J. Kerwin, D'Agostino,
Krackeler Law Firm, Menands, NY, Kathleen M. Ryan,
Carter, Conboy Law Firm, Albany, NY, for Defendants.

**AMENDED DECISION & ORDER** [1]

THOMAS J. McAVOY, Senior United States District
Judge.

## I. INTRODUCTION

**\*1** Plaintiffs Heidi J. Ingrao and Bradley B. Ingrao,
the adoptive parents of RBI, commenced this action on
May 18, 2001 asserting claims against Albany County
and Montgomery County for acts or omissions that
purportedly occurred while RBI was under the care
of the Albany County Department of Social Services
("ACDSS"). *See* dkt. # 1. Part of the action was stayed
for several years due to the pendency of a bankruptcy
proceeding by Montgomery County's insurance carrier,
*see* dkt. # 13, # 15, # 16, # 17, # 20, although
discovery did proceed with regard to claims against
Albany County. On July 2, 2004, Plaintiffs commenced
a separate action against individual employees of the
ACDSS and the Montgomery County Department of
Social Services ("MCDSS"). *See* Compl. [dkt. # 1] in
*Ingrao v. Grossi, et al.,* 1:04-CV-769 ("*Ingrao II* "). [2] On
October 15, 2004, Plaintiffs filed an Amended Complaint
in this action. *See* Am. Compl. dkt. # 92.

In the Amended Complaint, Plaintiffs assert that
Defendants' actions or omissions: amounted to actionable
negligence or gross negligence (First Cause of Action);
violated the Federal Adoptive Assistance and Child
Welfare Act of 1980, 42 U.S.C. §§ 620-628, 670-679a
(Second Cause of Action); violated the Federal Child
Abuse Prevention and Treatment Act, 42 U.S.C. §§
5101-5106 (Third Cause of Action); violated New York
Social Services Law and related rules and regulations
(Fourth Cause of Action); deprived Plaintiffs of their
rights to substantive due process as guaranteed under
the Fourteenth Amendment to the United States
Constitution (Fifth Cause of Action); and constituted
"fraud, concealment, and/or misrepresentation or gross
negligence" (Sixth Cause of Action). It should be noted
that although the Third, Fourth, and Fifth Causes of
Action assert violations of federal law, only the Fifth
Cause of Action is brought pursuant to 42 U.S.C. §
1983. Subject matter jurisdiction is action is based upon
the diversity of citizenship of the parties and the federal
questions presented. *See id.* ¶¶ 4-11.

Presently before the Court are (1) a motion for summary
judgment pursuant to Fed.R.Civ.P. 56 by Albany County,
and (2) a cross-motion for summary judgment by
Plaintiffs. For the reasons that follow, Albany County's
motion is granted in part and denied in part, and Plaintiffs'
motion is denied.

## II. STANDARD OF REVIEW

On the pending motions, the Court will apply the well-
established standard for deciding summary judgment
motions as more fully set forth in the March 31, 2006
Decision and Order in *Ingrao II. See* 3/31/06 Dec. & Ord.,
pp. 2-4 [dkt. # 91] in *Ingrao II.*

## III. BACKGROUND [3]

On May 11, 1990, RBI was born to a 15 year old mother,
Ruth B. At the time, Ruth B. was residing in a New York
State Division for Youth ("DFY") facility in Onondaga
County, New York. In October 1990, at age 3 ½ months,
RBI was removed from Ruth B.'s legal and physical
custody upon a finding by the Onondaga County Family
Court of inadequate guardianship/neglect on the part of
Ruth B. Although there was no finding of sexual abuse
by Ruth B., there is some indication, albeit minimal, that

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Ruth B. sexually abused RBI. [4] RBI was placed in the care and custody of the Onondaga County of Social Services.

**\*2** In November 1990, the legal and physical custody of RBI was transferred to the ACDSS. [5] According to Onondaga County, at the time RBI was transferred into ACDSS's custody, he was a healthy child with no known special needs although, as is apparent, he had been the victim of neglect and/or abuse by his mother. There is also an indication that Onondaga County reported to Albany County that the birth mother had a psychiatric history and a violent nature. RBI remained in the primary custody of the ACDSS up to July 10, 1997, and "was subject to after-adoption follow-up and supervision [by ACDSS] for another three years until July 10, 2000." Compl. in *Ingrao II* ¶ 19.

Once RBI came under the care of ACDSS, he was placed in various certified foster care homes and was seen for a developmental assessment. RBI presented with no exceptional physical or psychological conditions. For approximately the first year (November 15, 1990 to November 25, 1991), ACDSS caseworker Teresa Fitzpatrick handled RBI's case. In January of 1991, when RBI was eight months old, he was placed with the McElroy foster care family. The Family Court had ordered supervised visitation between Ruth B. and RBI, and Fitzpatrick conducted the supervised visitation in her role as an ACDSS employee. The record reflects that during the supervised visitation, Ruth B. demonstrated an overall lack of interest in bonding with the child and generally deficient parenting skills. Plaintiffs contend that before this visitation with Ruth B., RBI was a very happy baby with no notable problems. However, after visits with Ruth B., Mrs. McElroy began to notice negative changes in RBI's behavior. Mrs. McElroy communicated this information to ACDSS representatives.

In April of 1991, Fitzpatrick noted in her caseworker file that she felt that if Ruth B. did not progress in her involvement with RBI by October 1991, a termination of parental of rights action should be commenced. The ACDSS determined to have RBI and Ruth B. seen by a consultant for a "family assessment." Shirley Schlossberg, a certified social worker, conducted the family assessment in July 1991. Schlossberg recommended that a parental termination proceeding be commenced.

ACDSS contends that, based upon its obligation to exercise "diligent efforts" to try to reunite a parent and child before moving to terminate parental rights, *see* N.Y. Soc. Serv. L. § 384-b(1)(McKinney's 1999); [6] *Santosky v. Kramer,* 455 U.S. 745, 767 (1982)("The State's interest in finding the child an alternative permanent home arises only 'when it is *clear* that the natural parent cannot or will not provide a normal family home for the child.' ") (quoting N.Y. Soc. Serv. Law § 384-b(1)(a)(iv)) (emphasis added by the Sp. Ct.); *In re Marino S., Jr.,* 100 N.Y.2d 361, 368-69 (2003), [7] it determined not to petition to terminate Ruth B.'s parental rights and instead to work towards reuniting Ruth B. and RBI. In this regard, Ruth B. was provided "parenting classes" and was allowed to exercise progressively less restrictive visitation, working up to unsupervised overnight visitation. Plaintiffs contend that the visitation was fraught with problems and indications that RBI was not being properly cared for during visitation, including problems with Ruth B.'s male friend "BB" who was regularly in Ruth B.'s apartment. These problems were communicated to ACDSS representatives by Mrs. McElroy. In addition, Mrs. McElroy reported that RBI would cry and scream and resist going to the visits, and would be very emotionally upset upon returning from visits with Ruth B. Plaintiffs contend that ACDSS representatives persuaded Mrs. McElroy not to file "hotline" reports [8] about the conditions and circumstances she observed.

**\*3** In May 1993, ACDSS decided to attempt a "trial discharge" whereby RBI would be allowed to live with Ruth B. on a full time basis although ACDSS would retain legal custody and supervise RBI's time with his mother. This trial discharge lasted for approximately eight (8) months, from May 7, 1993 to January 11, 1994, during which the McElroys were allowed regular "visits" with RBI. Again, Plaintiffs contend that there were numerous and profound problems occurring while RBI was in Ruth B.'s physical custody, and that these problems were negatively affecting RBI's physical, emotional, and psychological well being. Mrs. McElroy relayed to ACDSS caseworkers many of the problems that she observed when at Ruth B's apartment, and describes what she felt was RBI's deteriorating emotional well being.

At some point during this trial discharge, when RBI was about three years old, one of RBI's pre-school teachers observed RBI gyrate his hips and stick his tongue in and

2006 WL 2827856

out of his mouth in what the teacher felt was a sexually suggestive manner. This led the teacher to conclude that RBI may have seen or been subjected to a sexual act. Although this information was conveyed to ACDSS, Plaintiffs contend that the ACDSS failed to properly investigate it.

On December 24, 1993, when Mrs. McElroy went to pick up RBI for a visit, she observed that there was no food in the refrigerator, and that Ruth B.'s new male friend, "L," was laying on top of RBI on the bed restraining him. Mrs. McElroy reported this to RBI's caseworker and, allegedly, was told not to call the Child Abuse Hotline. ACDSS case records do reflect, however, that the caseworker told Mrs. McElroy that the caseworker would discuss the situation with ACDSS supervisors. *See* Ex. N. 1153. The notes also reflect that a telephone conference took place the following day between the caseworker and her supervisor, and that the supervisor advised the caseworkers to "conference w/ legal and ... try and get the case in front of a Judge and ask for some judicial direction." *Id.*

On January 11, 1994, after a call was placed to the Child Abuse Hotline alleging that Ruth B. had hit, pushed, spit on, bitten, pinched and yelled at RBI, ACDSS removed RBI from his mother's physical custody and placed him in the McElroys' foster home. Upon removal, the child was examined and, based upon the numerous bruises and injuries he had sustained while in his mother's care, ACDSS determined that Ruth B. had abused and maltreated RBI.

After the child was returned to the McElroy foster home, the McElroys felt that RBI had "changed." In this regard, they observed that RBI continually and repeatedly "tantrumed" and was regularly "acting out" sexually. The McElroys determined they could no longer have RBI reside in their home and asked the ACDSS to find a new placement for RBI.

In May of 1994, Ruth B. surrendered her parental rights. With Ruth B.'s surrender, RBI was "freed" for adoption. Accordingly, the ACDSS began to seek a "pre-adoptive" foster home for RBI-that is, a foster family that was interested in eventually adopting RBI. At some point in time, it had been concluded that RBI suffered from severe hearing limitations and, therefore, he attended a special education pre-school program for deaf children at

the Altamont School. While at the Altamont School, RBI worked with a teacher named Sara Doe. [9] Mrs. Doe and her husband expressed an interest in becoming certified foster care parents for RBI and perhaps adopting RBI. Although they lived in Montgomery County, the Does were certified as foster parents by Albany County. On June 30, 1994, RBI was placed in the Does' foster home as a pre-adoptive placement.

**\*4** However, while the child was at the Does' home, he repeatedly acted in a violent and sexual manner (simulating sexual acts with dolls, exposing himself to the Does' young daughter, and masturbating). On August 11, 1995, ACDSS caseworker Claudia Grossi requested that an evaluation be conducted of RBI at the St. Anne's Institute due to the Does' reports that RBI repeatedly "acted out" in a sexual manner and because the child "reportedly tantrums excessively at home and in school." Plt. OO. The evaluation request, which was filled out by Grossi, indicated that sexual abuse was suspected. Ex. "NN." Grossi testified at her deposition, however, that at the time she requested the evaluation she did not know whether RBI had himself been subjected to a sexual act, and believed it was possible that he might have witnessed sexual acts which, according to Grossi, would be within the definition of sexual abuse. *See* Gross Dep., pp. 133-35 (ex. "UUUU").

The evaluation was conducted by the St. Anne Institute's Sex Abuse Preventive Services program on October 17, 1995. During the evaluation, when asked if anyone ever touched his private parts, RBI responded "a baby." Ex. OO. He did not disclose any particular instances of sexual abuse occurring to him during the evaluation. *Id.* The Does indicated during the evaluation that their main concern was RBI's continually escalating level of tantrums and aggressive behaviors, and revealed that at times their 15-year-old son had "backhanded" RBI when he became aggressive. *Id.* The Does indicated that they thought the best course of action was for the ACDSS to find RBI another pre-adoptive home. ACDSS did not immediately remove RBI from the Does's home.

In April of 1996, ACDSS requested that Children's Hospital in Boston evaluate RBI. The main concern presented at this evaluation was RBI's aggressiveness. *See* Ex. QQ. The evaluators found that "RBI would appear to be presenting more with behaviors that were engendered by his environment, rather than a clear cut,

biologic-based psychiatric or neurologic disorder." *Id.* The evaluators surmised that RBI's behavioral problems might have been caused by lack of early nurturing, abuse or maltreatment during early life, repeated changes in family settings during his life, frustration arising from his hearing impairment and limitations on his ability to communicate, a form of Attention Deficit/Hyperactivity Disorder, or a combination of all of these. *Id.* It was concluded that, in order to address these issues, "[m]uch support will be needed by the family [RBI] lives with and the school he attends." *Id.*

In July 1996, RBI was placed in the pre-adoptive foster home of Plaintiffs Bradley and Heidi Ingrao. Before RBI was placed in their home, the Ingraos told ACDSS representatives "that they could not adopt a child who had been sexually abused." Plaintiffs contend that, despite reason to believe that RBI had been the victim of sexual abuse and was suffering from emotional disturbances caused by past abuse and/or neglect, ACDSS assured the Ingraos that RBI had not been sexually abused.

**\*5** Almost immediately, the Ingraos observed numerous inappropriate acts by RBI. In addition, RBI told the Ingraos that the Does' son would play "snake" with him, dress him in women's clothes, put lipstick on him, and put nail polish on him, all of which the Ingraos felt were indicative of sexual abuse by the Does' son. B. Ingrao Dep. p. 160 (ex. "XXX"). Bradley Ingrao also testified that after school started in September 1996, RBI began to regularly become so "agitated" that the Ingraos would need to physically restrain RBI "for hours at a time." *Id.* at 156. Because RBI would break things, including putting his hands through glass windows, the Ingraos had to maintain a room in their house "with everything removed from it, Plexiglas on the windows and mattresses and cushions on all walls and floor, so that [RBI] could be retrained." *Id.* The Ingraos, who lived in the State of Florida at the time, spoke with their local social services agency and requested that the child see a psychiatrist. *Id.* p. 166. The psychiatrist diagnoses the child with Attention Deficit Disorder and prescribed a medication but, other than a limited sedative effect from the medication, RBI's conduct continued. *Id.* pp. 166-67. Plaintiffs contend that in the few conversations they had with ACDSS's representatives, they were not told that RBI had been suspected of having been sexually abused, and instead were told that RBI just needed a loving and stable home.

RBI was adopted by the Ingraos in July 1997. Thereafter, he was diagnosed with post-traumatic stress disorder secondary to abuse, neglect and trauma, and underwent multiple psychiatric hospitalizations. In 1999, when RBI was just shy of nine years old, the Ingraos placed him in a residential psychiatric center for the deaf specializing in severely emotionally disturbed children (the Walden School) where he has remained as a full time resident. In the fall of 1999, RBI reported in therapy at the Walden School that he had been sexually abused by minors in the Does' home, including the Does' son. The therapist called ACDSS caseworker Barbara Lynch and advised of the disclosure. Lynch did not disclose to the therapist that RBI had been evaluated for sexual abuse by St. Anne's Institute.

### IV. DISCUSSION

#### a. Federal Adoptive Assistance and Child Welfare Act of 1980

Defendant Albany County argues that the Second Cause of Action, asserting a violation of the Federal Adoptive Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628, 670-679a ("FAACWA"), must be dismissed because no independent private right of action exists under the statute. Plaintiffs fail to oppose this portion of Defendant's motion. The failure to oppose a motion for summary judgment on a certain claim is deemed abandonment of the claim, *see Rizzo-Puccio v. College Auxiliary Services, Inc.,* 216 F.3d 1073 (2d Cir.2000)(claims not addressed in opposition to defendants' motion for summary judgment were deemed abandoned), and, in the Northern District of New York, is deemed consent to granting that portion of the motion. *See* N.D.N.Y.L.R. 7.1(b)(3); *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.,* 2001 WL 237218, at \*1 (N.D.N.Y. Mar. 9, 2001)(Hurd, J.); *Beers v. General Motors Corp.,* 1999 WL 325378, at \*8 (N.D.N.Y. May 17, 1999)(McCurn, S.J.). Thus, the FAACWA claim is subject to summary dismissal on this basis.

**\*6** Further, Plaintiffs have failed to demonstrate that an independent private right action exists under any provision of the Adoptive Assistance and Child Welfare Act of 1980, or that an implied right of action exists pursuant to 42 U.S.C. § 1983 for a violation of this act. Accordingly, the motion in this regard is granted, and the Second Cause of Action is dismissed. *See Polite v. Casella,* 901 F.Supp. 90, 93 (N.D.N.Y.1995)(McAvoy,

C.J.)(finding no actionable Section 1983 claim premised upon a purported violation of the FAACWA); *see also McMahon v. Tompkins County Dept. of Soc. Serv.,* 1998 WL 187421, at *5-*7 (N.D.N.Y. April 14, 1998)(Pooler, J.)("[B]ecause [42 U.S.C. § 671(a)(7) ] contains only a general requirement as to monitoring and evaluation and provides no clear guidelines or standards concerning how that requirement is to be implemented, I find that its terms are sufficiently vague and amorphous that they do not create a federal right enforceable under Section 1983.") (citing *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 509 (1990)); *Daniel H. v. City of New York,* 115 F.Supp.2d 423, 428 (S.D.N.Y.2000)("[T]he Court holds that plaintiffs do not have an implied private right of action under 42 U.S.C. § 1983 for violations of [section 675 and three subsections of section 671 of the Adoption Assistance] Act.").

### b. Child Abuse Prevention Act

Similarly, Defendant Albany County moves to dismiss the Third Cause of Action which asserts a claim based upon purported violations of the Federal Child Abuse Prevention and Treatment Act, 42 U.S.C. §§ 5101-5106 ("CAPTA"). Defendant contends that no private cause of action exists under CAPTA. Plaintiffs also have failed to oppose this portion of Defendant's motion. Accordingly, the CAPTA claim is subject to summary dismissal based upon Plaintiff's implied abandonment and/or consent to dismissal.

Further, Plaintiffs have failed to demonstrate that any provision of CAPTA provides for an independent private right of action, or that an implied right of action exists pursuant to 42 U.S.C. § 1983 for a violation of this act. Accordingly, the motion in this regard is granted, and the Third Cause of Action is dismissed. *See Hilbert S. v. County of Tioga,* 2005 WL 1460316, at *13-*14 (N.D.N.Y. June 21, 2005)(McAvoy, S.J.)(Finding that "CAPTA does not create clear and unambiguous obligations on the State that arise to the level of an enforceable right" and thus dismissing a Section 1983 claim premised upon an alleged violation of CAPTA.).

### c. New York Social Services Law and related rules and regulations

Defendant Albany County also moves to dismiss the Fourth Cause of Action, arguing that the Plaintiffs have failed to identify any provision of the New York Social Services Law (or related codes and regulations) that allows

for an independent private right of action premised upon a violation of such law. Plaintiffs oppose this portion of the motion, arguing that a private right of action exists because caseworkers knowingly and willfully failed to report incidents of suspected abuse or maltreatment.

**\*7** This Court has previously held that an independent right of action exists under N.Y. Soc. Serv. L. § 420(2) where a mandated reporter willfully and knowingly fails to report an instance of suspected child abuse or maltreatment. *See Doe v. Jefferson County,* 985 F.Supp. 66, 70 (N.D.N.Y.1997)(McAvoy, C.J.); *see also* N.Y. Soc. Serv. L. 420(2)("Any person, official or institution required by this title to report a case of suspected child abuse or maltreatment who knowingly and willfully fails to do so shall be civilly liable for the damages proximately caused by such failure."). New York Social Services Law § 413 appears to impose the reporting obligation on the social service agency which employs an offending social service caseworker. Thus, inasmuch as Plaintiffs have submitted some evidence from which a reasonable jury could conclude that ACDSS's caseworkers willfully and knowingly failed to report a case of suspected child abuse or maltreatment, Defendant's motion in this regard is denied.

Viewing the evidence in the light most favorable to Defendant, a genuine question of material fact exists as to whether any representative knowing and willfully failed to report such a case. Indeed, there is evidence from which a reasonable fact finder could conclude that, when presented with reports of abuse or maltreatment, caseworkers reported to their supervisors and the agency engaged in investigative efforts. Further, where no report was made or investigation conducted, a jury question exits as to whether the omission amounted to a knowing and willful failure to report suspected child abuse or maltreatment. Therefore, Plaintiffs' crossmotion in this regard is also denied.

### d. Substantive Due Process Claims

Next, Defendant moves to dismiss Plaintiffs' claims brought under the Substantive Due Process Clause of the Fourteenth Amendment. Plaintiffs have opposed this portion of the motion and contend that they are entitled to summary judgment on these claims. For the reasons that follow, Defendant's motion in this regard is granted in part and denied in part, and Plaintiffs' motion is denied.

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**RBI's Substantive Due Process Claim**

As Judge Pooler wrote when she was on the District Court bench:

The substantive component of the due process clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Interport Pilots Agency, Inc. v. Sammis, 14 F.3d 133, 144 (2d Cir.1994)* (internal quotation and citation omitted). In this regard, the due process clause prevents "government 'from abusing [its] power, or employing it as an instrument of oppression.' " *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) (quoting *Davidson v. Cannon,* 474 U.S. 344, 348, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986)).

*McMahon,* 1998 WL 187421, at \*2.

Of course, "[t]he 'first step in substantive due process analysis is to identify the constitutional right at stake.' " *Id.* at \*3 (quoting *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994)). Plaintiffs contend that the Albany County Defendant failed to protect RBI from harm by his mother and others while in foster care. "[A] state agency may be liable under the Due Process Clause for failing to protect children in their custody." *Phifer v. City of New York,* 289 F.3d 49, 62 (2d Cir.2002) (citing *Doe v. New York City Dep't of Soc. Servs.,* 649 F.2d 134, 141 (2d Cir.1981)). "When individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution." *Doe v. New York City Dep't of Social Servs.,* 649 F.2d 134, 141 (2d Cir.1981).

**\*8** In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *[County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708 (1998) ]. *Lewis* reaffirmed the principle that the Fourteenth Amendment is not a "font of tort law." *Id.* at 848, 118 S.Ct. 1708. It does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable. The *Lewis* Court made it clear, for example, that "negligently inflicted harm

is categorically beneath the threshold of constitutional due process." *Id.* at 849, 118 S.Ct. 1708.

*Pena v. DePrisco,* 432 F.3d 98, 112 (2d Cir.2005). "Determining whether the conscience is shocked by lesser levels of culpability than intentional infliction of physical harm requires [courts] to make 'closer calls.' " *Pena,* 432 F.3d at 113 (quoting *Lewis,* 523 U.S. at 849, 118 S.Ct. 1708). In situations where government officials are not required to make split-second determinations, deliberate indifference is enough to shock the conscience. *Pena,* 432 F.3d at 113. "[T]his mental state ... requires proof that the defendant[s] focused upon the risk of unconstitutional conduct and deliberately assumed or acquiesced in such risk." *Id.* (quoting *Woodward v. City of Worland,* 977 F.2d 1392, 1399 n. 11 (10th Cir.1992)).

Knowledge of a specific harm that might befall a child in foster care, however, "is not the only type of knowledge that will suffice" to make out a substantive due process claim. *Doe,* 649 F.2d at 145. "Defendants may be held liable ... if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Id.* Under this theory, one may infer "deliberate unconcern for plaintiffs' welfare from a pattern of omission revealing deliberate inattention to specific duties imposed for the purpose of safeguarding plaintiffs from abuse." *Id.; Tylena M. v. Heartshare Children's Servs.,* 390 F.Supp.2d 296, 306-07 (S.D.N.Y.2005).

As noted by the Southern District in *Tylena M.,*

The Second Circuit has explained that, although "ordinary negligence by itself could not establish a cause of action under [Section] 1983," *Doe,* 649 F.2d at 143, "repeated acts of negligence [can] be evidence of indifference." *Id.* at 142. Evidence of "gross negligent conduct creates a strong presumption of deliberate indifference." *Id.* at 143. The Second Circuit has "often equated gross negligence with recklessness, and [has] defined it as the 'kind of conduct ... where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk.' " *Poe v. Leonard,* 282 F.3d 123, 140 n. 14 (2d Cir.2002)(quoting *Bryant v. Maffucci,* 923 F.2d 979, 985

Ingrao v. County of Albany, N.Y., Not Reported in F.Supp.2d (2006)

2006 WL 2827856

(2d Cir.1991))(further citations omitted). *See also Doe,* 649 F.2d at 143 n. 4 (Gross negligence is an "indifference to present legal duty and utter forgetfulness of legal obligations, so far as other persons may be affected, [and] a manifestly smaller amount of watchfulness and circumspection than the circumstances require of a person of ordinary prudence.") (quoting *Burke v. Cook,* 246 Mass. 518, 141 N.E. 585, 586 (1923)).

**\*9** 390 F.Supp.2d at 306.

Thus, to succeed on a § 1983 claim for the nonfeasance of affirmative duties to those in its custody, a plaintiff must demonstrate the following two elements:
(1) "the omissions must have been a substantial factor leading to the denial of a constitutionally protected liberty or property interest;" and (2) "the officials in charge of the agency being sued must have displayed a mental state of 'deliberate indifference' in order to 'meaningfully be termed culpable' under § 1983."

*Tylena M.,* 390 F.Supp.2d at 302 (quoting Doe, 649 F.2d at 141).

Further, it is well-settled that under Section 1983, municipalities are not exposed to *respondeat superior* liability for misdeeds by municipal employees. *Walker v. City of New York,* 974 F.2d 293, 296 (2d Cir.1992), *cert. denied,* 507 U.S. 961 (1993)(citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658 (1978)). "Rather, it is only when the municipality itself commits the misdeed, that is, 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.' " *Walker,* 974 F.2d at 296 (quoting *Monell,* 98 S.Ct. at 2037). Thus, in order to hold a municipality responsible for an alleged constitutional deprivation, a plaintiff must prove that "the entity's policy or custom played a part in the violation of federal law." *Hafer v. Melo,* 502 U.S. 21, 25 (1991). Such a policy or custom may be established by proof that the municipal policymaker failed to train or supervise its employees where they "should have known that inadequate ... supervision was 'so likely to result in the violation of constitutional rights, that [they] ... can reasonably be said to have been deliberately indifferent to the need.' " *Walker,* 974 F.2d at 298 (quoting *City*

*of Canton v. Harris,* 489 U.S. 378, 390(1989)); *see also Amnesty America v. Town of West Hartford,* 361 F.3d 113, 127 n. 8 (2d Cir.2004) (stating that the need for better or more supervision must be obvious).

As the Supreme Court stated in *City of Canton,* 109 S.Ct. at 1205:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific [employees] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible ... if it actually causes injury.

The Supreme Court continued to note that,

> [it will not suffice] to prove that an injury or accident could have been avoided if a[ ] [government employee] had had better or more training, sufficient to equip him [or her] to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury.... [F]or liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.... Thus ... [the plaintiff] must still prove that the deficiency in training actually caused the [government employees'] indifference to [the risk of harm].... In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to

something the city "could have done"
to prevent the unfortunate incident....

**\*10** *City of Canton,* 109 S.Ct. at 1206. The operative
inquiry is whether the facts suggest that the policymaker's
inaction was the result of a "conscious choice" rather than
mere negligence. *Amnesty Am.,* 361 F.3d at 128.

In support of RBI's substantive due process claim,
Plaintiffs assert a host of individual theories which, they
contend, constitute separate policies or practices that
demonstrate ACDSS's deliberate indifference to RBI's
welfare and that caused him to suffer harm. In this
regard, Plaintiffs assert that the ACDSS had separate
policies or customs of:(1) failing to move for termination
of the parental rights of the parents of foster children
in its charge although authorized to do so; (2) failing
to investigate and/or report evidence of abuse or neglect
occurring to foster children in its charge; (3) "not
protecting foster children from being hit by older foster
children if there were no marks left;" (4) failing to train
or supervise caseworkers in certain aspects of their job,
such as detecting and treating emotional difficulties or
sexual abuse experienced by foster children; (5) failing to
train and supervise caseworkers on intervention tools and
procedures that are designed to protect children in foster
care; (6) failing to train and supervisor caseworkers on
proper monitoring of the welfare of children in long-term
foster care placements; and (7) failing to train caseworkers
on "matching children to foster families." *See* Plf. Mem.
L., pp. 4-21.

Although the parties attempt to parse out each of these
alleged failures for purposes of determining whether any
one, individually, arose to the level of a policy, practice,
or custom causing a substantive due process violation, the
Court sees the allegations as interrelated and inextricably
intertwined. The allegation, at least as far as the Court
can see, is not that RBI had a substantive due process
right to have his biological mother's parental rights
terminated, or a substantive due process right to have
caseworkers implement certain "intervention tools," or
even a substantive due process right to have social service
officials follow any specific state-mandated procedures,
but rather that he had a substantive due process right to be
safe and protected while in the care of the ACDSS. In this
case, if there is a substantive due process violation, it will
be because a jury finds, from the totality of circumstances,

that the ACDSS was deliberately indifference to this right
as evinced by ACDSS's failure to investigate dangers that
were know (or reasonably should have been known), and
failed to implement available procedures that could have
ameliorated such dangers.

A few points require clarification. First, from a factual
perspective, the substantive due process claim is a close
call. The parties have submitted a mountain of evidence on
these motions that includes a two-thousand (2,000) page
case record chronicling ACDSS's involvement with RBI
while he was in ACDSS's care. While Plaintiffs' counsel
has done a thorough job of wading through these records
and picking out instances that arguably demonstrate
that ACDSS caseworkers could have done a better job,
the extensive record hardly reflects that RBI was left
unsupervised and forgotten while in foster care. Because
a reasonable jury might conclude that the conglomeration
of these instances evince a pattern, practice, or custom
of deliberate indifference to RBI's rights, Defendant's
motion for summary judgment must be denied. By the
same reasoning, however, the record hardly reflects a
situation that would entitle Plaintiffs to a judgment as
a matter of law on this substantive due process claim.
Therefore, Plaintiffs' cross-motion in this regard must also
be denied.

**\*11** Second, a legal issue bears noting. The Court is not
holding that RBI's substantive due process rights might
have been violated merely because ACDSS caseworkers
failed to terminate Ruth B.'s parental rights, or failed to
follow certain protocols or state mandated procedures.
Rather, the Court's decision to deny Defendant's motion
for summary judgment is based upon the view that a
reasonable jury might conclude, based on the totality of
circumstances presented in this case, that the failure of
ACDSS caseworkers to use tools that could, in some way,
serve to protect the child from harm, or to be trained in
the use of these tools, amounted deliberate indifference
to RBI's safety. Thus, a jury might conclude that, in this
particular case, the failure to move to terminate Ruth
B.'s parental rights, or to file certain reports regarding
RBI's treatment, could be part of the *res gestate* that
amounts to a policy or practice of deliberate indifference
to RBI's well being that existed the ACDSS. By the
same reasoning, however, a jury might conclude that the
ACDSS's decision not to take certain action (such as
deciding not to move to terminate Ruth B.'s parental
rights or failing to remove RBI from his mother's care

sooner during the "trial discharge") was reasonable under the law and circumstances as they existed at the time, and that ACDSS's conduct in failing to move to terminate parental rights (or in failing to stop visitation earlier) did not evince deliberate indifference to RBI's safety while in foster care. In this regard, a jury could conclude that the complained of actions or omissions were reasonable under the circumstances and thus do not, either individually or in the context of all the facts and circumstances related to RBI, evince a deliberate indifference to RBI's right to remain safe while in ACDSS's care.

### Heidi J. & Bradley B. Ingrao's
### Substantive Due Process Claim

Plaintiffs also seem to assert that Heidi J. & Bradley B. Ingrao's substantive due process rights have been violated because ACDSS caseworkers failed to disclose to them that RBI had been sexually abused. *See* Pl. Mem. L, pp. 12-14. Assuming *arguendo* that RBI had been sexually abused either before he came into the care of the ACDSS or while in foster care, and assuming further that ACDSS caseworkers were aware of this fact but failed to disclose it to the Ingraos, Plaintiffs nevertheless have failed to identify a liberty interest possessed by the Ingraos that was violated by the omission. Rather, it appears that the claim is one sounding in "wrongful adoption" under New York tort law (as addressed below), but not one that is actionable under the Fourteenth Amendment. Therefore, Defendant's motion for summary judgment in this regard is granted, and, to the extent Plaintiffs assert a substantive due process claim by and on behalf of Heidi J. & Bradley B. Ingrao, the claim is dismissed.

### e. Negligence Claims

Plaintiffs' primary negligence claim is that caseworkers failed to perform their duties to protect RBI from harm in a reasonably competent manner, and that RBI suffered harm as result of this negligence. The factual evidence presented on this motion is sufficient to allow a jury to conclude that the ACDSS was negligent in its supervision of RBI while in its care and that this negligence caused RBI to suffer harm. This is sufficient to state an actionable claim for negligence under New York law. *See Sean M. v.. City of N.Y.,* 20 A.D.2d 146, 156-58 (1st Dept.2004). Therefore, Defendant's motion for summary judgment in this regard is denied.

*\*12* On the other hand, when viewing the evidence in the light most favorable to Defendant, a reasonable jury could easily conclude that the ACDSS was not negligent in performing duties to supervise RBI's stay in foster care. Thus, Plaintiffs' cross-motion in this regard is denied.

Plaintiffs also argue that Plaintiffs Heidi J. & Bradley B. Ingrao have a negligence claim based upon ACDSS's failure to advise them of the abuse or neglect that RBI purportedly endured before being adopted. Although the Amended Complaint alleges a negligence claim only on RBI's behalf, *see* Am. Compl.¶ 24 ("The infant plaintiff was dependant upon the defendants for his basic needs."); ¶ 25 ("The defendants owed a duty to accord the infant plaintiff such services as were necessary for his reasonable safety...."); ¶ 26 ("The defendants failed to perform that duty."); ¶ 27 ("Defendants' ... negligence and gross negligence ... the plaintiff has been damaged ...."), the Court will address the claim because Defendant has not asserted an objection based upon prejudice or surprise arising from the late insertion of this claim.

Rather, Defendant argues that any negligence claim by the Ingraos cannot be made out against Albany County because the ACDSS and the Ingraos were not in a special relationship and, therefore, ACDSS owed the Ingraos no special duty. However, under New York Law "[i]t is only necessary to establish a 'special relationship' when the defendant otherwise owes no duty to the plaintiff." *Sean M.,* 20 A.D.2d at 158. (citing *Cuffy v. City of New York,* 69 N.Y.2d 255 (1987)). Here, the ACDSS owed the Ingraos, a prospective adoptive family, the duty to provide them with RBI's complete medical history. *See* N.Y. Soc. Serv. L. § 373-a. Plaintiffs contend that the ACDSS failed to provide them with RBI's medical history, including the assessments performed by St. Anne's Institute and by Children's Hospital, both of which would have indicated to some degree that there was a suspicion that RBI had been sexually abused. Thus, to the extent that the failure to provide these records arose from negligent conduct, Defendant's motion is denied. Further, to the extent that Defendant negligently misrepresented RBI's background, the motion for summary judgment is also denied. *See Rose v. American Tobacco Co.,* 2004 WL 986239, at *3 (N.Y. Sup.Ct. N.Y. County Feb. 20, 2004)("A viable claim of negligent misrepresentation requires the plaintiff to demonstrate the existence of a representation of material fact, falsity, scienter, justifiable reliance and injury.")

(citing *Grammar v. Turits,* 271 A.D.2d 644, 706 N.Y.S.2d 453 (2nd Dept.2000); *Fab Indus., Inc. v. BNY Fin. Corp.,* 252 A.D.2d 367, 675 N.Y.S.2d 77 (1st Dept.1998)).

Again, when the evidence is viewed in the light most favorable to the Defendant, it is possible for a jury to conclude that there was no negligence or misrepresentation. Thus, Plaintiffs' cross-motion must also be denied.

### f. Fraud, Concealment, and/or Misrepresentation

**\*13** Finally, Plaintiffs Heidi J. & Bradley B. Ingrao asserts a claim of wrongful adoption, contending that the representatives of the ACDSS committed fraud, concealment, or misrepresentation when they advised the Ingraos prior to RBI's adoption that he had not been sexually abused to induce them to adopt RBI. Defendant argues that there was no fraud, concealment, or misrepresentation because it was never concluded that RBI had been sexually abuse and no evidence existed establishing this fact. In addition, Defendant argues that even if there was a misrepresentation in this regard, it could not have induced the Ingraos to adopt the child because RBI lived with Ingraos for one year before they made their adoption decision and, during this time, RBI exhibited many of the behaviors which the Ingraos now contend point to his having been sexually abused.

Claims for "wrongful adoption," which "have only recently been recognized as viable tort actions in New York," are premised upon "an extension of well-settled common-law fraud principles to the adoption process." *Ross v. Louise Wise Servs., Inc.,* 28 A.D.3d 272, 330 (1st Dept.2006) (citing *Juman v. Louise Wise Servs.,* 211 A.D.2d 446, 447 (1st Dept.1995)). This extension of tort principles was deemed warranted to "advance New York's vital interest in the welfare of its children, as well as in the adoption process, which advances that vital interest." *Id.* In order to make out a prima facie case for wrongful adoption under New York law, Plaintiffs must establish that: (1) Defendant made a representation as to a material fact; (2) such representation was false; (3) Defendant intended to deceive Plaintiff; (4) Plaintiff believed and justifiably relied upon the statement and were induced by it to adopt RBI; and (5) as a result of such reliance Plaintiffs sustained pecuniary loss. *Juman v. Louise Wise Serv.,* 159 Misc.2d 314, 315 (N.Y. Sp. Ct., N.Y. County 1994), *aff'd Juman,* 211 A .D.2d at 447 ("The IAS Court, prior to compelling disclosure, properly determined that

the plaintiffs' complaint, grounded in claims of fraud and misrepresentation, alleged a cognizable cause of action for 'wrongful adoption.' ").

Plaintiffs have cited to specific portions of the record from which a reasonable fact finder could conclude that, although there was never a finding by a court or medical professional that RBI had been sexually abused, representatives of the ACDSS suspected that RBI had been sexually abused. *See* Pl. Opp. to Def. L.R. 7.1 Stat. Mat. Facts, ¶ 28. Plaintiffs have also raised a question of material fact as to whether the ACDSS shared with them all of the information that ACDSS knew or believed about RBI, especially with regard to his having been sexually abused, and whether or not they would have adopted RBI if they had been advised of these concerns. Construing these facts in the light most favorable to Plaintiffs, a reasonable jury could conclude that the ACDSS's representative who spoke with the Ingraos before they committed to adopt RBI misrepresented his background in order to induce the Ingaos to adopt him.

**\*14** The question of reliance, however, is more troubling in light of the fact that the Ingraos lived with RBI for year before they adopted him. Nonetheless, a jury might reasonable conclude that, despite the indications to the contrary, the Ingraos did not conclude before they adopted RBI that he had been sexually abused because of the assurances given to them by ACDSS representatives. Thus, a jury might conclude that the misrepresentation, if occurred, was reasonably relied upon the Ingraos and caused the adoption that otherwise would not have occurred. Accordingly, Defendant's motion in this regard is denied.

To the contrary, however, Plaintiffs have not established the lack of questions of material fact on these issues. Indeed, a jury might well conclude on this record that ACDSS representatives were not aware of sexual abuse in exist in RBI's background, or that, if a misrepresentation occurred, that it was not relied upon in the adoption decision. Therefore, Plaintiffs' cross-motion for summary judgment on this claim is denied.

### V. CONCLUSION

For the reasons discussed above, Defendant Albany County's motion for summary judgment [dkt. # 136] is **GRANTED IN PART and DENIED IN PART.** In this regard, the Second and Third Causes of Action in

the Amended Compliant are dismissed in their entirety, and the Third Cause of Action is dismissed inasmuch as it asserts a substantive due process claim on behalf of Plaintiffs Heidi J. and Bradley B. Ingrao. Plaintiffs' cross-motion for summary judgment [dkt. # 146] is **DENIED** in all respects.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2006 WL 2827856

Footnotes

1    This Decision and Order amends the Decision and Order entered on September 29, 2006 by substituting a pseudonym for the name of a foster family in which Plaintiffs contend that the infant child was sexually abused and struck by the foster family's then 15-year-old son. In this regard, this Decision and Order supersedes the September 29, 2006 Decision and Order, and the Clerk of the Court is instructed to seal the September 29, 2006 Decision and Order so as to not make the September 29, 2006 Decision and Order available on the public docket.

2    *Ingrao II* involves similar claims to those asserted in this action and the claims arise from the same facts and circumstances as give rise to the instant action.

3    The parties have submitted a voluminous record on these motions and, suffice it to say, there is considerable dispute as to the facts and reasonable inferences to be drawn from those facts. Distillation of the undisputed facts pertinent to the pending motions is made more difficult because Plaintiffs' Local Rule 7.1 Counter-Statement of Material Facts contains repeated legal and factual arguments. In many instances, Defendant has denied a stated fact simply by citing to the same portion of the record that Plaintiffs contend supports their assertion. The facts set forth above are culled from those portions of the record where there either exists no dispute, or, where the denial of a fact is not supported by the cited citation. Argumentative inferences from certain supported facts are not accepted for purposes of the Background, although such inferences may be referenced as a party's contention.

4    In an evaluation of RBI conducted in November 2004 that included review of RBI's records, Jonathan M. Horowitz, M.D. noted that Ruth B.'s neglectful conduct involved "rough handling" of RBI that included inappropriate and painful manipulation of his arms, legs, penis and testicles. However, Dr. Horowitz opined that "[a] three month old infant would experience this mistreatment as painful but would not have the experience of being sexually abused."

5    The Onondaga County Family Court Order that removed RBI from Ruth B.'s custody required that the custody of RBI be in the department of social services of the county in which Ruth B. resided or was placed.

6    Up until February 19, 1999 (when the statute was amended), New York Social Services Law § 384-b(1) provided in relevant part:
      1. Statement of legislative findings and intent.
      (a) The legislature hereby finds that:
      * * *
      (ii) it is generally desirable for the child to remain with or be returned to the natural parent because the child's need for a normal family life will usually best be met in the natural home, and that parents are entitled to bring up their own children unless the best interests of the child would be thereby endangered;
      (iii) the state's first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home; and
      (iv) when it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought for the child.
      (b) * * *
      It is the intent of the legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.

7    In *In re Marino S.*, the New York Court of Appeals stated:
      As a rule, when a child has been removed from the home based on alleged abuse or neglect-as these three children were-the social services official responsible for the child must attempt to reunite the child with the birth parent; this includes efforts at rehabilitation so as to render the parent capable of caring for the child (*see* Family Ct Act § 1052[b] [i][A]; § 1055[c] ). Such efforts typically include facilitation of parent-child visits and provision of services to the parent, including assistance with housing, employment, counseling, medical care and psychiatric treatment (*see* Family Ct Act § 1055[c] ).

2006 WL 2827856

Similarly, in termination of parental rights proceedings (governed by Social Services Law § 384-b) a foster care agency generally must demonstrate that diligent efforts at reunification have been undertaken. Such efforts are not required, however, where they would be detrimental to the best interests of the child (*see* Social Services Law § 384-b [8][a] [iv] ). These provisions implement New York's strong public policy of both keeping families together and protecting the health and safety of children (*see* Social Services Law § 384-b [1] ).

100 N.Y.2d at 368-69. The reference to Social Services Law § 384-b [8] [a][iv]'s allowance to dispense with diligent efforts to reunite the family refers to Social Services Law § 384-b *after* New York passed the Adoption and Safe Families Act in 1999. Subsection 8(a)(4) was not in Social Services Law § 384-b before 1999.

8    New York Social Service Law § 422 establishes a statewide "central register" to receive telephone calls of child abuse and maltreatment. The statewide central register is staffed twenty four hours a day, seven days per week and is colloquially referred to as the "Child Abuse Hotline."

9    This is a pseudonym to protect the identity of the Does' child.

---

**End of Document**                                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1802601
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Shawn K. McAVOY, Plaintiff,
v.
Suffolk County Sheriff DeMARCO, Suffolk
County Correctional Facility, and "Several
[Suffolk County] Sherriffs [sic] Deputies
in full/individual capacity," Defendants.

No. 14–CV–6293 (SJF)(AKT).
|
Signed April 16, 2015.

**Attorneys and Law Firms**

Shawn K McAvoy, Riverhead, NY, pro se.

#### ORDER

FEUERSTEIN, District Judge.

**\*1** On October 22, 2014, incarcerated *pro se* plaintiff Shawn K. McAvoy ("plaintiff") filed a complaint in this Court against Suffolk County Sheriff DeMarco ("Sheriff DeMarco"), Suffolk County Correctional Facility ("SCCF" or "the Jail") and "Several [Suffolk County] Sheriffs [sic] Deputies in full/individual capacity" (collectively, "defendants"), accompanied by an application to proceed *in forma pauperis.* Since plaintiff's financial status, as set forth in his declaration in support of the application to proceed *in forma pauperis,* qualifies him to commence this action without prepayment of the filing fee. *See* 28 U.S.C. §§ 1914(a); 1915(a)(1), plaintiff's application to proceed *in forma pauperis* is granted. However, for the reasons set forth below, plaintiff's Section 1983 claims against Sheriff DeMarco, the Jail and as construed to be against the County of Suffolk ("the County") are *sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief.

I. The Complaint [1]
Plaintiff alleges that on September 8, 2014, while he "was in the Sheriffs [sic] holding area in cell 6 waiting to be driven to court[,][he] and another inmate were in a confrontation[,]" (Compl. at ¶ IV.), and "without being told to stop or freeze, the cell door cracked open and the sheriff's deputies came rushing in[,] grabbed only [him] [,] * * * [and] then threw [him] into the wall face first * * *[,]" causing him to sustain a bruise on his forehead and a broken nose. (*Id.*) Plaintiff further alleges: (1) that he was then "slammed into a bench with a great deal of pressure applied to [his] face [,]" (*id.*); (2) that "[a]t this point both hands were behind [his] back with no resistance[,]" (*id.*); (3) that "[e]ven though [he] was not resisting and restrained, the deputies picked [him] up and carried [him] over to a drain accross [sic] the cell[,] * * * placed [his] eye socket directly on the center of the drain[,] * * * [and] kneed [him] in the back of the head," causing him to sustain "lacerations around [his] eye socket and significant bruising behind [his] left ear and [his] skull[,]" (*id.*); and (4) that the deputies also (a) twisted [his] arm to the point that [he] [could] not feel half [his] hand[,] * * * apply pressure, perform certain movements or close [his hand] fully[,]" (*id.*), (b) cuffed [him] behind [his] back with [his] right arm twisted and placed in a very painful position[,]" (*id.*); and (c) "placed [him] in a cell by [him]self where [he] fell unconcious [sic] with both of [his] hands behind [his] back[,] slamming the right side of [his] head." (*Id* .) According to plaintiff, approximately twenty-five (25) to thirty (30) minutes later, he was taken to Peconic Bay Medical Center, where x-rays and MRIs were performed and a doctor told him that his nose was broken and his hand was sprained and administered medication to him. (*Id.*) In addition to the bruising on his forehead, eyes, left ear and left side of his head; broken nose; and sprained right hand, plaintiff claims (1) that he "has pain in [his] forearm running to [his] elbow when it [sic] closes the fist[,]" (Compl., ¶ IV.A); and (2) that "[b]esides the hospital treatment," he received no other medical treatment at the Jail and "they will not answer any request forms or grievance forms [he] ha[s] submitted." (*Id.*)

**\*2** Plaintiff seeks to recover damages in the amount of three million dollars ($3,000,000.00) and to have cameras "installed in the underground tunnel, the prisoner holding area at the Suffolk Sheriff Deputy Station located under and or beside the County Court building ." (Compl. at ¶ V).

II. Discussion

A. Standard of Review

Under both the Prison Litigation Reform Act, 28 U.S.C. § 1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)(2), a district court must dismiss a complaint if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)(2)(B). *See Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007) (finding both Section 1915 and Section 1915A to be applicable to a prisoner proceeding *in forma pauperis* ).

It is axiomatic that district courts are required to read *pro se complaints liberally, Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citation omitted), and to construe them "to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.,* 760 F.3d 223, 224 (2d Cir.2014) (quotations and citations omitted). Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010), *aff'd* ─── U.S. ───, 133 S.Ct. 1659, 185 L.Ed.2d 671 (2013) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *see also Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While the plausibility standard "does not require detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft,* 556 U.S. at 678, 129 S.Ct. 1937, 173 L.Ed.2d 868. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. *Id.* (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955, 167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1937); *accord Dejesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 81 (2d Cir.2013).

B. Section 1983

Section 1983 of Tile 42 of the United States Code provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

**\*3** 42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *See, e.g., Filarsky v. Delia,* ─── U.S. ───, 132 S.Ct. 1657, 1661, 182 L.Ed.2d 662 (2012). Thus, to state a Section 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (citation omitted); *see also Rehberg v. Paulk,* ───U.S. ───, 132 S.Ct. 1497, 1501–02, 182 L.Ed.2d 593 (2012).

1. Claims against the Jail

" 'Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.' " *Garcia v. Dutchess Cnty.,* 43 F.Supp.3d 281, 301 (S.D.N.Y.2014) (quoting *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002)); *see also Robischung–Walsh v. Nassau Cnty. Police Dep't,* 699 F.Supp.2d 563, 565 (E.D.N.Y.2010), *aff'd,*421 F. App'x 38 (2d Cir.2011). Since the Jail is an administrative arm of the County, it lacks the capacity to be sued. *See, e.g. Romanello v. Suffolk Cnty. Corr. Facility,* No. 14–cv5607, 2014 WL 6804257, at \* 2 (E.D.N.Y. Dec.3, 2014) (dismissing claims against the SCCF because it "has no legal identity separate and apart from Suffolk County."); *James v. Suffolk Cnty. Corr. Facility,* No. 13–cv–2344, 2013 WL 3189216, at \* 3 (E.D.N.Y. June 20, 2013) (holding that since the SCCF "is merely an administrative arm of Suffolk County without an independent legal identity[,] * * * [it] lacks the capacity to be sued.") Accordingly, the claims against the Jail are *sua sponte* dismissed in their entirety with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief. However, since

2015 WL 1802601

plaintiff is proceeding *pro se,* his Section 1983 claims against the Jail are construed as being brought against the County.

2. Municipal Liability

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.20121. *cert. denied,* —— U.S. ——, 134 S.Ct. 125, 187 L.Ed.2d 255 (2013); *accord Matusick v. Erie Co. Water Auth.,* 757 F.3d 31, 62 (2d Cir.2014). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones,* 691 F.3d at 80; *see also Connick v. Thompson,* ——U.S. ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (holding that under Section 1983, governmental bodies are not vicariously liable for their employees' actions); *Los Angeles County, California v. Humphries,* 562 U.S. 29, 131 S.Ct. 447, 452, 178 L.Ed.2d 460 (2010) ("[A] municipality cannot be held liable solely for the acts of others, *e.g., solely* because it employs a tortfeasor." (emphasis in original) (quotations and citation omitted)); *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prevail on a Section 1983 claim against a municipal entity, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008); *see also Connick,* —— U.S. ——, 131 S.Ct. at 1359, 179 L.Ed.2d 417 ("Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. 2018, 56 L.Ed.2d 611)); *Humphries,* 562 U.S. 29, 131 S.Ct. at 452, 178 L.Ed.2d 460 ("[A] municipality may be held liable when execution of a government's *policy or custom* ... inflicts the injury." (emphasis in original) (quotations and citation omitted)).

**\*4** "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick,* ——U.S.

——, 131 S.Ct. at 1359, 179 L.Ed.2d 417. In addition, municipal liability can be established "by showing that a policymaking official ordered or ratified the employee's actions-either expressly or tacitly." *Jones,* 691 F.3d at 81. "Thus, a plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." *Id.* To establish such deliberate indifference, "a plaintiff must show that a policymaking official was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Id.* "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action[.]" *Connick,* —— U.S. ——, 131 S.Ct. at 1360, 179 L.Ed.2d 417 (quotations and citation omitted), and "requires a showing that the official made a conscious choice, and was not merely negligent." *Jones,* 691 F.3d at 81; *see also Cash,* 654 F.3d at 334.

To state a claim for municipal liability under Section 1983, a plaintiff must allege more than that a municipal policy or custom exists. *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995) ("[T]he mere assertion that a municipality has * * * a custom or policy is insufficient [to withstand dismissal] in the absence of allegations of fact tending to support, at least circumstantially, such an inference * * *." (quotations, alterations and citation omitted)); *accord Zherka v. City of New York,* 459 F. App'x 10, 12 (2d Cir. Jan.19, 2012) (summary order). "Rather, a plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City,* 847 F.Supp.2d 573, 576 (S.D.N.Y.2012); *accord Triano v. Town of Harrison, N.Y.,* 895 F.Supp.2d 526, 535 (S.D.N.Y.2012).

The complaint is devoid of any factual allegations from which it may reasonably be inferred that a municipal policy or custom caused the conduct of which plaintiff complains. Plaintiff has not alleged, *inter alia:* (1) the existence of a formal policy which is officially endorsed by the County or the Jail; (2) actions taken or decisions made by County or Jail policymaking officials which caused the alleged violation of his civil rights; (3) a County or Jail practice so persistent and widespread as to practically have the force of law; or (4) a failure by County or Jail policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference"

to the rights of those who come in contact with their employees. Since the complaint fails to state a plausible Section 1983 claim against the County, plaintiff's Section 1983 claims as construed to be against the County are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, *unless on or before May 18, 2015,* plaintiff files an amended complaint re-pleading his Section 1983 claims against the County to correct the deficiencies set forth herein.

### 3. Claims Against Sheriff DeMarco

**\*5** A Section 1983 claim must allege the personal involvement of any individual defendant in the purported constitutional deprivation. *See Raspardo v. Carlone,* 770 F.3d 97, 115, 116 (2d Cir.2014) ("If a defendant has not *personally* violated a plaintiff's constitutional rights, the plaintiff cannot succeed on a § 1983 action against th[at] defendant. \* \* \* § 1983 requires individual, personalized liability on the part of each government defendant."); *Spavone v. New York State Dep't of Con. Servs.,* 719 F.3d 127, 135 (2d Cir.2013) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (quotations and citation omitted)). "Personal involvement" may be established by evidence of direct participation in the challenged conduct, i.e., that the supervisory official "commit[ted] the acts personally" or "authorize[d], order[ed], or help[ed] others to do the unlawful acts," *Terebesi v. Torreso,* 764 F.3d 217, 234 (2d Cir.2014), or by evidence of the supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003); *see also Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013). "In addition to satisfying one of th[o]se requirements, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation." *Rasnardo,* 770 F.3d at 116. "The fact that [a defendant] was in a high position of authority is an insufficient basis for the imposition of personal liability." *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989); *see also Back v. Hastings on Hudson Union Free Sch., Dist.,* 365 F.3d 107, 127

(2d Cir.2004). A complaint based upon a violation under Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law. *See Costello v. City of Burlington,* 632 F.3d 41, 48–9 (2d Cir.2011).

Plaintiff has not alleged the direct participation of Sheriff DeMarco in any violation of his constitutional rights, nor any basis upon which to find Sheriff DeMarco liable in a supervisory capacity. Indeed, although plaintiff names Sheriff DeMarco as a defendant in the caption of his complaint, he does not mention him anywhere in the body of the complaint. Since the complaint fails to state a plausible Section 1983 claim against Sheriff DeMarco, plaintiff's Section 1983 claims against him are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim for relief, *unless on or before May 18, 2015,* plaintiff files an amended complaint re-pleading his Section 1983 claims against Sheriff DeMarco to correct the deficiencies set forth herein.

### 4. Claims Against the Unidentified Sheriff's Deputies

**\*6** The United States Marshal Service ("USMS") will not be able to effect service of the summonses and the complaint on the unnamed defendants without more information regarding their identity. Since the Second Circuit has held that district courts must provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of "John Doe" officers, *see Valentin v. Dinkins,* 121 F.3d 72 (2d Cir.1997) (*per curiam*), the Clerk of the Court shall serve copies of the complaint and this order upon the Suffolk County Attorney, who shall attempt to ascertain the full names and service address(es) of the "John Doe" defendants allegedly involved in the incident described in the Complaint and provide such information to the Court and plaintiff **within thirty (30) days from the date that this Order is served upon him.** Once the information is provided to the Court by the Suffolk County Attorney, plaintiff's complaint shall be deemed amended to reflect the full names of the "John Doe" defendants; summonses shall be issued as to those defendants; and the USMS shall serve the summonses, the complaint, this order and the Notice of Hearing dated April 16, 2015 upon those defendants.

### III. Conclusion

2015 WL 1802601

For the reasons set forth above, plaintiffs application to proceed *in forma pauperis* is granted; plaintiff's Section 1983 claims against the Jail are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1); and plaintiffs Section 1983 claims against Sheriff DeMarco, and as construed to be against the County, are *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), **unless plaintiff files an amended complaint in accordance with this Order *on or before May 18, 2015*.** The amended complaint must be captioned as an "Amended Complaint" and bear the same docket number as this order.

The Clerk of the Court is directed to serve copies of the complaint and this order on the Suffolk County Attorney, who shall attempt to ascertain the full names and service address(es) of the "John Doe" defendants described in the complaint and provide that information to the Court and plaintiff **within thirty (30) days from the date that this Order is served upon him.** Once the information is provided to the Court by the Suffolk County Attorney, plaintiff's complaint shall be deemed amended to reflect the full names of the "John Doe" defendants; summonses shall be issued as to those defendants; and the USMS shall serve the summonses, the complaint, this Order and the Notice of Hearing dated April 16, 2015 upon those defendants.

Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court shall serve notice of entry of this order upon plaintiff in accordance with Rule 5(b) of the Federal Rules of Civil Procedure. In addition, the Clerk of the Court shall serve a copy of the Notice of Hearing dated April 16, 2015 upon plaintiff and record such service upon the docket.

**\*7** The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1802601

---

Footnotes

1    All material allegations in the complaint are assumed to be true for the purposes of this order, *see, e.g., Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 58 (2d Cir.1998) (in reviewing a *pro se* complaint for *sua sponte* dismissal, a court is required to accept the material allegations in the complaint as true), and do not constitute findings of fact by the Court.

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    5

2006 WL 3500016

2006 WL 3500016
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Michael MELNITZKY Plaintiff,

v.

Virginia LOPRETO; Elizabeth Besobrasow; John
Doe Auction Gallery; Justice Jacqueline Silberman;
Justice Judith Gische; Justice Walter Tolub,
Sergeant Geohgan 19th. Precinct; Major John
Doe at Supreme Court 60 Center St., Defendants.

No. 06 Civ. 13206(SHS).
|
Dec. 4, 2006.

*MEMORANDUM ORDER OF DISMISSAL*

STEIN, J.

**\*1** In this *pro se* action, Michael Melnitzky sues his former wife, his former wife's divorce attorney, three New York State judges who issued numerous orders during plaintiff's extended New York state divorce proceedings, an auction gallery designated to dispose of certain of plaintiff's property located in safe deposit boxes pursuant to an order of that court, the desk sergeant at plaintiff's local police precinct who refused to file criminal charges against the state judges, and a supervisory New York State court officer who allegedly inadequately supervised his subordinates. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985 for violation of plaintiff's rights to due process and equal protection of the laws. Plaintiff also alleges a variety of state claims, including conversion, theft, and duress. Plaintiff seeks an order enjoining defendants from converting his property as well as $78 million in damages and an accounting. The facts are as alleged in the complaint.

I. *The Claims Against the Private Parties Must Be Dismissed*

As an initial matter, plaintiff's claims against Elizabeth Besobrasow-his former wife-and Virginia Lopreto-her divorce attorney-must be dismissed because a claim for relief pursuant to Section 1983 must allege facts showing

that the defendant is a "person" who acted under color of any "statute, ordinance, regulation, custom or usage of any State." 42 U.S.C. § 1983. Only under highly limited circumstances will private parties be held liable. *See generally Rendell-Baker v. Kohn,* 457 U.S. 830, 838-42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 157-60, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172-75 (1972). Virginia Lopreto and Elizabeth Besobrasow are private parties who are not alleged to have any connection with any government body, and plaintiff's allegations that Lopreto and Besobrasow have acted under color of state law are merely conclusory. Accordingly, plaintiff has not presented a cognizable Section 1983 claim, and the claims against Lopreto and Besobrasow must be dismissed. [1]

For the same reason, plaintiff's claim against John Doe Auction Gallery must also be dismissed. The John Doe Auction Gallery was selected pursuant to the Order of Justice Silbermann dated June 7, 2006-which is annexed to the complaint as Exhibit B-to proceed with the auction sale of the contents of the safe deposit boxes at issue. "In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state." *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). *See also San Francisco Arts & Ath., Inc. v. United States Olympic Comm.,* 483 U.S. 522, 544, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987) ("The fact 'that a private entity performs a function which serves the public does not make its acts [governmental] action' ") (quoting *Rendell-Baker v. Kohn,* 457 U.S. 830, 842, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)). Because there is no allegation that John Doe Auction Gallery is an entity acting under color of state law within the meaning of Section 1983, plaintiff's claims against that defendant must also be dismissed.

II. *The Claims Against the State Court Judges Must Be Dismissed*

**\*2** Plaintiff's claims against the three state court judges-Justice Jacqueline Silbermann, Justice Judith Gische, and Justice Walter Tolub-must also be dismissed. Those claims all involve Melnitzky's disagreements with their judicial decisions, two of which he attaches to his complaint as exhibits. (*See* Complaint dated Nov. 12, 2006 ("Compl."),

Exhs. B and C.) Specifically, Melnitzky claims that his right to due process has been violated because approximately 250 invoices that he believes establish his ownership of certain disputed items were "ignored or denied submission into evidence" in the state proceeding. (Compl. at 34.) "It is ... well established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis,* 171 F.3d 757, 760 (2d Cir.1999) (citations omitted). *See also Mireles v. Waco,* 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam) ("A state court judge is not subject to a suit for damages for actions relating to the exercise of his or her judicial function, unless the judge acted in the clear absence of jurisdiction."); *Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 33, *reh'g denied,* 436 U.S. 951 (1978) ("[J]udicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.") In the instant case, there is no allegation that any of these judges acted in the absence of jurisdiction, and plaintiff's claims refer to acts performed by these judges in their judicial capacity. Accordingly, absolute immunity bars plaintiff's claims, and those claims must be dismissed. [2]

## III. *The Claims Against the Court Officer and Police Officer Must Be Dismissed*

Melnitzky also sues Major John Doe-who is alleged to be "in charge of the court officers at the Supreme Court of [New York] County"-for "fail[ing] to provide competent and adequate professional supervision" over court officers at that court. (Compl. at 31-32.) As a prerequisite to a damage award under 42 U.S.C. § 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation, *see Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (internal quotations omitted); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994); *Moffitt v. Town of Brookfield,* 950 F.2d 880, 886 (2d Cir.1991), or that "after being informed of the violation through a report or appeal, [the defendant] failed to remedy the wrong" or "exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring." *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F .3d 246, 254 (2d Cir.2001). Damages in a

Section 1983 action may not be based on a theory of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Melnitzky fails to allege that Major John Doe had any involvement with, knowledge of, or responsibility whatsoever for the alleged deprivation of plaintiff's civil rights when he was purportedly intimidated, harassed, and assaulted by court officers during New York state court proceedings. (Compl. at 32.) Because the claim against Major John Doe is based only on a theory of *respondeat superior* or vicarious liability-theories of liability which cannot provide the grounds for an action pursuant to 42 U.S.C. § 1983-this claim must be dismissed.

**\*3** New York Police Sergeant Geohgan was the desk sergeant at the 19th Precinct who refused plaintiff's request to file a criminal complaint against Justice Silberman alleging that she engaged in criminal conduct by ordering the auction of the contents of the disputed safe deposit boxes. (Compl. at 32-33). A law enforcement officer's refusal to accept or investigate a criminal complaint is not a constitutional violation because "criminal prosecutions are within the exclusive province of the public prosecutor." *Solomon v. H.P. Action Ctr.,* No. 99 Civ. 10352, 1999 U.S. Dist. LEXIS 17923 (Nov. 19, 1999) (*citing Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Sergeant Geohgan had no obligation to comply with Melnitzky's request, and, accordingly, he should be dismissed from this litigation.

## IV. *The Rooker-Feldman Doctrine Precludes Federal Review of the State Court Decisions*

Melnitzky essentially seeks to have this Court review and modify or invalidate the June 7, 2006 Order by Justice Silbermann of New York State Supreme Court that ruled on plaintiff's application for access to his safe deposit boxes, his application to modify his child support payments, and his former wife's application to modify the state divorce judgment. (*See* Compl., Exh. B.). This Court, however, lacks subject matter jurisdiction to review that decision. Pursuant to the Rooker-Feldman doctrine, "inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and ... federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." *Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002) (internal quotations omitted). Indeed, a federal district court has no authority to review final judgments of a state

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

court, except for general constitutional challenges and reviews pursuant to a petition for a writ of *habeas corpus.* See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 482-86, 103 S.Ct. 1303, 68 L.Ed.2d 362 (1983). Moreover, federal district courts are without subject matter jurisdiction "over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman,* 460 U.S. at 486. To the extent plaintiff is attempting to have this Court review and invalidate a prior judgment issued in a post-divorce proceeding in the Supreme Court of the State of New York, this Court lacks subject matter jurisdiction to consider such claims under the Rooker-Feldman doctrine.

V. *Conclusion*

Although this Court would normally permit amendment of a complaint in order to cure any defects before dismissing the case *sua sponte,* there is no need to do so here because plaintiff presents no arguably meritorious issue. See *Fitzgerald v. First East Seventh Tenants Corp.,* 221 F.3d 362, 363-64 (2d Cir.2000) (per curiam) (a district court may dismiss a frivolous complaint *sua sponte* ); *Pillay v. Immigration & Naturalization Serv.,* 45 F.3d 14, 17 (2d Cir.1995). Accordingly, the complaint must be dismissed.

**\*4** On November 14, 2006-the same day the complaint was filed-plaintiff moved by order to show cause for a temporary restraining order pending the determination

of a motion for a preliminary injunction enjoining the defendants from converting the contents of his safe deposit boxes, denying his right to inspect the contents of those boxes, and from further coercion and duress. In light of the dismissal of the underlying complaint, the motion for a temporary restraining order and preliminary injunction is dismissed as moot. However, even if those claims were not moot, the motion would be denied because plaintiff has failed to show that he is likely to suffer irreparable harm and either (1) a likelihood of success on the merits of his case or (2) sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, and a balance of hardships tipping decidedly in his favor. See *Time Warner Cable of New York City v. Bloomberg L.P .,* 118 F.3d 917, 923 (2d Cir.1997); *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990).

Accordingly, the complaint is hereby dismissed and plaintiff's motion for a temporary restraining order and preliminary injunction brought by Order to Show Cause is dismissed as moot. To the extent that any state law claims are asserted, this Court declines to accept supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(c). The Clerk of Court is directed to enter judgment dismissing the complaint.

SO ORDERED:

All Citations

Not Reported in F.Supp.2d, 2006 WL 3500016

Footnotes

1   Melnitzky also alleges pursuant to 42 U.S.C § 1985(3) that Lopreto and Besobrasow, along with Justice Silberman, conspired to interfere with his civil rights by setting up the auction. (Compl. at 36.) However, to state a conspiracy claim pursuant to Section 1985, the plaintiff must also allege "some racial, or perhaps otherwise class-based, invidious, discriminatory animus behind the conspirators' action." See *Gagliardi v. Village of Pawling,* 18 F.3d 188, 194 (2d Cir.1994) (*quoting Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). Because Melnitzky has failed to allege that the alleged conspiracy was based upon a class-based invidious discrimination, his claim pursuant to 42 U.S.C. § 1985(3) must also be dismissed.

2   To the extent Melnitzky also alleges a violation of due process, he would need to establish that he suffered a deprivation of a constitutionally protected liberty or property interest and that he was deprived of that interest without due process. See *Ford Motor Credit Co. v. New York City Police Dep't,* 394 F.Supp.2d 600, 609 (S.D.N.Y.2005). In short, Melnitzky's rights were not violated by the state court rulings regarding whether to admit or credit various evidence that he proffered in support of his claims. In addition, Melnitzky has had a full and fair opportunity to appeal those rulings at the state court level.

**Melnitzky v. Lopreto, Not Reported in F.Supp.2d (2006)**

2006 WL 3500016

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

---

2007 WL 4207282
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Daniel MILLER, Plaintiff,

v.

Sharon E. CARPINELLO, R.N. Ph.D.,
Commissioner, New York State Office
of Mental Health, et al., Defendants.

No. 06 CV 12940(LAP).
|
Nov. 20, 2007.

*MEMORANDUM AND ORDER*

LORETTA A. PRESKA, District Judge.

**\*1** Plaintiff *pro se,* a former inpatient at Mid-Hudson and Kirby Forensic Psychiatric Centers, brings this action for injunctive and monetary relief. Plaintiff seeks recovery under 42 U.S.C. §§ 1983, 1985 & 1986, 1997, and 14141; 18 U.S.C. §§ 1961 *et seq.;* and for common law medical malpractice, defamation, and assault and battery Defendants Sharon E. Carpinello (the "Commissioner"), Richard Miraglia, Howard Holanchock, William McKenna, Vincent Spizzo, Salil Kathpalia, Muhammed Malik, Warren Skov, Intezar Shah, Brent Firester, Cheryl Fidanque, Steve Willis, Ronald Massotti, Steven Jackson, Michael Beattie, Ernest Fortune, Ronald Cadet, John Monteforte, Thomas Catizone, Eileen Consilvio, Josephine Jermott, James Hicks, Cristina Musat, "John" Chuchwocha, "Jane" Meyers, Paul Sanon, Daniel Sellig, S. Machanical, Carolyn Todd, M. Epps, and the New York State Commission on Quality of Care and Advocacy for Persons with Disabilities ("CQC") (collectively, the "State Defendants") move to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.[1]

For the reasons set out below, all of plaintiff's federal claims are dismissed with prejudice, and his state claims are dismissed without prejudice.

**FACTS**[2]

Plaintiff was arrested in May 2003 for "inter alia" criminal possession of stolen property. Complaint, ¶ 44. He was found incompetent to stand trial under Article 730 of the New York Criminal Procedure Law and was admitted to Mid-Hudson. *Id.,* ¶¶ 44, 49, 50, 52. Clinicians at Mid-Hudson found plaintiff fit to proceed to trial, but plaintiff subsequently was found incompetent and, on June 2, 2004, was admitted to Mid-Hudson for a second time. *Id.,* ¶¶ 54-57. After his second admission to Mid-Hudson, about 3,500 pages of legal papers from plaintiff's criminal papers were found to be missing. *Id.,* ¶¶ 61-65. On June 4, 2004, a treatment plan was prepared for plaintiff. *Id.,* ¶ 67.

On the evening of June 11, 2004, SHTAs Parlinski and Neznanyj took plaintiff to a quiet room. Plaintiff alleges that Neznanyj knocked some papers out of his hand and accused him of bringing in contraband, that Parlinski told Neznanyj to leave and then threatened plaintiff. *Id,* ¶¶ 68-73. Later, Plaintiff alleges, Neznanyj took plaintiff back to the quiet room and struck plaintiff with his fist and hand. *Id.,* ¶ 74. Neznanyj was arrested, tried, and convicted of two counts of assault on plaintiff. *Id.,* ¶ 78.

Clinicians at Mid-Hudson found plaintiff fit to proceed on his criminal charges, but the criminal court again determined that plaintiff was unfit to proceed. In October 2004, plaintiff was admitted to Kirby, where he allegedly was verbally harassed. *Id.,* 90, 93, 95, 102. While at Kirby, several psychiatrists determined that he was fit to proceed to trial on his criminal charges. *Id.,* ¶ 111 & Exh. J. One psychiatrist concluded that plaintiff did not need medication, and two other psychiatrists allegedly disagreed with that determination but did not challenge it. *Id.,* ¶¶ 107-09. In November 2004, Dr. Hicks, Kirby's Clinical Director, filed a competency report with the criminal court stating that plaintiff was fit to proceed to trial and that plaintiff was malingering. *Id.,* ¶ 111 & Exh. J.

**Analysis**

**I. PLAINTIFF'S CLAIMS AGAINST CQC AND CLAIMS FOR MONETARY DAMAGES AGAINST THE STATE DEFENDANTS IN THEIR OFFICIAL CAPACITIES ARE DISMISSED**

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**\*2** The Eleventh Amendment bars suits in federal court by citizens against a state and its agencies, absent waiver of immunity and consent to suit by the state or abrogation of constitutional immunity by Congress. *See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 97-100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).* The State of New York has neither consented to suit in federal court nor waived its Eleventh Amendment immunity. *See Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir.1977).* In enacting Section 1983, Congress did not abrogate the states' Eleventh Amendment immunity. *See Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir.1990).*

CQC is an agency within the executive department of the State of New York. *See N.Y. Mental Hygiene Law § 45.03(a)* (McKinney 2006); *In the Matter of Reckess v. New York State Commission on Quality of Care for the Mentally Disabled, 7 N.Y.3d 555, 557, 825 N.Y.S.2d 178, 179, 858 N.E.2d 772 (2006).* As such, CQC is constitutionally immune from suit in federal court, and plaintiff's claims against CQC are dismissed.

The Eleventh Amendment also bars claims against state employees sued in their official capacities. *See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 § 1991; Pennhurst, 465 U.S. at 102.*[3] All of the individual State Defendants are employees of OMH, and plaintiff sues them in their official and individual capacities. Complaint, I, at 3. As part of the relief sought, plaintiff demands compensatory and punitive damages. Id-/ VI, C, at 35-36. Based on Eleventh Amendment immunity, all claims for compensatory and punitive damages against the individual State Defendants in their official capacities are dismissed.

## II. PLAINTIFF'S CLAIMS FOR PROSPECTIVE INJUNCTIVE RELIEF ARE DISMISSED

A plaintiff seeking prospective injunctive relief must show that he is realistically threatened by a repetition of the experience for which he seeks the injunction. *See City of Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).* Plaintiff seeks to enjoin the State Defendants from using excessive force against patients in OMH facilities, enforcing the collective bargaining agreement between NYSCOPBA

and OMH, and transferring any assets or property during the pendency of this action. Complaint, VI, B, at 35. Because Plaintiff has not shown that he is realistically-threatened with being committed to a psychiatric center and with assault, theft of property, or other serious misconduct while committed, he lacks standing to seek prospective injunctive relief. Accordingly, all such claims are dismissed. *See id. at 105-06.*

## III. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 ARE DISMISSED

### A. Plaintiff Identifies No Right That the State Defendants Violated

Section 1983 authorizes an aggrieved party to bring a claim but does not create any substantive rights. *Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114, reh. denied 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994); Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).* As a result, to assert a claim under Section 1983, a plaintiff must allege that the defendants violated a right protected by the United States Constitution or a federal statute other than Section 1983. *See Albright, 510 U.S. at 271* (citations omitted).

**\*3** Plaintiff alleges only that "[a]s a result of the acts of the defendants, and each of them, plaintiff has suffered gross violations of his civil rights under 42 U.S.C. § 1983, all to his damage." Complaint, ¶ 112. Plaintiff thus merely alleges that the State Defendants violated Section 1983. Because plaintiff does not identify the Constitutional or statutory right that the State Defendants allegedly violated, or state which acts by which State Defendants allegedly violated a Constitutional or statutory right, all claims under Section 1983 are dismissed.

### B. The Section 1983 Claims Are Also Dismissed Because Plaintiff Fails To Show Personal Involvement In Any Violation

A defendant's personal involvement in an alleged deprivation of a federal right is a prerequisite to a finding of liability against him under Section 1983. *See Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir.2003), cert. denied, 543 U.S. 1093, 125 S.Ct. 971, 160 L.Ed.2d 905 (2005).* Personal involvement means "direct participation or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which

unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996) (citation omitted). A supervisor's receipt of notice asserting that conduct is improper or unlawful is insufficient to allege his or her personal involvement. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Rivera v. Goord,* 119 F.Supp.2d 327, 344 (S.D.N.Y.2000). In addition, verbal harassment is insufficient to state a claim of constitutional deprivation under Section 1983. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986)); *Sloane v. Mazzuca,* 2006 U.S. Dist. LEXIS 79817, *39, 2006 WL 3096031 (S.D.N.Y., October 31, 2006).

Plaintiff fails to show participation in any alleged violation of any federal right because he does not allege that any of the State Defendants participated directly in any of the conduct complained of, created any policy or practice under which that conduct occurred, failed to remedy a wrong, or was grossly negligent in managing subordinates.

Plaintiff's sole allegations concerning the Commissioner, the head of OMH, and Mr. Miraglia, the Director of OMH's Bureau of Forensic Services, are that they received a letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed be rescinded (Complaint, ¶ 90), and that plaintiff's family contacted them concerning plaintiff's placement at a psychiatric facility. *Id.,* ¶ 94.

Plaintiff alleges that William McKenna, Mid-Hudson's Director of Forensic Services, received a letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed be rescinded. *Id.,* ¶ 90.

Plaintiff alleges that Howard Holanchock, Mid-Hudson's Executive Director, and Vincent Spizzo, Mid-Hudson's Forensic Coordinator, received a copy of letter demanding that a decision by doctors at Mid-Hudson finding plaintiff fit to proceed be rescinded. *Id.* Plaintiff also alleges that Mr. Holanchock received a letter stating that plaintiff had been assaulted by an SHTA (*id.,* ¶ 77), and that Mr. Spizzo received a copy of a letter asserting that plaintiff's legal papers were missing (*id.,* ¶ 66).

**\*4** Plaintiff alleges that defendants Muhammed Malik, Mid-Hudson's Chief Medical Examiner, and Warren Skov, a unit chief at Mid-Hudson, received a copy of a

letter asserting that plaintiff's legal papers were missing. *Id.,* ¶ 66.

Plaintiff's only allegations against defendant Steve Willis, a registered nurse at Mid-Hudson, are that he was in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk (*id.,* ¶ 61), and that he prepared a treatment plan (*id.,* ¶ 67).

Plaintiff alleges that defendant Brent Firester, a social worker, and Cheryl Fidanque, a psychologist, were in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk (*id.,* ¶ 61), that they received a copy of a letter concerning missing legal papers (*id.,* ¶ 66), and that they prepared a treatment plan (*id.,* ¶ 67).

Plaintiff alleges that defendant Dr. Kalil Kathpalia, Mid-Hudson's Clinical Director, and Dr. Intezar Shah, a psychiatrist, received a copy of a letter concerning alleged missing legal papers (*id.,* ¶ 66), and converted plaintiff's treatment plan by finding that he was fit to proceed to trial (*id.,* ¶¶ 89-90). Similarly, plaintiff alleges that defendant Dr. Intezar H. Shah, a psychiatrist, was in a treatment team room when defendant Neznanyj told plaintiff to leave his property at the SHTA desk. *Id* ¶ 61. A physician's receipt of a letter about missing property and his clinical determination that a psychiatric patient who has been charged with a crime is fit to proceed to trial do not establish personal involvement in the deprivation of any federal right.

Plaintiff's only allegation against SHTA Massotti is that he prepared a comprehensive treatment plan. *Id.,* ¶ 67.

Plaintiff's only specific factual allegations against SHTAs Jackson, Fortune, Cadet, Monteforte, Catizone, and Beattie are that Jackson prepared a treatment plan and that Jackson, Fortune, Cadet, and Beattie were at the SHTA desk when defendant Neznanyj told plaintiff to leave his property near the desk. [4] *See id.,* ¶¶ 61, 67.

Plaintiff alleges that he was verbally harassed at Kirby on several occasions and that he sent a copy of a complaint about this harassment to defendant Consilvio, Kirby's Executive Director. *Id.,* ¶¶ 102, 104.

Plaintiff's only allegation concerning defendant Jermott, Kirby's Risk Manager, is that plaintiff filed a complaint

with her concerning verbal harassment by others. *Id.*, ¶¶ 102-03.

Plaintiff alleges that Drs. Sellig and Musat verbally harassed him and that Drs. Musat, Chuchwocha, and Hicks accused him of malingering and told him they would interfere with his criminal case. *Id.*, ¶¶ 98, 102, 107. In addition, plaintiff alleges that Musat removed him from medication. *Id.*, ¶ 107. A psychiatrist's decisions that a patient facing criminal charges is competent to stand trial and does not need medication do not constitute a violation of a federal right.

 **\*5** Plaintiff alleges that Dr. Sanon, a psychiatrist, and Dr. Meyers, also a psychiatrist, told him that they did not agree with the decision to remove him from medication but that they would not interfere with that decision. *Id.*, ¶ ¶ 108-09. Plaintiff provides no support for the proposition that psychiatrists violate a patient's federal rights by telling him that, though they disagree with another psychiatrist, they will adhere to his or her treatment decision, and the Court is aware of no such authority.

Plaintiff alleges that defendant S. Machanical, a treatment team leader, Carolyn Todd, a social worker, and M. Epps, an SHTA, verbally harassed him. *Id.*, ¶ 102.

None of these allegations shows that any State Defendant was personally involved in wrongdoing, and, accordingly, plaintiff's Section 1983 claims are dismissed.

## IV. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1997 and 14141 ARE DISMISSED

Plaintiff's claims under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997, *et seq.*, and the Violent Crime Control and Law Enforcement Act, 42 U.S.C. §§ 14141, *et seq.*, are dismissed because those statutes do not provide a private right of action. *See Kee v. Hasty,* 2004 U.S. Dist. LEXIS 6385, \*82, 2004 WL 807071 (S.D.N.Y., April 14, 2004) (Sections 1997 and 1997a do not provide a private right of action); *Greer v. Hillsborough Co. Sheriff's Dept.,* 2005 U.S. Dist. LEXIS 40917, \*8, 2005 WL 2416031 (M.D.Fla., September 30, 2005) § Section 14141 does not provide a private right of action); *Inkel v. Bush,* 2004 U.S. Dist. LEXIS 21138, \*9, 2004 WL 2381747 (D.Conn., October 19, 2004) (no private right of action under Section 14141).

## V. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1985 and 1986 ARE DISMISSED

Plaintiff alleges, pursuant to 42 U.S.C. §§ 1985 and 1986, that defendants Carpinello, Miraglia, Holanchock, McKenna, Spizzo, Kathpalia, Malik, Shah, Skoc, Fidanque, Firester, Jackson, Massotti, Consilvio, Jermott, Hicks, Musat, Chuchwocha, Machanical, Sellig, Meyers, Sanon, Todd, Epps, and CQC conspired to violate his rights under 42 U.S.C. §§ 1983, 1997, and 14141.

Section 1985(2) creates a cause of action against persons who conspire to obstruct justice and intimidate litigants, witnesses or jurors. [5] *See* 42 U.S.C. § 1985(2). Similarly, Section 1985(3) creates a cause of action against persons who conspire for the purpose of depriving any person of equal protection, or equal privileges and immunities, under the laws. *See id.,* § 1985(3). To establish a claim under either Section 1985(2) or (3), a plaintiff must allege facts showing that "class-based discriminatory animus" motivated the alleged conspiracy. *See Williams v. The City of Mount Vernon,* 428 F.Supp.2d 146, 160 (S.D.N.Y.2006); *Jones v. National Communication and Surveillance Networks,* 409 F.Supp.2d 456, 472 (S.D.N.Y.2006) (citations omitted). Plaintiff fails to allege that he is a member of any particular class or that any deprivation of his rights occurred on account of class-based discrimination.

 **\*6** Section 1986 creates a cause of action against any person who, knowing of wrongs done in violation of Section 1985 and having power to prevent those wrongs, fails to use reasonable diligence to prevent them. *See* U.S.C. § 1986. Plaintiff's claims under Section 1986 are dismissed because any claim under Section 1986 " 'must be predicated upon a valid [Section] 1985 claim.' " *Jones,* 409 F.Supp.2d at 473 (quoting *Brown v. City of Oneonta,* 221 F.3d 329, 342 (2d Cir.2000) and *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993)). As demonstrated above, plaintiff has no Section 1985 claim and, thus, no Section 1986 claim.

## VI. PLAINTIFF'S RICO CLAIMS ARE DISMISSED

### A. Plaintiff Lacks Standing to Bring a RICO Claim
A plaintiff has standing to bring a RICO claim only if he has been injured in his business or property by the conduct constituting the RICO violation and only when his actual loss is clear and definite. *See Penney v. Deutsche Bank AG,*

443 F.3d 253, 266 (2d Cir.2006) (citations omitted). *See also Dornberger v. Metropolitan Life Ins. Co.,* 961 F.Supp. 506, 521 (S.D.N.Y.1997) (RICO plaintiff must allege some actual, definite pecuniary loss). A plaintiff cannot bring a RICO claim based on physical or emotional injuries. *See Williams v. Dow Chem. Co.,* 255 F.Supp.2d 219, 225 (S.D.N.Y.2003) (citations omitted).

Plaintiff lacks standing to bring a RICO claim because he alleges no injury to his business or property. Instead, plaintiff's principal claim is that he suffered physical and emotional injuries (*see* Complaint, ¶¶ 73, 88-89, 117-18), which cannot support a RICO claim. *See Williams v. Dow Chem. Co.,* 255 F.Supp.2d at 225. Although plaintiff does allege that certain property-legal papers from his criminal cases-was stolen (Complaint, ¶¶ 64, 87), plaintiff does not identify any pecuniary or other clear and definite loss that he incurred because of the alleged theft of legal papers. Consequently, plaintiff does not allege an injury to his business or property and lacks standing to bring a RICO claim.

**B. Plaintiff Fails to State a Substantive RICO Claim**

To state a RICO claim, a plaintiff must allege a violation 18 U.S.C. § 1962, the substantive RICO statute, and allege that violation caused his injury. *See Kirk v. Heppt,* 423 F.Supp.2d 147, 150 (S.D.N.Y.2006). To plead a claim under Section 1962, plaintiff must allege:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce.

*Id.* (citations and internal quotation marks omitted). To establish a pattern of racketeering activity, the plaintiff must allege that the defendant engaged in two or more of the "predicate acts" listed in Section 1961(1). *See Hoatson v. New York Archdiocese,* 2007 U.S. Dist. LEXIS 9406, ----8-ll, 2007 WL 431098 (S.D.N.Y., February 8, 2007); *Kirk,* 423 F.Supp.2d at 150.

**\*7** Plaintiff fails to state a claim under Section 1962 because the acts he cites as RICO violations do not

constitute predicate acts or acts proscribed by Section 1961(1). Plaintiff cites five acts as predicate acts of racketeering activity. Complaint, ¶¶ 84-88. The alleged predicate acts are: (1) conspiring to assault a particular patient in violation of 18 U.S.C. § 1959(a)(6); (2) assaulting that same patient in violation of 18 U.S.C. § 1959(a) (6); (3) stealing plaintiff's property and harassing plaintiff in violation of 18 U.S.C. §§ 1512 and 1513; (4) conspiring to assault plaintiff in violation of 18 U.S.C. § 1959(a)(6) and 18 U.S.C. §§ 1512 and 1513; and (5) assaulting plaintiff in violation of 18 U.S.C. § 1959(a)(3) and 18 U.S.C. §§ 1512 and 1513.

18 U.S.C. § 1959 is not listed in 18 U.S.C.1961(1), and thus a violation of it does not constitute a RICO predicate act. *See Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 586 (S.D.N.Y.1995) (the offenses that may serve as predicate acts are exclusively listed in 18 U.S.C. § 1961(1)). As a result, plaintiff may not rely on alleged violations of Section 1959 to establish a RICO claim, and the first two acts that he cites do not constitute predicate acts.

Although 18 U.S.C. §§ 1512 and 1513 are listed in 18 U.S.C. § 1961(1), and a violation of them may constitute predicate acts, plaintiff fails to allege facts sufficient to state a violation of either Section 1512 or 1513. In essence, Section 1512 proscribes using physical force, threats, or persuasion to tamper with a witness in an "official proceeding" or to hinder, delay or prevent the communication to a law enforcement official or federal judge of information relating to the possible commission of a federal offense. *See 18 U.S.C. § 1512 (West 2000 & Supp.2006).* In essence, Section 1513 proscribes knowingly-causing bodily injury to a person or damaging a person's property, or threatening to do so, with intent to retaliate against any person for being a witness at an official proceeding or providing information relating to the commission of a federal offense. *See id., § 1513 (West 2000 & Supp.2006).*

Plaintiff does not allege that any official proceeding was pending at the time that the alleged physical force, threats, persuasion, or damage to property occurred.[6] In addition, plaintiff does not allege that any State Defendant hindered, delayed, or prevented the communication of information to any law enforcement official or federal judge relating to any federal offense. Plaintiff also does not allege that any State Defendant

knowingly caused him bodily injury or damaged his property, or threatened to do so, to retaliate against him for being a witness at an official proceeding or for providing information relating to the commission of a federal offense. Consequently, plaintiff may not rely on alleged violations of Sections 1512 and 1513 as predicate acts to support a RICO claim.

**\*8** Plaintiff also fails to state a substantive RICO claim because he does not allege that the enterprise is a continuing unit that exists separate and apart from its alleged illegal activities. *See Hoatson,* 2007 U.S. Dist. LEXIS 9406, ----9-10, 2007 WL 431098. Plaintiff alleges that the enterprise consists of defendants NYSCOPBA, Parlinski, Neznanyj, Fortune, Cadet, Beattie, Catizone, and Jackson, who are members of NYSCOPBA, and that the enterprise engages in "acts and threats involving assault, tampering with witnesses, victims and informants, and retaliating against witnesses, victims and informants, which acts and threats are chargeable and punishable as felonies ...." Complaint, ¶¶ 79, 82-83. Plaintiff thus simply alleges that a group of union members committed some illegal acts. Because plaintiff fails to allege that this supposed unit has any independent or continuing existence apart from the illegal acts, he fails to allege the existence of an enterprise.

Plaintiff fails to allege a substantive RICO claim for the additional reason that he fails to show that the enterprise is engaged in, or that its activities affect, interstate commerce. According to plaintiff, the enterprise receives and distributes firearms and ammunition that previously had been shipped in interstate commerce and uses computers, telephones, communication devices, and the United States mail. *Id.,* ¶ 80. Individuals working at a psychiatric facility cannot be said to be engaged in interstate commerce, or in activities that affect interstate commerce, simply because they use equipment previously shipped in interstate commerce or because they use communication devices or services.

## VII. PLAINTIFF'S COMMON-LAW CLAIMS ARE DISMISSED WITHOUT PREJUDICE

A district court should decline to exercise supplemental jurisdiction over state law claims when it has dismissed all of the claims over which it has original jurisdiction. *See Sadallah v. City of Utica,* 383 F.3d 34, 40 (2d Cir.2004) (citations omitted). Plaintiff asserts the state law claims of medical malpractice, defamation, and assault and battery. Complaint, ¶¶ 117-18. As demonstrated above, all of plaintiff's federal claims, which, if viable, would provide a basis for federal jurisdiction, are dismissed. Accordingly, the Court declines to exercise jurisdiction over the state law claims.

### *CONCLUSION*

For all the foregoing reasons, the State Defendants' motion to dismiss [dkt. no. 42] is granted. Dismissal is with prejudice as to plaintiff's federal law claims and without prejudice as to his state law claims.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 4207282

---

Footnotes

1    Plaintiff also sues the New York State Correction Officers and Police Benevolent Association ("NYSCOPBA") and Cheryl Parlinski and Taras Neznanyj, two security hospital treatment assistants ("SHTAs") at Mid-Hudson. It does not appear that Ms. Neznanyj has been served.

2    The facts set forth are taken from the allegations of the Complaint and its attachments.

3    A narrow exception to this bar is that when a plaintiff alleging a violation of federal law sues a state employee, the court may award prospective injunctive relief against the employee's future official conduct. *See Pennhurst,* 465 U.S. at 102-03. *See generally Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

4    Plaintiff also alleges, conclusorily, that these defendants conspired to assault him, also an insufficient allegation. *E.g., Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006).

5    Plaintiff does not specify the subdivision of Section 1985 that he alleges was violated. Section 1985(1) concerns claims against persons who conspire to injure anyone entitled to hold, or holding, an office of the United States and is thus inapplicable. Accordingly, only subdivisions 1985(2) and (3) are even conceivably applicable here.

2007 WL 4207282

6    In particular, plaintiff fails to identify any federal proceeding pending at the time of the alleged witness tampering. Proceedings in state courts or before state administrative bodies are not official proceedings, and witness tampering with respect to them does not violate Section 1512 or constitute a predicate act under RICO. *See Park South Assoc. v. Fischbein,* 626 F.Supp. 1108, 1113 (S.D.N.Y.), *aff'd,* 800 F.2d 1128 (2d Cir.1986).

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 502948
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
N.D. New York.

Aimee O'NEIL and M.O., Plaintiffs,
v.
Catherine BEBEE; and Oswego
City School District, Defendants.

No. 5:09-CV-1133 (GTS/DEP).
|
Feb. 10, 2010.

**Attorneys and Law Firms**

Amy O'Neil, Minetto, NY, pro se.

### DECISION and ORDER

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court in this a *pro se* civil rights action filed by Aimee O'Neil ("Plaintiff") is her motion to proceed *in forma pauperis,* her motion for a stay, and her two separate letter requests. (Dkt. Nos. 1, 2, 3, 4, and 5.) For the reasons discussed below, Plaintiff's motion to proceed *in forma pauperis* is granted; her Complaint is *sua sponte* dismissed with prejudice due to its frivolous, pursuant to 28 U.S.C. § 1915(e) (2)(B); her motion for a stay and two letter requests are denied as moot; and she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why the Court should not issue an Order prohibiting her from filing any future *pro se* actions in this Court without prior leave of the Court.

### I. PLAINTIFF'S MOTION TO PROCEED *IN FORMA PAUPERIS*

After carefully reviewing Plaintiff's papers in support of her motion to proceed in forma pauperis, the Court finds that she qualifies for *in forma pauperis* status. (*See* Dkt. No. 2.) As a result, the Court grants Plaintiff's motion to proceed *in forma pauperis.* [1]

### II. REVIEW OF PLAINTIFF'S COMPLAINT

#### A. Court's Duty to *Sua Sponte* Review Complaint

Pursuant to 28 U.S.C. § 1915(e), when a plaintiff seeks to proceed *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B). [2] Thus, there is a responsibility on the Court to determine that a complaint may be properly maintained in the District before it may permit a plaintiff to proceed with an action *in forma pauperis. Id.*

In determining whether an action is frivolous, the Court must look to see whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the Court has a duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the Court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action *in forma pauperis* in order to prevent abuses of the process of the Court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as discourage the waste of judicial resources.

#### C. Legal Standard Governing Dismissals for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a) (2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County,* 549 F.Supp.2d 204, 211, nn. 15-16 (N.D.N.Y.2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

**\*2** With regard to the first ground, Fed.R.Civ.P. 8(a) (2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson, 549 F.Supp.2d at 212, n. 17* [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id.* at 212, n. 18 [citations omitted].[3]

The Supreme Court has long characterized this pleading requirement under *Fed.R.Civ.P. 8(a)(2)* as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id.* at 212, n. 20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id.* at 212, n. 21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id.* at 213, n. 22 [citations omitted]; *see also Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under *15 U.S.C. § 1. Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id .* at 1965 [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [citations omitted].[4]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[5] It should be emphasized that *Fed.R.Civ.P. 8*'s plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific* facts are not necessary" to successfully state a claim under *Fed.R.Civ.P. 8(a)(2). Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[6]

**\*3** Finally, in reviewing a complaint for dismissal under *Fed.R.Civ.P. 12(b)(6),* the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se.* However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[7] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards in *Fed.R.Civ.P. 8, 10* and 12.[8] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in *Fed.R.Civ.P. 8, 10,* and *12* are procedural rules that even *pro se* civil rights plaintiff must follow.[9] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].

### C. Summary of Plaintiff's Complaint

On October 8, 2009, Plaintiff filed her Complaint in this action. (Dkt. No. 1.) The text in the body of the Complaint is single spaced, and its pages are unnumbered. (*Id.*) In only four of the twelve pages (specifically, pages two through five) of the Complaint does Plaintiff make

any attempt at numbering paragraphs. (*Id.* at 2-5.) Even when she does so, she does not number the paragraphs consecutively. (*Id.*) Most of the paragraphs are not limited as far as practicable to a single set of circumstances, but extend to numerous sets of circumstances. (*Id.* at 4-10.) In the caption, Plaintiff names herself, as well as her daughter, M.O., as Plaintiffs in the action, and Catherine Bebee and the Oswego City Schools as the Defendants in the action. (*Id.* at 1.) However, in the body of the Complaint, Plaintiff identifies a host of other Defendants, at one point also seemingly naming M.O. as a Defendant. (*Id.* at 3-12.)

With regard to her claims, construed with the utmost of special leniency, Plaintiff has commenced this action pursuant to 42 U.S.C. § 1983, asserting several civil rights violations. (Dkt. No. 1, Attach. 1 [Civil Cover Sheet].) As summarized by Plaintiff, for example, her claims encompass "tax evasion, fraud, perjury, libel, defamation, intentional infliction of emotional distress, malpractice, negligence, invasion of privacy, violation of unlawful search and seizure, deprivation of due process, and violation of equal rights under the law ... based upon section U.S. 42 section 1983 and 1876 .... "[10] (Dkt. No. 1 at 10.)

In support of these claims, Plaintiff asserts factual allegations regarding a broad range of events occurring from the summer of 2000 to the spring of 2001, including (but not limited to) conspiracy, bribery, kidnaping, and perjury by a social worker. (*See generally* Dkt. No. 1.) More specifically, Plaintiff alleges that, between approximately August of 2000 and April of 2001, Defendant Bebee, a social worker employed by the Oswego City School District, (1) conspired with six other individuals (including members of "the Baker family," who presumably reside in or near Oswego, New York) to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, where she was receiving orthopedic medical treatment from Dr. Sheila Love, and transport her to New York, and then (2) perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (*Id.*)

**\*4** Plaintiff further alleges that, in carrying out this conspiracy, Defendant Bebee committed the following acts: (1) she acted at the behest, and/or for the benefit, of Plaintiff's ex-husband (apparently named William

Wallace), who purports to be the father of Plaintiff's daughter but who has not proved his paternity; (2) she accepted a bribe of one hundred thousand dollars ($100,000) from someone in, or associated with, the Baker family, which she intended to use for the purpose of a transgender operation; (3) she invaded Plaintiff's privacy by relying on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, and by causing Plaintiff's home to be searched illegally; (4) she not only kidnaped Plaintiff's daughter but her two other children, whom she smuggled to a third state before bringing them to New York; (5) she falsely accused Plaintiff of child abuse; (6) she helped to somehow restrict Plaintiff's parental rights in court through use of fraud, slander and due process violations; and (7) she caused Plaintiff's daughter to be placed with the Baker family in New York, against the recommendation of her daughter's pediatrician. (*Id.*)

As relief, Plaintiff demands $1,000,000.00 in compensatory and punitive damages. (*Id.* at 12.)

### D. Analysis of Complaint

As an initial matter, the Court notes that the form of Plaintiff's Complaint violates several federal and local rules. *See, e.g.,* Fed.R.Civ.P. 10(a) (requiring caption to name all defendants); Fed.R.Civ.P. 10(b) (requiring that all paragraphs be numbered sequentially, and that each paragraph be limited as far as practicable to a single set of circumstances); N.D.N.Y. L.R. 10.1(a) (requiring text in body of complaint to be double-spaced, and pages to be consecutively numbered). However, in light of the special solicitude that should ordinarily be afforded *pro se* litigants (and because these rule violations pale in comparison to Plaintiff's other pleading deficiencies, described below), the Court will overlook these rule violations. The Court does this with some hesitancy, given Plaintiff's familiarity with the pleading requirements established the local and federal rules, due to her extraordinary litigiousness (*see, infra,* Part IV of this Decision and Order).

The Court notes also that Plaintiff has filed this action not only on her own behalf, but apparently on behalf of her child, M.O., who is a minor. (*See* Dkt. No. 1, at 3; Dkt. No. 2, at 2 [listing M.O. as a dependent].) As Plaintiff previously has been repeatedly advised, M.O. may not proceed on her own behalf. *See* Fed.R.Civ.P. 17(c). [11] Nor

2010 WL 502948

is a *"pro se"* non-attorney permitted to represent another person in federal court litigation. *Berrios v. New York City Housing Auth.,* 564 F.3d 130, 132-133 (2d Cir.2009). Accordingly, M.O. is dismissed as a Plaintiff in this action.

With regard to Plaintiff's claims, many of the the factual allegations throughout the Complaint are conclusory, unsubstantiated and rambling; and there are few detailed allegations clearly identifying individual(s), dates, and specific acts of the asserted misconduct forming the basis for alleged constitutional violations. Succinctly stated, the manner in which Plaintiff has set forth her claims is not short and plain, but so verbose, disjointed, vague and confusing that it is nearly impossible for the Court to assess them, and surely impossible for the Defendants to respond to them and prepare for trial. [12] However, in an extension of special solicitude to Plaintiff, and an effort to provide a more detailed explanation as to why Plaintiff's Complaint is frivolous, the Court will attempt to address the bulk of Plaintiff's claims in more detail.

### 1. Section 1983 Pleading Requirements

**\*5** Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person or entity acting under color of state law and (2) such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Torres v. Mazzuca,* 246 F.Supp.2d 334, 342 (S.D.N.Y.2003) (quoting *West v. Atkins,* 487 U.S. 42, 48 [1988] ).

### a. Person or Entity

State action is an essential element of any § 1983 claim. *See Gentile v. Republic Tobacco Co.,* 95-CV-1500, 1995 WL 743719, at \*2 (N.D.N.Y. Dec. 6, 1995) (Pooler, J.) (citing *Velaire v. City of Schenectady,* 862 F.Supp. 774, 776 (N.D.N.Y.1994) (McAvoy, C.J.) [citation omitted] ). It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint; and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus. *See, e.g., Jenkins v. Murphy,* 08-CV-0921, 2008 WL 4596197, at \*2 (N.D.N.Y. Oct. 14, 2008) (McCurn, J.) [collecting cases]; *Humphrey v. Rescue Mission,* 05-CV-0795, 2005 WL 1661826, at \*2 (N.D.N.Y. July 14, 2005) (Mordue, J.) [collecting cases]. [13]

Here, the action is brought against Catherine Bebee and her employer, the Oswego City Schools. Examples of Plaintiff's allegations against Bebee are as follows:

D. Invasion of privacy-Catherine Bebee violated, denied, and /or abridged, my privacy under the colors of state laws by misusing and abusing her job position and leaving her jurisdiction. *Freeman v. Rideout,* 808 F 2d 949 (2d Cir.1986).

3. Negligence-because Catherine Bebee failed to verify the validity of a court order, paternity order, and her own job duties before leaving the state of New York, Catherine Bebee is also negligent because the injury to [M.O.] was unfounded and legally sealed, in which Catherine Bebee, a social worker, has total access to a founded or unfounded report, and even if it was founded, it does not entitle Catherine Bebee to travel to the State of Florida as the state of Florida, in their own jurisdiction, has their own social workers, to handle their own investigations based upon findings of Dr. Sheila Love, as Sheila Love was assigned to treat patient [M.O.] Catherine Bebee is not assigned, she has no jurisdiction over [M.O.] and there needs to be a clear, definitive ruling stating Catherine Bebee has no jurisdictional authority over said child, and will never have any. It is very important to establish this factor, because the pattern of retaliation is only continuing so said child cannot attend public school....

(Dkt. No. 1, at 3-4.)

> Catherine Bebee, while under oath, under the penalties of perjury, in front of Judge James McCarthy, stated she was paid a large sum of money to travel to Florida and take said children after a careful conspiracy and several meetings to carefully plan out this act. Catherine Bebee stated she was paid an excessive $100,000.00 and was going to use this money for the purpose a transgender operation, in which she felt entitled to undertake by causing trauma and harm to my home and my family.

**\*6**  (Dkt. No. 1, at 5.)

For the sake of brevity, the Court will assume that Plaintiff has alleged facts plausibly suggesting that Defendant Bebee was acting in her capacity as a state actor when she committed the acts in question. Again, the Court does this with some hesitancy, given the fact that it is not clear in what position with the school district Defendant Bebee was acting which would have conferred upon her duties regarding Plaintiff's daughter during the time in question (or even that she was employed by a municipal entity rather than some private non-profit organization). [14]

More problematic is Plaintiff's claim against the Oswego City School District. As an initial matter, to the extent that Plaintiff seeks to impose liability on the City of Oswego or the Oswego City School District, there are no factual allegations plausibly suggesting liability by either entity. Moreover, "[a]lthough municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior." Birdsall v. City of Hartford,* 249 F.Supp.2d 163, 173 (D.Conn.2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036 [1978] ).

However, despite the fact that *respondeat superior* liability does not lie, a municipal entity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels ." *Monell,* 436 U.S. at 690-91, 98 S.Ct. at 2036. Such municipal liability can be alleged in a case as this in various ways including, *inter alia,* through allegation of an officially adopted rule or widespread, informal custom plausibly suggesting "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York,* 337 F.Supp.2d 539, 556 (S.D.N.Y.2004) (citing and quoting *Anthony v. City of New York,* 339 F.3d 129, 140 [2d Cir.2003] ). A plaintiff may also allege such municipal liability by alleging facts plausibly suggesting that municipal officers have acquiesced in or condoned a known policy, custom or practice. *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.), *cert. denied, County of Schenectady v. Jeffes,* 531 U.S. 813, 121 S.Ct. 47 (2000); *Wenger v. Canastota Cent. Sch. Dist.,* 95-CV-1081, 2004 WL 726007, at *3 (N.D.N.Y. Apr. 5, 2004) (Scullin, C.J.).

Here, the Complaint is devoid of factual allegations that plausibly suggest liability against the Oswego City School District. Again, it is unclear that Defendant Bebee is employed by that entity (as opposed to being employed by Oswego County or some private non-profit organization). For example, at least one portion of the Complaint alleges that Defendant Bebee is employed by *Oswego County.* (*See* Dkt. No. 1, at 9-10.) In addition, and more importantly, there are no factual allegations plausibly suggesting that, at the time of the alleged constitutional violations, Defendant Bebee was acting pursuant to an official custom, policy, or practice of the Oswego City School District. Rather, the Complaint rather explicitly alleges that Defendant Bebee was acting outside of her authority and pursuant to employment by the Baker Family.

**\*7** For all these reasons, Plaintiff's claims against Defendant Oswego City School District are dismissed for frivolousness.

### b. Right, Privilege, or Immunity Secured by the Constitution

As to the constitutional violations asserted in Plaintiff's Complaint, references to constitutional rights and amendments are generally confined to five of the twelve pages of the Complaint. (*See generally* Dkt. No. 1, at 1-3, 5, 10.) More specifically, construed with the utmost liberality, Plaintiff's Complaint asserts that Defendant Bebee violated her following three constitutional rights: (1) her right to privacy under the Fourth Amendment; (2) her right to procedural due process under the Fourteenth Amendment; and (3) her right to equal protection of the laws under the Fourteenth Amendment. (*Id.*) In addition, Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1983. (*Id.* at 2, 7-10.) [15]

With regard to Plaintiff's right-to-privacy claim under the Fourth Amendment, Plaintiff alleges that this violation occurred when the following acts occurred: (1) her home, in an unspecified city and state, was illegally searched at an unspecified time by an unspecified individual; and (2) Defendant Bebee relied on a sealed child protection report documenting the orthopedic injury to Plaintiff's daughter, in her effort to kidnap Plaintiff's daughter, transport her from Florida to New York, and/or somehow restrict Plaintiff's parental rights. (*Id.* at 1-2, 4-5.) The first act is simply too vague and speculative to plausibly

suggest a Fourth Amendment violation by Defendant Bebee. The second act, as alleged, does not give rise to a Fourth Amendment violation for three reasons: (1) it is highly questionable whether the act plausibly constitutes a violation of N.Y. Social Services Law § 422-a, which permits disclosure of a sealed child protection report by a social services commissioner under certain circumstances; (2) even if the act does plausibly constitute such a violation, a violation of state law does not, in and of itself, give rise to a violation of 42 U.S.C. § 1983, which requires a violation of either the United States Constitution or a federal statute; [16] and (3) even if the act does give rise to a constitutional violation, it is highly questionable whether Plaintiff has standing to assert that violation, because the report concerned Plaintiff's *daughter* (and Plaintiff is as a *pro se* litigant who cannot litigate the claim on behalf of her daughter).

With regard to Plaintiff's due process claim under the Fourteenth Amendment, Plaintiff alleges that Defendants failed to give any her notice and an opportunity to be heard (including an opportunity to present evidence and witnesses such as medical experts), presumably in a legal proceeding in Family Court in Oswego County to terminate Plaintiff's parental rights and/or modify her visitation rights. (*Id.* at 1-2.) This vague allegation does not allege facts plausibly suggest how much process was due because it does not allege in what type of proceeding Plaintiff was denied procedural protections (e.g., a modification of Plaintiff's visitation rights, a termination of Plaintiff's parental rights, a temporary removal of Plaintiff's daughter with the written consent of the person legally responsible for her care, a preliminary order of removal of Plaintiff's daughter after a petition is filed, a preliminary order of removal of Plaintiff's daughter before a petition is filed, or an emergency removal of Plaintiff's daughter without a court order). Indeed, based on Plaintiff's other factual allegations, it is plausible that the proceeding was permitted to be conducted *ex parte.* It is even conceivable that Plaintiff did not even have standing to participate in the proceeding.

**\*8** With regard to Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff alleges that Defendant Bebee treated Plaintiff unequally under the law by exceeding the scope of her job duties to (1) invade Plaintiff's privacy, (2) travel to Florida to kidnap her daughter, and (3) "impact" Plaintiff by traumatizing her daughter, and depriving her daughter of medical

treatment in New York State. (*Id.* at 2-5.) To assert an equal protection claim, a plaintiff must allege facts plausibly suggesting that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. Where the alleged classification involves a "suspect class" or "quasi-suspect class," the alleged classification is subject to "strict scrutiny" by a court. Otherwise, the alleged classification is subject to only "rational basis scrutiny." To survive such scrutiny, the alleged classification need only be "rationally related" to a "legitimate state interest."

Here, Plaintiff has not even alleged facts plausibly suggesting there has been any classification at all in this case, i.e., that she was intentionally treated differently from others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. (Rather, she alleges that Defendant Bebee acted differently compared to other social workers.) Moreover, even if Plaintiff had alleged facts plausibly suggesting that she was treated differently from others, she has not alleged facts plausibly suggesting that the alleged discrimination she experienced was not rationally related to a legitimate state interest (i.e., protecting Plaintiff's daughter by returning her to lawful custodians in New York State).

With regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1983, she alleges that, between approximately August and December of 2000, Defendant Bebee conspired with numerous members of "the Baker family" to kidnap Plaintiff's daughter on December 22, 2000, from a children's hospital in St. Petersburg, Florida, and transport her to New York. (*Id.* at 2, 7-10.) More specifically, Plaintiff alleges that this conspiracy possessed the following characteristics: (1) it was perpetrated by seven individuals; (2) it was motivated, in part, by revenge against Plaintiff for causing the "drug bust" of one of the conspirators; (3) it was motivated also by the certain other conspirators' need for money to satisfy illegal gambling debts and to pay for a transgender operation; (4) it was preceded by witness tampering and extortion by one of the conspirators, and the making of a death threat to Plaintiff by another of the conspirators while Plaintiff was approximately eight months pregnant; (5) it culminated in the making of a bribe of $100,000 to Defendant Bebee, and a bribe of an unspecified amount to two other

conspirators; and (6) it was followed by tax evasion by at least five of the seven conspirators. (*Id.*)

**\*9** To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) (citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983. *See Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857 (1983).

Here, the only factual allegation contained in Plaintiff's Complaint that plausibly suggests a "meeting of the minds" between Defendant Bebee and any of the other six alleged conspirators is her receipt-at an unspecified place and time from an unidentified individuals-of $100,000 for a transgender operation. (Dkt. No. 1, at 2, 7-10.) These pleading deficiencies-which render his claim vague and conclusory-are fatal to Plaintiff's conspiracy claim. *See Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990), *cert. denied,* 499 U.S. 937 (1991); *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987); *Warren v. Fischl,* 33 F.Supp.2d 171, 177 (E.D.N.Y.1999).

For all these reasons, Plaintiff's claims against Defendant Bebee are dismissed for frivolousness. [17]

### 2. Statute of Limitations

Even when construed with the utmost of special leniency, the events giving rise to Plaintiff's claims occurred between approximately August of 2000 (when the conspirators started meeting about Plaintiff) and April of 2001 (when Defendant Bebee perpetrated a fraud on an Oswego County Court in a proceeding presided over by Judge James McCarthy in April of 2001. (Dkt. No. 1, at 3-8, 10.)

"The applicable statute of limitations for § 1983 actions arising in New York requires claims to be brought within three years ." *Pinaud v. County of Sufolk,* 52 F.3d 1138, 1156 (2d Cir.1995) [citations omitted]; *see also Connolly v. McCall,* 254 F.3d 36, 40-41 (2d Cir.2001) ("[Plaintiff's] federal constitutional claims, brought pursuant to 42 U.S.C. § 1983, are governed by New York's three-year

statute of limitations for personal injury actions ....") [citations omitted]. A claim arising under Section 1983 accrues "when the plaintiff knows or has reason to know of the harm that he seeks to redress." *Connolly v. McCall,* 254 F.3d 36, 41 (2d Cir.2001) [internal quotation marks and citation omitted], *accord, Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) [internal quotation marks and citations omitted].

Here, the three-year limitations period started running, at the latest, in April of 2001, and expired, at the latest, in April of 2004. Under the circumstances, the applicable three-year limitations period clearly bars Plaintiff's claims. The Court notes that Plaintiff, an experienced *pro se* litigant who has had similar if not identical claims barred due to untimeliness, was, when she filed this action, undoubtedly aware of this limitation period. *See, e.g., O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 11-12 (W.D.N.Y. filed Feb. 20, 2007); *O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 1, 16 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007).

**\*10** For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

### 3. Res Judicata and Collateral Estoppel

In the following three cases, Plaintiff's claims against Defendant Bebee and Oswego City Schools were previously dismissed on multiple grounds, including untimeliness: (1) *O'Neil v. Oswego County Family Court,* 07-CV-6016, Decision and Order, at 10-12 (W.D .N.Y. filed Feb. 20, 2007) (dismissing Plaintiff's claims against Defendants Bebee and Oswego City Schools based on untimeliness and lack of federal jurisdiction); (2) *O'Neil v. State of New York,* 07-CV-0071, Decision and Order, at 6-7 (N.D.W. Va. filed July 19, 2007) (dismissing Plaintiff's claims against Defendants Bebee and City of Oswego for lack of federal jurisdiction); and (3) *O'Neil v.. N.Y.S. Dept. of Educ.,* UID 2007-038-526, Decision (N.Y. Ct. Cl. filed March 30, 2007) (dismissing Plaintiff's claims against Defendant Bebee as untimely pursuant to, *inter alia,* New York State's three-year statute of limitations governing certain of those claims).

For this alternative reason, Plaintiff's claims against Defendants are dismissed for frivolousness.

#### 4. Nature of Dismissal

Generally, when a *pro se* action is dismissed *sua sponte,* the plaintiff should be allowed to amend his or her complaint once before their complaints are dismissed. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, such leave is not required where any amended complaint would be futile due to the substantive nature of the fatal flaws in the original complaint. [18] Here, the flaws in Plaintiff's Complaint are substantive in nature such that better pleading would not cure them. As a result, the Court finds that it would be futile to afford Plaintiff an opportunity to amend her Complaint.

### III. PLAINTIFF'S MOTION FOR STAY AND TWO LETTER REQUESTS

Plaintiff's motion to stay the proceedings is rendered moot by the Court's dismissal of Plaintiff's action with prejudice due to its frivolousness. As a result, that motion is denied as moot. In the alternative, that motion is denied as procedurally improper in that it is unsupported by an affidavit, as required by Local Rule 7.1(a). Moreover, that motion is denied on the second alternative ground that it is unsupported by a showing of cause. (Dkt. No. 3.) Specifically, Plaintiff appears to be requesting that this action be stayed "in order to criminally arrest employees required to mandate abuse and were allegedly involved in human trafficking,...." (*Id.* at 2.) Finally, as for Plaintiff's two letters requesting requested that the Clerk issue summonses for service upon Defendants, in light of the foregoing, those requests are denied as moot. (Dkt.Nos.4, 5.)

### IV. ORDER TO SHOW CAUSE

A review of Plaintiff's litigation history reveals that, in addition to filing the current action in this District, she has filed five (5) other *pro se* civil rights actions in this District: (1) *O'Neil v. Diskey,* 5:09-CV-0540, Complaint (N.D.N.Y. filed on May 7, 2009) (transferred by Suddaby, J., to the Middle District of Florida on May 20, 2009); (2) *O'Neil v. Van Auser,* 5:09-CV-0594, Complaint (N.D.N.Y. filed on May 20, 2009) (dismissed for lack of subject matter jurisdiction by Mordue, C.J., on July 21, 2009); (3) *O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Complaint (N.D.N .Y. filed on Aug. 28, 2009) (dismissed for frivolousness by Suddaby, J., on February 9, 2010); (4) *O'Neil v. Ponzi,* 5:09-CV-0985, Complaint (N.D.N.Y. filed on Aug. 28, 2009) (dismissed as duplicative by Suddaby, J., on Oct.

22, 2009); and (5) *O'Neil v. Pasco County,* 5:09-CV-1175, Complaint (N.D.N.Y. filed on Oct. 21, 2009) (transferred by Suddaby, J., to the United States District Court for the Middle District of Florida on December 7, 2009).

**\*11** Moreover, a review of the Federal Judiciary's Public Access to Court Electronic Records ("PACER") reveals that Aimee O'Neil has filed some forty (40) *pro se* civil rights actions in other federal courts across the country. These actions include thirty-two (30) *pro se* civil actions filed in the Western District of New York in 2007 (eighteen of which were filed in the same week). These actions also include seven (7) *pro se* civil actions filed in the Northern District of West Virginia. These actions also include two (2) *pro se* civil actions filed in the Middle District of Florida. Finally, these actions include one (1) *pro se* civil actions filed in the Western District of Michigan.

All of Plaintiff's actions filed in the Western District of New York were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 7-18 (W.D.N.Y. filed Feb. 28, 2007). Similarly, all of Plaintiff's actions filed in the Northern District of West Virginia were *sua sponte* dismissed with prejudice as frivolous. *See O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *1-5 (N.D.W.V. July 19, 2007), aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007). As for Plaintiff's three remaining actions in other districts, two were *sua sponte* dismissed (the third having been filed merely a month ago). Finally, it is important to note that many of the forty-six (46) *pro se* civil actions that Plaintiff has filed have been duplicative in nature. Indeed, the current action is duplicative in nature. *See, supra,* Part II.3. of this Decision and Order.

Under such circumstances, a federal district court may impose a reasonable filing restriction on a *pro se* litigant in that particular court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a), and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access

to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ("[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08-CV-0330, 2008 WL 1767067, at *1 (N.D.N.Y. Apr. 16, 2008) (McCurn, J.).

**\*12**  It is worth noting that at least two federal district courts have imposed such a restriction on Plaintiff. *See O'Neil v. Fulton Police Dept.,* 07-CV-6045, Decision and Order, at 18-20 (W.D.N.Y. filed Feb. 28, 2007); *O'Neil v. Cornerstone Homes,* 07-CV-0069, 2007 WL 2116410, at *6 (N.D.W.V. July 19, 2007), *aff'd by O'Neil v. Oswego County Dept. of Soc. Servs.,* 258 F. App'x 581 (4th Cir. Dec. 17, 2007).

Because of her history of filing vexatious, harassing or duplicative lawsuits, Plaintiff is hereby warned that the Court will not tolerate the filing of frivolous actions by her in the future. As a result, she is directed to show cause, within thirty (30) days of the date of this Decision and Order, as to why this Court should not issue an Order barring her from filing any future *pro se* actions without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be prohibited from filing, in this Court, any action *pro se* (that is, without counsel), without prior leave of the Court, pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1651(a) and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is *GRANTED;* and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is *sua sponte* **DISMISSED** **with prejudice** due to its frivolousness, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i),(ii); and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 3) is *DENIED;* and it is further

**ORDERED** that Plaintiff's requests that the Clerk issue summonses for service upon the Defendants (Dkt.Nos.4, 5) are *DENIED;* and it is further

**ORDERED** that *Plaintiff is hereby directed to* **SHOW CAUSE,** *within* **THIRTY (30) DAYS** *of the date of this Decision and Order, why this Court should not issue an Order barring her from filing any future pro se actions in this Court without first obtaining leave of the Court. In the event that Plaintiff fails to show such cause, she will be* **PROHIBITED** *from filing, in this Court, any action pro se (that is, without counsel) without prior leave of the Court, pursuant to* 28 U.S.C. § 1651(a) *and the Court's inherent authority to control and manage its own docket so as to prevent abuse in its proceedings.*

*The Court hereby certifies, for purposes of* 28 U.S.C. § 1915(a) (3), *that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 502948

---

**Footnotes**

1    Plaintiff should note that, although her motion to proceed *in forma pauperis* has been granted, she would still be required to pay other fees that she incurred in the action, including copying and/or witness fees, if this action were to proceed.

2    *See also Monestime v. FCC,* 09-CV-0296 (N.D.N.Y. Mar. 24, 2009) (Suddaby, J.) ("[F]ederal courts may (and have) *sua sponte* dismissed *pro se* civil rights complaints (in *in forma pauperis* proceedings) where the allegations therein are fantastic, fanciful, delusional, and/or paranoid. Indeed, this Court has done so."); *Henderson v. Clover Field,* 08-CV-0504, 2008 WL 2405705 (N.D.N.Y. June 11, 2008) (McCurn, J., adopting Report-Recommendation of Lowe, M.J.); *Mercier v. Mercier,* 07-CV-0523, 2007 WL 1582267, at *1-2 (N.D.N.Y. May 25, 2007) (Kahn, J.).

3    *See also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ( "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function

of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

4    *See also Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) ( "[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* ).

5    *See, e.g., Jacobs v. Mostow,* 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a *"plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

6    For example, in *Erickson,* the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson,* 127 S.Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson,* even the *pro se* plaintiff was required to allege some sort of fact.

7    *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191 (2d Cir.2008); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

8    *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972), *cert. denied,* 411 U.S. 935, 93 S.Ct. 1911 (1973) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi,* 469 F.2d at 692) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi* within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995); *accord Wachtler v. Herkimer County,* 35 F.3d 77, 82 (2d Cir.1994).

9    *See McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 1984 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel"); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 2541, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) ("*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *accord, Traguth,* 710 F.2d at 95; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if her mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

10    Plaintiff is advised that there is no Section 1876 in volume 42 of the United States Code. Plaintiff also references Section 1871 in the first paragraph of her Complaint, which is unrelated to civil rights, and instead addresses international cooperation and coordination of the National Science Foundation with foreign policy. *See* 42 U.S.C. § 1871.

11    In *O'Neil v. Van Auser* and *O'Neil v. Ponzi-Flett,* Plaintiff named M.O. as a plaintiff, and in both cases she was advised that M.O. must be properly represented before commencing an action in federal court. *See O'Neil v. Van Auser,* 5:09-CV-0594, Memorandum-Decision and Order, at 1, n. 1 (N.D.N.Y. filed July 21, 2009) (Mordue, C.J.); *see also O'Neil v. Ponzi-Flett,* 5:09-CV-0983, Report-Recommendation, at 2 (N.D.N.Y. filed Sept. 9, 2009) (Lowe, M.J.).

12    *See Rest v. Weissmane,* 08-CV-0340, 2008 WL 5191733, at *5 (N.D.N.Y. Dec. 10, 2008 (Kahn, J. adopting on *de novo* review Report-Recommendation of Lowe, M.J.) (dismissing claims that "[e]ven construed with the special solicitude," were confusing, ambiguous, vague and/or otherwise unintelligible under Federal Rules of Civil Procedure 8(a)(2) and 10(b)").

13    *See also DeMatteis v. Eastman Kodak Co.,* 511 F.2d 306, 311 (2d Cir.) (affirming dismissal of complaint where plaintiff failed to include allegations of state action in complaint), *modified on other grounds,* 520 F.2d 409 (2d Cir.1975); *Lawson*

*v. Abrams,* 84-CV-4325, 1988 WL 49244, at *4 (E.D.N.Y. May 6, 1988) (dismissing as frivolous pro se complaint where plaintiff failed to allege state action on part of defendants), *accord, Carollo-Gardner v. Diners Club,* 628 F.Supp. 1253, 1256-57 (E.D.N.Y.1986).

14    Indeed, the Court notes that Plaintiff alleges that Defendant Bebee had no professional relationship with Plaintiff's daughter. (Dkt. No. 1 at 5-6.)

15    The Court notes that Plaintiff also asserts several claims arising under New York State law, including (but not limited to) negligence, fraud, defamation, invasion of privacy, malpractice, breach of confidentiality, and intentional infliction of emotional distress. (*Id.* at 3-6, 10.) However, because a cause of action under 42 U.S.C. § 1983 may not be premised solely on a violation of state law (but requires a violation of either the United States Constitution or a federal statute), and because the Court would decline to exercise supplemental jurisdiction over any of Plaintiff's pendent state law claims, the Court need not, and will not, analyze these claims in this Decision and Order.

16    In addition, the Court notes that New York Social Service Law § 419 grants immunity to individuals, officials and institutions for making good faith reports and other related actions from any liability, civil or criminal. N.Y. Soc. Serv. Law § 419.

17    The Court notes that Plaintiff's Complaint also raises the specter of a claim under a federal statute known as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. 104-191, 110 Stat.1936 (1996). HIPAA was enacted by Congress in order to protect against unwarranted disclosure of health records and information, authorizing the Secretary for Health and Human Services "to make final regulations concerning the privacy of individually identifiable health information." *Barnes v. Glennon,* 05-CV-0153, 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (*citing and quoting Nat'l Abortion Fed'n v. Ashcroft,* 03-CV-8695, 2004 WL 555701, at *2 [S.D.N.Y. Mar. 19, 2004], and 42 U .S.C. §§ 1320d through 1320d-8). Courts addressing claims similar to the claim implicitly raised by Plaintiff have determined that, in light of the availability of monetary and criminal penalties to be assessed by the Secretary of Health and Human Services or the State, *see* 42 U.S.C. § 1320d-6(b), the statute does not confer an independent private right of action. *See Barnes,* 2006 WL 2811821, at *5-6; *Cassidy v. Nicolo,* 03-CV-6603, 2005 WL 3334523, at *5-6 (W.D.N.Y. Dec. 7, 2005); *see also Pecou v. Forensic Committee Personnel,* 06-CV-3714, 2007 WL 1490450, at *2 (E.D.N.Y. Jan. 5, 2007). Courts presented with the issue also have held that, because HIPAA does not create a private right, it cannot be privately enforced via Section 1983. *Adams v. Eureka Fire Protection Dist.,* 09-CV-1315, 2009 WL 3352032, at *1 (8th Cir. Oct. 15, 2009); *see also, Auld v. Davidson,* No. 08-3110-TC, 2009 WL 1559777, at * 1 (D. Or. June 2, 2009); *Howard v. Douglas County Jail,* No. 09-3085-SAC, 2009 WL 1504733, at * 4 (D.Kan. May 28, 2009); *Frazier v. Arkansas Dept. of Corr.,* 07-CV-00184,2009 WL 856990, at *9 (E.D.Ark. Mar. 30, 2009). Accordingly, the Court finds that any alleged HIPAA violations will not support Plaintiff's Section 1983 claim, and, to the extent her Complaint is construed as asserting a cause of action under HIPAA, the claim is subject to dismissal as a matter of law.

18    *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") [citation omitted].

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:17-cv-00510-BKS-TWD Document 15 Filed 10/27/17 Page 125 of 142

Rios v. New York Executive Dept. Div. of Parole, Not Reported in F.Supp.2d (2008)

2008 WL 150209

2008 WL 150209
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Jorge RIOS, pro se, Plaintiff,
v.
State of NEW YORK EXECUTIVE
DEPARTMENT DIVISION OF PAROLE
and Paul Battiste, Esq., Defendants.

No. 07-CV-3598 (DLI)(LB).
|
Jan. 14, 2008.

**Attorneys and Law Firms**

Jorge Rios, Staten Island, NY, pro se.

### Memorandum & Order

DORA L. IRIZARRY, District Judge.

**\*1** Plaintiff Jorge Rios brings this *pro se* action titled a "Motion under *Vaughn v. Rosen* to require detailed indexing justification and itemization." The court allows plaintiff to proceed *in forma pauperis,* but for the reasons set forth below, the complaint is dismissed.

### Background

Plaintiff's complaint was filed on August 14, 2007 and, although the court appreciates that it is neatly typed, with numbered pages and paragraphs, the court nonetheless finds it nearly indecipherable. The complaint is captioned *"United States, Respondent v. Jorge Rios, Movant,"* while an attached affidavit is captioned *"Jorge Rios, et al. v. State of New York Executive Department Division of Parole and Parole Officer Ms. Mendoza and her Supervisor, et al."* Together, these documents consist of randomly organized references to "The Freedom of Information Act" and a request that this court "require detailed indexing justification and itemization" (Compl. at 1-2); allegations of "harassment" involving his parole officer, Ms. Mendoza and her supervisor when he requested a travel pass on August 8, 2007 (Affidavit ¶ 4); challenges to his plea agreement, conviction, and

sentencing on a state court indictment, including his representation by retained attorney Paul A. Battiste, Esq. (Compl. at 3); complaints about his detention by immigration authorities in Pennsylvania (Compl. at 4); and a request that he be released from parole supervision (Compl. at 5). Attached to these is "Appendix 'A' " consisting of 63 pages of documents, in no particular order, spanning 16 years, and apparently related to his criminal case, his immigration case, and various civil actions he has filed in the New York State courts.

It appears that plaintiff's underlying concern and the impetus for filing this action is the August 8, 2007 refusal by his parole officer's supervisor to authorize his requested travel pass, after plaintiff refused to answer questions about the circumstances of the underlying criminal conviction. (*See* Affidavit ¶ 4.) Plaintiff seems to be asking the court to grant him relief by reviewing an alleged request pursuant to the Freedom of Information Act and/or the New York State Freedom of Information Law and releasing him from parole supervision by the New York Executive Department of Parole "in [the] Interest of Justice." (Compl. at 1, 5.)

### Discussion

1. *Standard of Review*

Title 28, Section 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Because plaintiff is proceeding *pro se,* his complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). If a liberal reading of the Complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (quoting *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999)).

2. *Requests under FOIA and FOIL*

**\*2** Plaintiff invokes the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552-552b, and *Vaughn v.*

2008 WL 150209

*Rosen,* 484 F.2d 820 (D.C.Cir.1973). FOIA created a judicially enforceable public right of access to information collected by executive branch agencies, subject to specified limitations. FOIA requests must be made to the specific federal agency. They may be administratively appealed to the head of the agency, and ultimately are appealable to federal courts. 5 U.S.C. § 552(a)(4)(B). However, federal court jurisdiction "is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records,'" *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), and the requester must first exhaust his administrative remedies, *Ruotolo v. Dep't of Justice,* 53 F.3d 4, 8 (2d Cir.1995). *Vaughn* held that an agency could meet its burden in FOIA litigation if it included an affidavit or series of affidavits explaining the agency's treatment of the plaintiff's FOIA request and detailing the agency's claimed exemptions. 484 F.2d at 826-27. In this case, plaintiff has not alleged that he filed a FOIA request with a federal agency, that such request was initially denied, or that he has exhausted his administrative remedies. Nor has he alleged that he is entitled to an index of requested documents and an explanation of how his requests were handled, pursuant to *Vaughn.* Because of these deficiencies, the court lacks jurisdiction to review plaintiff's claim.

Plaintiff attaches a letter, dated May 18, 2001 and addressed to the Honorable Michael R. Juviler, Kings County Supreme Court Justice, requesting information pursuant to New York State's Freedom of Information Law ("FOIL"), N.Y. Pub. Off. L. §§ 84-90. The state FOIL allows individuals to request disclosure of records collected by New York state agencies, subject to certain statutory exemptions. If the initial request is denied, the requester may appeal the denial first to the "head, chief executive or governing body" of the entity or agency in possession of the documents, and, thereafter, by commencing a special proceeding in New York State courts under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. L. § 89(4)(a) and (b). Unlike requests under the federal FOIA, federal courts have no jurisdiction to enforce lawful requests under the state FOIL. To the extent plaintiff seeks the court's assistance in requesting documents from state or federal agencies, he has failed to state a claim on which relief may be granted.

C. *Section 1983 Claims*

The court liberally construes plaintiff's claims regarding the actions of the parole officers and his attorney as a civil rights action pursuant to 42 U.S.C. § 1983. In order to maintain an action under section 1983, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994) (citation omitted). Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.*

**\*3** Plaintiff's claims against the New York State Division of Parole must be dismissed because neither the state nor its agencies are "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). To the extent plaintiff may have intended to name individual parole officers, he has failed to state a claim of deprivation of his constitutional rights. His allegations that parole officers questioned or "harassed" him about his requests to travel to New Jersey, or the circumstances of the underlying criminal conviction, or his ability to work, do not implicate any constitutional rights. Thus, he has failed to state a claim under section 1983.

Plaintiff names his former attorney, Paul A. Battiste, Esq., as a defendant in this lawsuit, but fails to identify a cause of action or seek any relief from this defendant. Section 1983 imposes liability for constitutional deprivations caused by state actors, and cannot be applied to the actions of private individuals. As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (quotations omitted). "It is well-established that as a matter of law a private attorney is not a state actor." *Agron v. Douglas W. Dunham, Esq. & Assocs.,* No. 02 Civ. 10071, 2004 WL 691682, at \*3 (S.D.N.Y. Mar.31, 2004); *see, e.g., Rodriguez v. Weprin,* 116 F.3d 62, 65-66 (2d Cir.1997) (private attorney not a state actor by virtue of his appointment by the court to represent a defendant in a state criminal proceeding). Accordingly, all claims against Battiste must be dismissed.

**Conclusion**

2008 WL 150209

For the foregoing reasons, all of plaintiff's claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 150209

---

**End of Document** © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3939922
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Richard ROGUE, Plaintiff,

v.

Frank A. IANNOTTI, et al., Defendants.

No. 3:11–cv–2000(SRU).
|
Sept. 10, 2012.

**Attorneys and Law Firms**

Richard Rogue, Enfield, CT, pro se.

### *INITIAL REVIEW ORDER*

STEFAN R. UNDERHILL, District Judge.

**\*1** The plaintiff, Richard Rogue, is currently incarcerated at the Willard–Cybulksi Correctional Institution. He has filed this action *pro se* pursuant to 42 U.S.C. § 1983 and names Judge Frank A. Ianotti, Judge Jane B. Emons, Eddie Rodriguez, Jr., Marc Durso, Commissioner Leo Arnone, the State of Connecticut and Jean Zingaro as defendants.

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual

enhancement,' " does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

The plaintiff claims that on June 13, 2010, police officers arrested him on charges of larceny in the third degree and interfering with a police officer. On January 25, 2011, a violation of probation charge was terminated. On March 15, 2011, he participated in a violation of probation hearing and the court found him guilty of violating the conditions of his probation. On July 14, 2011, the State of Connecticut dismissed the larceny charge.

The plaintiff claims that he was charged twice for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. He seeks five million dollars in monetary damages.

It is well-settled that neither a state nor a state agency is a "person" within the meaning of section 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983). All section 1983 claims against the State of Connecticut are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1).

To the extent that the Judges Iannotti and Emons presided over any of the plaintiff's criminal or probation revocation proceedings, they are immune from suit. *See Mireles v. Waco,* 502 U.S. 9, 11 (1991) (judges are immune from suit, not just from the ultimate assessment of damages). This immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Young v. Selsky,* 41 F.3d 47, 51 (2d Cir.1994) (citations and internal quotation marks omitted). Judicial immunity is overcome in only two situations. A judge is not immune from suit for actions not taken in his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. *See Mireles,* 502 U.S. at 11 (citations omitted).

**\*2** Presiding over criminal cases as well as probation revocation matters are judicial acts within the jurisdiction of a state court judge. The court concludes that neither exception to judicial immunity is applicable. Because

Judges Emons and Ianotti are protected from suit by the doctrine of judicial immunity, the plaintiff's claims against them are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The plaintiff does not mention defendants Eddie Rodriguez, Marc Durso, Jean Zingaro or Department of Correction Commissioner Leo Arnone in the body of the complaint. Thus, the plaintiff has failed to allege that any of these defendants violated his federally or constitutionally protected rights. The claims against these defendants are dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915A(b)(1).

Although the plaintiff mentions the double jeopardy clause of the Fifth Amendment and several probation proceedings as well as at least one state criminal proceeding, it is difficult to discern the plaintiff's claim. The double jeopardy clause of the Fifth Amendment protects against "second prosecution[s] for the same offense after acquittal [or] ... conviction" and "against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969).

The United States Supreme Court has held that "there is no double jeopardy protection against revocation of probation and imposition of imprisonment." United States v. Di Francesco, 449 U.S. 117, 137 (1980). Furthermore, the Second Circuit has consistently concluded that the double jeopardy clause does not provide relief to prisoners whose parole, supervised release or probation is revoked for commission of a crime. See, e.g., United States v. Meeks, 25 F.3d 1117, 1122 (2d Cir.1994) (holding "defendant may be both punished for the supervised-release violation and prosecuted criminally for the same conduct without implicating principles of double jeopardy"), abrogated on other grounds by Johnson v. United States, 529 U.S. 694, 699 (2000); United States v. Grisanti, 4 F.3d 173, 176 (2d Cir.1993) (jeopardy does not attach during parole, probation, or bail revocation hearings); Alessi v. Quinlan, 711 F.2d 497, 501 (2d Cir.1983) ("A denial of parole is ... not punishment for purposes of the Double Jeopardy Clause.... In setting [defendant's] parole date, the [Parole] Commission did not violate the clause by giving considerations to actions for which he had previously been punished.")

The plaintiff alleges that officers arrested him on June 10, 2010 on charges of larceny and interfering with a police officer. The State of Connecticut Judicial website reflects

that on March 15, 2011, the plaintiff was found guilty of a violation of probation and the court sentenced him to three years of imprisonment. See State v. Rogue, Case No. F02B–CR09–0243485–S (Conn.Super.Ct. Mar. 15, 2011). On July 14, 2011, in the Connecticut Superior Court for the Judicial District of Fairfield at Bridgeport, the plaintiff was found guilty of interfering with a police officer and the court sentenced him to one year of imprisonment. See State v. Rogue, Case No. F02B–CR10–0250538–S (Conn.Super.Ct. July 14, 2011).[1] Thus, the plaintiff was convicted of one of the charges for which he was arrested on June 10, 2010.

**\*3** Even if the judge dismissed the larceny charge on July 14, 2011, the prior conviction for a violation of probation, which may have been based on the larceny charge, did not violate the double jeopardy clause because the standard of proof for a revocation of probation revocation is lower than the standard of proof for a conviction. "In a criminal proceeding, substantive guilt must be established beyond reasonable doubt; a probation violation need be proven only by a preponderance of the evidence." State v. Rollins, 51 Conn.App. 478, 483, 723 A.2d 817, 820 (1999) (citations omitted).

Thus, a judge may revoke a defendant's probation or parole even if the defendant is not convicted of the crime for which he was arrested and upon which the parole or probation violation is based. See United States v. Parker, 952 F.2d 31, 33 (2d Cir.1991) ("All that is required in a probation revocation hearing is that the district court be reasonably satisfied that the probationer violated the terms of [his] or her probation."), abrogated on other grounds by Spencer v. Kemna, 523 U.S. 1 (1998); United States v. Markovich, 348 F.2d 238, 240 (2d Cir.1965) (conviction is not a prerequisite to probation revocation); United States ex rel. Carrasquillo v. Thomas, 527 F. Supp. 1105, 1109 (D.C.N.Y.1981) (double jeopardy clause of Fifth Amendment would not bar parole revocation proceeding based on same allegations of untried indictment dismissed with prejudice or on same charges of which defendant was acquitted after trial), aff'd, 677 F.2d 225 (2d Cir.1982); State v. Smith, 18 Conn.App. 368, 370 n. 1, 558 A .2d 257, 258 n. 1 (1989) ("purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation ... rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing

Rogue v. Ianotti, Not Reported in F.Supp.2d (2012)

2012 WL 3939922

need not be sufficient to sustain a violation of criminal law.") (citation omitted). Accordingly, for all the reasons set forth above, the plaintiff's claims are dismissed.

### Orders

In accordance with the foregoing analysis, the court enters the following orders:

(1) The claims against the State of Connecticut, Eddie Rodriguez, Marc Durso, Jean Zingaro and Leo Arnone are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b) (1) and the claims against defendants Jane Emons and Frank Ianotti are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). If the plaintiff chooses to appeal this

decision, he may not do so *in forma pauperis,* because such an appeal would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). The Clerk is directed to enter judgment for the defendants and close this case.

(2) **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the Complaint and this Initial Review Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit and a copy of this Ruling and Order to the plaintiff.

**\*4 SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3939922

### Footnotes

1    Information regarding these criminal convictions may be found at:http://www.jud2.ct.gov/crdockets/ SearchByDefDisp.aspx (last visited July 5, 2012) under the name of Richard Rogue.

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:17-cv-00510-BKS-TWD    Document 15    Filed 10/27/17    Page 131 of 142
Steele v. Steele, Not Reported in F.Supp.2d (2012)

2012 WL 3061028

2012 WL 3061028
Only the Westlaw citation is currently available.
United States District Court,
S.D. Ohio,
Western Division.

John Kevin STEELE, Plaintiff,

v.

Kimberly Ann STEELE et al., Defendants.

No. 1:12–cv–439.
|
July 3, 2012.

**Attorneys and Law Firms**

John Kevin Steele, Cincinnati, OH, pro se.

Jeffrey C. Mando, Jennifer L. Langen, Adams, Stepner, Woltermann & Dusing, P.L.L.C., Covington, KY, for Defendants.

**REPORT AND RECOMMENDATION**

KAREN L. LITKOVITZ, United States Magistrate Judge.

*1  Plaintiff, who resides in Butler County, Ohio, has filed a *pro se* pleading entitled "Verified Complaint for Fraud, Constitutional Violations, and Damages, with Notice and Petition for Warrant of Removal." (*See* Doc. 1, Complaint). By separate Order issued this date, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of plaintiff's complaint/ petition to determine whether the pleading, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if satisfied that the action is frivolous or malicious. *Denton v. Hernandez,* 504 U.S. 25, 31, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992); *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke*

*v. Williams,* 490 U.S. 319, 328–29, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir.1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin,* 630 F.3d 468, 471 (6th Cir.2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress has also authorized the *sua sponte* dismissal of complaints which fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Although a plaintiff's *pro se* complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers," the complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citation and quotation omitted)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Hill,* 630 F.3d at 470– 71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915(e)(2)(B)(ii) and 1915A(b)(l)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555 (quoting *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U .S. at 555).

2012 WL 3061028

A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

**\*2** Plaintiff brings this action against his ex-wife, Kimberly Ann Steele; the Commonwealth of Kentucky; the County of Shelby, Kentucky; John David Myles, a Shelby County judge; Stephen K. Mershon, a former Shelby County judge; Gilmore Dutton, an attorney who formerly represented plaintiff's ex-wife; Brian Gowin, an attorney who is currently representing plaintiff's ex-wife; and Martin F. McDonald, a judge who replaced defendant Mershon on the Shelby County court. (*See* Doc. 1, Complaint, pp. 9–10). The complaint is rambling, but plaintiff essentially challenges actions taken in a divorce proceeding initiated by defendant Kimberly Ann Steele in Shelby County, Kentucky, which resulted in the dissolution of their marriage and the alleged deprivation of his "parental-child relationships." (*Id.,* p. 14). Plaintiff specifically alleges that "Defendant Myles, empowered by Defendant Kentucky and Defendant Shelby County, improperly acted in his judicial function to unilaterally terminate the Petitioner–Plaintiff father's pre-existing custodial rights, arbitrarily naming him as a new 'non-custodial' parent, ... further attaching a lien of child support upon him, and further depriving him of his residence and also directly interfering with the normal and necessary operations of said family business." (*Id.*). Plaintiff further alleges that defendant Dutton "affirmatively participate[d] in each of the unlawful judicial events" as counsel for plaintiff's ex-wife. (*Id.,* p. 15). Plaintiff states defendant Gowin replaced Dutton as counsel for plaintiff's ex-wife and that defendant Mershon replaced Myles as the judge presiding over the "family court case of now a decade." (*Id.*). Finally, plaintiff alleges that defendant Mershon "never bothered to submit his oath of office to the proper authorities," and therefore, is not "actually a lawful and properly-valid judge in the entire context of the instant state court matters." (*Id.*).

Plaintiff avers that although defendant Kimberly Ann Steele resided in Kentucky when she "filed for dissolution in Shelby County, Kentucky, she almost immediately (after receiving 'temporary' custody by initial dissolution filing), within several months later, had already completed apparent prior plans to move to Cincinnati, Ohio." (*Id.*).

Plaintiff claims that "six months later, i.e., several years ago now, all state and federal 'uniform' laws regarding interstate child custody proceedings mandated that any pending family law actions be transferred to the same jurisdiction of the minor children, themselves, which was in Ohio, not Kentucky." (*Id.*). Plaintiff contends that because he, his ex-wife, and their remaining minor children have resided in Ohio "for quite some time," Kentucky is "no longer authorized to continue any jurisdiction or proceedings over the Steele family" and that the proceedings which have taken place in the Kentucky case these past several years are, therefore, "unlawful" and "void." (*Id.,* pp. 15–17).

**\*3** Plaintiff alleges that over the course of the years the Shelby County court has subjected him to "severely onerous" child support payment obligations; has implemented "contempt actions including jail time" against him on several occasions without providing him with due process; and has "fraudulently, falsely, arbitrarily and capriciously" awarded his ex-wife with **"all** appreciable real estate, property, assets and monies, while simultaneously 'awarding' [him] with **all** of the family debt and virtually and literally nothing of substantive value as to tangible assets or property." (*Id.,* pp. 16–17) (emphasis in original). Plaintiff states that he is bringing this action for "instant removal and full complaint for civil damages along with declaratory relief" because the "same wholly fraudulent state court, now with yet another new judge who has absolutely no history with this case, has recently set the case for yet another child support hearing, yet *still* fraudulently attempting to collect VOID child support debt ... and once again threatening another imminent and false jailing of Petitioner–Plaintiff, who has been left with nothing for years, had everything literally stolen from him by 'legal' action of this same Shelby County court system." (*Id.,* pp. 17–18) (emphasis in original). Plaintiff states that he is entitled to relief based on claims of gender discrimination, false arrests and wrongful imprisonments, and fraud and theft. (*Id.,* pp. 18–20).

Plaintiff asserts that this Court has jurisdiction over the "cause of action for removal and civil complaint" under the removal provisions set forth in 28 U.S.C. §§ 1443 and 1446(b), as well as under 28 U.S.C. §§ 1331 and 1367 and 42 U.S.C. § 1983. The undersigned disagrees and finds that the complaint/petition is subject to dismissal for lack of subject matter jurisdiction.

2012 WL 3061028

First, the Court lacks jurisdiction over the cause of action to the extent that plaintiff requests that the Shelby County, Kentucky domestic relations case be removed to this Ohio federal district court. 28 U.S.C. § 1443 provides that certain "civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States *for the district and division embracing the place wherein it is pending."* (Emphasis added). [1] The Kentucky case that plaintiff seeks to remove is obviously not pending in this Ohio federal judicial district. [2] Therefore, federal removal statutory provisions do not apply and cannot be invoked by plaintiff for obtaining this Court's jurisdiction over his cause of action.

Second, to the extent that plaintiff seeks to file an original complaint against the defendants for damages and declaratory relief, the Court lacks subject matter jurisdiction to consider plaintiff's claims.

Plaintiff alleges that jurisdiction lies under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiff asserted the same argument when he previously attempted to remove the state-court action challenged herein to the federal district court in Kentucky. *See Steele v. Steele,* No. 3:10–CV–40–KSF, 2011 WL 2413400, at *2–6 (E.D.Ky. June 10, 2011). The district court rejected plaintiff's contentions and remanded the matter to the state court for lack of subject matter jurisdiction. *See id.* In so ruling, the court reasoned in pertinent part as follows:

**\*4** Federal courts have no jurisdiction over domestic relations matters. As the United States Supreme Court reaffirmed in *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the "domestic relations exception" to federal jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees ." *Id.* at 703. This exception embodies the recognition by federal courts that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 [ (1890) ].

Steele states in his Notice of Removal that he "... does not, in any way, request and/or seek this Honorable federal court to alter, amend, or change whatsoever, any aspect(s) of divorce, child custody, or any other type of familial and/or domestic matters that are properly reserved for the state court system."... He later stated that "Again, the Petitioner does NOT seek or request this Honorable Court to involve itself in any state law matters of divorce, child custody, or similar, but only to enforce basic due process."...

However, Steele contradicted that claim in other passages of his Notice of Removal....

\* \* \* \*

Despite Steele claiming on the one hand that he does not want this Court to alter or amend any past orders entered in the Domestic Relations Action, he on the other hand asks this Court to "immediately intervene" in, and take control of, all aspects of his pending state court domestic relations proceeding, in which Orders adverse to him have been entered over the years. He seeks assurance that any interim or final orders entered in the Domestic Relations Action protect his federal constitutional rights. As explained, the "domestic relations doctrine" prevents an unhappy state court domestic relations litigant (such as Steele) from removing to federal court when displeased about the state court domestic relations proceeding.

Consequently, because Steele seeks to remove a state action involving domestic relations issues including matters of child support, custody and/or maintenance which are currently being litigated in state court ..., the "domestic relations exception" to federal jurisdiction applies, divests this Court of subject matter jurisdiction over the matter, and bars the removal of the state court action to federal court.

*Id.* at *2–4.

The district court also found that the Shelby County domestic relations proceeding and the child support obligations at issue in the case do not involve any issue of federal law, but rather are "premised solely on Kentucky state law." *Id.* at *4. In so concluding, the court specifically rejected plaintiff's contention that he had stated an actionable claim under the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1671, based on the allegation that the garnishment of his wages to meet

2012 WL 3061028

child support obligations exceeded the permissible limits allowed by that statute. *Id.* at \*4–5.

**\*5** Finally, the district court concluded that it was precluded from exercising subject matter jurisdiction over plaintiff's § 1983 claims based on the abstention doctrine established by the Supreme Court in *Younger v. Harris,* 401 U.S. 37 (1971), and the *Rooker–Feldman* doctrine, which "stands for the proposition that a federal district court may not hear an appeal of a case already litigated in state court." *United States v. Owens,* 54 F.3d 271, 274 (6th Cir.1995) (citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)); *see also Steele v. Steele, supra,* 2011 WL 2413400, \*5–6. Because the district court determined that it had no original jurisdiction over plaintiff's claims due to "the 'domestic relations' exception, the *Younger* abstention doctrine, the *Rooker–Feldman* doctrine, and the inapplicability of other federal statutes," it further concluded that no basis existed for exercising supplemental jurisdiction under 28 U.S.C. § 1367 over plaintiff's state-law claims. *Id.* at \*6–7.

To the extent plaintiff seeks to raise the same issues that were litigated and decided against him in the previous removal action, his claims are barred from review under the doctrine of collateral estoppel, which bars "relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Tenenbaum v. United States Dep't of Defense,* 407 F. App'x 4, 6 (6th Cir.2010) (quoting *Cobbins v. Tennessee Dep't of Transp.,* 566 F.3d 582, 589 (6th Cir.2009)) (affirming the dismissal of the plaintiffs' § 1983 action because their claims turned on an issue raised and litigated in a prior action that was necessary to the final resolution of the case, and plaintiffs had a "full and fair opportunity" to litigate the issue in the prior case), *cert. denied,* 131 S.Ct. 2549 (2011). Moreover, as the Kentucky district court held in the prior removal action, any claims by plaintiff challenging actions taken in the state domestic relations case are barred from review under the *Rooker– Feldman* doctrine. *Cf. Evans v. Yarbrough,* No. 00–3588, 2000 WL 1871706, at \*2 (6th Cir. Dec.13, 2000) (holding that the federal district court lacked authority under the *Rooker–Feldman* doctrine to consider plaintiff's complaint essentially "disagreeing with the manner in which his parental or visitation rights were allocated" by Ohio's

domestic relations court); *see also Pan dey v. Russell,* 445 F. App'x 56, 58–59 (10th Cir.2011) (holding that the *Rooker–Feldman* doctrine applied to preclude federal district court review of plaintiff's allegations challenging the authority of state judges to issue rulings in a divorce proceeding because in order for plaintiff to prevail on his claims, "the district court ... would have to review, and ultimately reject, the orders issued by the defendants in the state divorce proceedings"), *cert. denied,* —— U.S. ——, 132 S.Ct. 1760, 182 L.Ed.2d 545 (2012); *Turner v. Chase,* 334 F. App'x 657, 659–60 (5th Cir.2009) (affirming the dismissal of a complaint alleging various constitutional and civil-rights violations in connection with state-court divorce proceedings as "falling squarely in the category of cases covered by the *Rooker–Feldman* doctrine" because the plaintiff essentially sought to have the state-court divorce proceedings "re-opened and re-litigated in federal court and, ultimately, [sought] to nullify the state court judgment adverse to her").

**\*6** In any event, to the extent that plaintiff seeks to raise new issues challenging the continuing jurisdiction of the Kentucky courts over the domestic relations matter involving child support and custody issues, plaintiff has failed to state a claim upon which relief may be granted by this Court. As the Kentucky district court properly determined in the prior removal action, federal courts lack jurisdiction over cases such as this, involving disputes over child custody, child support obligations and the division of marital property pursuant to a divorce decree. *See,* *e.g., Chambers v. Michigan,* ——F. App'x ——, No. 11– 1442, 2012 WL 1130441 (6th Cir. Apr.5, 2012) (citing *Ankenbrandt,* 504 U.S. at 703; *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (6th Cir.1981)); *see also McLaughlin v. Cotner,* 193 F.3d 410, 412–15 (6th Cir.1999) (and cases cited therein).

Even assuming, *arguendo,* that jurisdiction lies to consider issues arising in the state-court domestic relations proceeding, plaintiff's allegations do not state an actionable federal claim under 42 U.S.C. § 1983 against the named defendants. In order to allege a cognizable § 1983 civil rights claim, plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See Hines v. Langhenry,* 462 F. A'ppx 500, 503 (6th Cir.2011) (citing *Boykin v. Van Buren Twp.,* 479 F.3d 444, 451 (6th Cir.2007); *Tahfs v. Proctor,* 316 F.3d 584, 590 (6th Cir.2003)).

2012 WL 3061028

Here, plaintiff's § 1983 claim against the Commonwealth of Kentucky is subject to dismissal because " § 1983 actions do not lie against a State." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)); *see also DLX, Inc. v. Kentucky,* 381 F.3d 511, 526 (6th Cir.2004).

Plaintiff's complaint against Shelby County, Kentucky is also subject to dismissal because counties cannot be held vicariously liable under § 1983 based on the theory of *respondeat superior* for injuries inflicted by their employees or agents. *See Iqbal,* 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658, 690–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Gregory v. Shelby Cnty., Tennessee,* 220 F.3d 433, 441 (6th Cir.2000); *see also Davis v. Bexley Police Dep't,* No. 2:08cv750, 2009 WL 414269, at *2 (S.D.Ohio Feb.17, 2009) ("A plaintiff may not rely on the doctrine of *respondeat superior* to find a government entity liable under § 1983 when the claim is founded solely on an allegation that its agent caused the injury."). To state a claim for relief under § 1983 against a county, the plaintiff must allege that his "injuries were the result of an unconstitutional policy or custom" of the county. *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994); *see also Monell,* 436 U.S. at 694; *Doe v. Claiborne Cnty.,* 103 F.3d 495, 507 (6th Cir.1996). *Cf. Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (official policy must be "moving force" behind constitutional deprivation). Counties and other governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a policy or custom and the alleged deprivation. *Monell,* 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio,* 989 F.2d 885, 889 (6th Cir.1993). Here, plaintiff has alleged no facts to suggest that he has been injured as a result of an unconstitutional county policy or custom.

 *7 Plaintiff has also failed to state an actionable claim under § 1983 against the three defendant state judges, who have presided over the challenged domestic relations proceeding over the course of the years. It is well-settled that judges are entitled to absolute immunity from suits for money damages for all actions taken in their judicial capacity, unless those actions are taken in the complete absence of any jurisdiction. *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994). "[J]udicial immunity is not overcome by allegations of bad faith or malice" or of action taken "in error ... or in excess of [the judge's] authority." *Mireles,* 502 U.S. at 11, 13. Although plaintiff has claimed Kentucky lost jurisdiction over the domestic relations case when he, his ex-wife and their children moved to Ohio, plaintiff's allegations are insufficient to suggest that the defendant judicial officers acted in the complete absence of any jurisdiction in the matter that was properly initiated in the Shelby County court. Therefore, the Shelby County judges who have been named as defendants in this action are absolutely immune from monetary damages in this case. *Cf. Sterling v. Trotter,* No. C2–01–528, 2002 WL 484983, at *3–4 (S.D.Ohio Mar.27, 2002) (Sargus, J.) (holding that judges in state domestic relations proceedings were absolutely immune from suit for money damages in case where the plaintiff alleged they deprived him of his constitutional rights during those proceedings).

In addition, to the extent that plaintiff seeks declaratory relief from the defendant judicial officers, plaintiff has failed to state a viable claim against the two judges, Myles and Mershon, who are no longer presiding over the Kentucky domestic relations case. Moreover, the Court is precluded from considering any claim for equitable relief against the current judge, defendant McDonald, under the *Younger* abstention doctrine. *Younger* abstention applies when the challenged state proceeding is currently pending, involves an important state interest, and affords the plaintiff an adequate opportunity to raise his constitutional claims. *Id.* at *4 (quoting *Mann v. Conlin,* 22 F.3d 100, 105 (6th Cir.1994)). Here, the state domestic relations case, which was filed by plaintiff's ex-wife in October 2003, *see Steele v. Steele, supra,* 2011 WL 2413400, at *1, is apparently still pending before the Shelby County Family Court on issues that have arisen regarding plaintiff's child support obligations. (*See* Doc. 1, Complaint, pp. 17–18). The state proceedings "involve a paramount state interest, i.e., domestic relations law." *See Mann,* 22 F.3d at 106 (citing *Parker v. Turner,* 626 F.2d 1,4 (6th Cir.1980)); *see also Kelm v. Hyatt,* 44 F.3d 415, 419–20 (6th Cir.1995)); *Evans, supra,* 2000 WL 1871706, at *1; Sterling, supra, 2002 WL 484983, at *4. Finally, in the absence of any showing that the Kentucky domestic relations court does not provide an adequate forum for plaintiff to raise his constitutional claims, the Court must presume that an adequate opportunity is provided

2012 WL 3061028

plaintiff to present his claims to the state court. *Cf. Kelm, 44 F.3d at 420–21.* Because all three *Younger* criterion are thus satisfied, abstention is proper in this case.

**\*8** The remaining defendants, plaintiff's ex-wife and her attorneys in the state-court domestic relations action, cannot be held liable under § 1983 because they are not state actors. *Cf. Dodson,* 454 U.S. at 325 (holding that public defender does not act under color of state law for purposes of § 1983); *Otworth v. Vanderploeg,* 61 F. App'x 163, 165 (6th Cir.2003) ("A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983."); *McCord v. Bailey,* 636 F.2d 606, 613 (D.C.Cir.1979) (applying *Polk County* to retained criminal lawyers); *Miller v. Countrywide Home Loans,* 747 F.Supp.2d 947, 954 (S.D.Ohio 2010) (Sargus, J.) (and cases cited therein) (holding that the private-party defendants, who were plaintiff and plaintiff's counsel in a state-court foreclosure proceeding, were not ' ' "state actors' for purposes of stating a viable § 1983 claim merely because they were making use of the state's courts and/or its laws"); *see also Catz v. Chalker,* 142 F.3d 279, 289 (6th Cir.1998); *Horton v. Martin,* 137 F. App'x 773, 775–76 (6th Cir.2005). Absent any allegation even remotely suggesting plaintiff's ex-wife and her attorneys acted under color of state law by acting in concert with state officials, plaintiff's complaint fails to state a claim under § 1983. *Cf. Horton,* 137 F. App'x at 775–76 (affirming dismissal of § 1983 claim against attorney who represented the plaintiff in a parole revocation hearing given the lack of any "factual support or evidence upon which a conspiracy [with state officials] could be based"); *see also Twombly,* 550 U.S. at 555.

Finally, pendent jurisdiction under 28 U.S.C. § 1367 should not be exercised to consider any state-law claims that are alleged in the complaint/petition because plaintiff has failed to state a viable federal claim. *See United States Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16

L.Ed.2d 218 (1966); *see also Brooks v. Rothe,* 577 F.3d 701, 709 (6th Cir.2009) (quoting *Wojnicz v. Davis,* 80 F. App'x 382, 384–85 (6th Cir.2003)) ("If the federal claims are all dismissed before trial, the state claims generally should be dismissed as well .").

Accordingly, in sum, the Court concludes that the plaintiff's *pro se* complaint/petition should be dismissed at the screening stage for lack of subject matter jurisdiction because the Court lacks authority to consider plaintiff's request to have a Kentucky state-court action removed to this Ohio federal district court; collateral estoppel bars review of plaintiff s claims that were litigated and necessarily decided in the prior removal action filed by plaintiff with the federal district court in Kentucky; this Court lacks authority to consider plaintiff's claims under the "domestic relations exception" to federal jurisdiction; the *Rooker–Feldman* doctrine applies to bar review of plaintiff's claims challenging actions taken in the state-court domestic relations case; and plaintiff has failed to state a viable claim for relief under 42 U.S.C. § 1983 against the named defendants.

**\*9  IT IS THEREFORE RECOMMENDED THAT:**

1. The plaintiff's complaint/petition be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). [3]

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis. See McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir.1997).

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3061028

---

Footnotes

1    Although plaintiff also cites 28 U.S.C. § 1446(b) as providing a jurisdictional basis for removal, that provision only addresses the time requirement that must be satisfied for filing a notice of removal. In any event, it is clear that, like 28 U.S.C. § 1443, jurisdiction under § 1446 may be invoked only in cases where the defendant seeks to remove a state-court action to "the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a).

2    It is noted that plaintiff previously attempted to remove the Shelby County family court case to the appropriate Kentucky federal district court located in the district and division where the state-court action is pending. *See Steele v. Steele,* No.

2012 WL 3061028

3:10–CV–40–KSF, 2011 WL 2413400 (E.D.Ky. June 10, 2011). In that case, the district court *sua sponte* remanded the case to the Shelby County court after concluding that it lacked subject matter jurisdiction over the action. *See id.*

3    In so recommending, the undersigned recognizes that one of the bases for dismissal of the complaint is that *Younger* abstention applies to bar review of any claim for equitable relief against defendant McDonald, the Shelby County judge who is currently presiding over the state-court domestic relations case. Generally, if the requirements for *Younger* abstention are met, a district court should stay, rather than dismiss, the § 1983 claim pending resolution of the state proceeding. *See Evans, supra,* 2000 WL 1871706, at *2 (and Sixth Circuit cases cited therein). However, in this case, because the complaint is subject to dismissal on alternative grounds, the undersigned recommends that the complaint be dismissed with prejudice.

---

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 2991000
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Martin WEINSTEIN, Plaintiff,

v.

CITY OF NEW YORK, et al., Defendants.

No. 13 Civ. 06301(LGS).
|
Signed July 3, 2014.

OPINION AND ORDER

LORNA G. SCHOFIELD, District Judge.

**\*1** This case is before the Court upon pro se Plaintiff Martin Weinstein's Motion for Reconsideration of the Court's April 8, 2014 Opinion and Order ("Motion"). For the following reasons, Plaintiff's Motion is denied.

### I. BACKGROUND

On September 9, 2013, Plaintiff commenced this action against Defendants the New York City Department of Education ("DOE"), the City of New York and Dennis Walcott, former Chancellor of the DOE. The Complaint asserted that Defendants' conduct in discharging Plaintiff from his position as an at-will employee of the DOE violated the U.S. Constitution, the New York Constitution and numerous federal and New York state statutes. On November 15, 2013, Defendants filed a motion to dismiss the Complaint, arguing that Plaintiff's claims were time barred and the Complaint otherwise failed to allege facts sufficient to state a claim. On April 8, 2014, the Court issued its Opinion and Order ("Opinion") granting Defendants' motion to dismiss. The Court held that the federal claims were barred by the relevant statutes of limitations and that equitable tolling of the statutes of limitations was not warranted under the circumstances. The Court declined to exercise supplemental jurisdiction over the state law claims.

On April 9, 2014, Plaintiff filed his Motion. On April 14, 2014, Plaintiff filed an additional letter, again asking the Court to reconsider its decision. On May 1, 2014, Plaintiff filed a second letter, requesting that the Court

"consider hearing [his] complaint" or "remanding this case to a lower court."

### II. STANDARD

"The standards governing motions for amendment of findings under Rule 52(b), motions to alter or amend a judgment pursuant to Rule 59(e), and motions for reconsideration pursuant to Local Rule 6.3 are the same." ResQnet.com, Inc. v. Lansa, Inc., 01 Civ. 3578, 2008 WL 4376367, at \*2 (S.D.N.Y. Sept.25, 2008) (quoting Wechsler v. Hunt Health Sys., Ltd., 94 Civ. 8294, 2004 WL 2210261, at \*2 (S.D.N.Y. Sept.30, 2004)) (internal quotation marks omitted). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995).

"A party seeking reconsideration 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.' " Wechsler, 2004 WL 2210261, at \*2 (quoting Polsby v. St. Martin's Press, Inc., 97 Civ. 690, 2000 WL 98057, at \* 1 (S.D.N.Y. Jan.18, 2000)). "The motion to reconsider cannot properly advance 'new facts, issues or arguments not previously presented to the court.' " Wechsler, 2004 WL 2210261, at \*2 (quoting Davidson v. Scully, 172 F.Supp.2d 458, 461 (S.D.N.Y.2001)).

### III. DISCUSSION

**\*2** Plaintiff seeks reconsideration of the Court's Opinion on grounds that "adequate and relevant case law was presented to demonstrate equitable tolling" and " 'newly found' evidence was presented to support the foregoing."

In its Opinion, the Court considered and rejected Plaintiff's equitable tolling argument, including his claim that new evidence warranted equitable tolling of the statutes of limitations. The Opinion concluded that Plaintiff's case was not one of the "rare and exceptional circumstances" where equitable tolling is appropriate, Weinstein v. City of New York et al., 13 Civ. 06301, 2014 WL 1378129, at \*5 (S.D.N.Y. Apr.8, 2014) (quoting Zerilli–Edelglass v. N.Y.C. Transit Authority, 333 F.3d 74, 80 (2d Cir.2003) (internal quotation marks omitted)), and

that the "newly found evidence" purportedly discovered by Plaintiff did not alter the Court's analysis. Because Plaintiff points to no "controlling decisions or data that the court overlooked," the Motion is dismissed.

## III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED. The Clerk of Court is directed to close the motion at Docket No. 29 and to close the case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2991000

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 6551782
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Wells Fargo Bank, N.A., Sucessor by Merger
to Wells Fargo Bank Minnesota, N.A., as
Trustee f/k/a Norwest Bank Minnesota,
N.A., as Trustee for the Registered Holders
of Renaissance Home Equity Loan Asset-
Backed Certificates Series 2003-4, Plaintiff,
v.
Maria L. Stephens, Reza Stephens, and Eltonya
Thompson n/k/a Princess Quiet Hawk, Defendants.

CIVIL ACTION NO.: 3:14-cv-1982 (VLB)
|
Signed October 29, 2015

**Attorneys and Law Firms**

Jason W. Creech, Houser & Allison, ACP, New York,
NY, for Plaintiff.

Maria L. Stephens, Glastonbury, CT, pro se.

## MEMORANDUM OF DECISION GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING ITS MOTION FOR COSTS AND ATTORNEY FEES

Hon. Vanessa L. Bryant, United States District Judge

**\*1** Plaintiff Wells Fargo Bank, N.A., successor by
merger to Wells Fargo Bank Minnesota, N.A., as Trustee
f/k/a Norwest Bank Minnesota, N.A., as Trustee for
the Registered Holders of Renaissance Home Equity
Loan Asset-Backed Certificates Series 2003-4 ("Wells
Fargo") brought a foreclosure action in Connecticut
Superior Court against Defendants Maria L. Stephens,
Reza Stephens, and Eltonya Thompson n/k/a Princess
Quiet Hawk (collectively, "Defendants"). Defendants,
proceeding pro se, removed the action to this Court. Wells
Fargo now moves to remand the action back to state court
and for costs and attorney fees. For the following reasons,
the Court GRANTS the motion to remand and DENIES
the motion for costs and attorney fees.

## FACTUAL AND PROCEDURAL BACKGROUND

In Connecticut Superior Court, Wells Fargo sought
foreclosure of Connecticut real property based on
Defendants' alleged breach of a mortgage contract. ECF
No. 1 (Notice of Removal) at 10–16 (Compl.). The
December 2014 complaint alleged that the unpaid balance
on the mortgage was $35,307.37, plus interest and costs,
and, as required by state law, made a demand for $15,000
or more, exclusive of interest and costs. *Id.* at 11, 15.

On December 31, 2014, Defendants removed the action
to this Court. ECF No. 1 (Notice of Removal). The
notice of removal invokes federal question and diversity
jurisdiction, but the bases for doing so are less than clear.
*Id.* at 5. With respect to federal question jurisdiction,
Defendants cite various rules, civil rights statutes, criminal
statutes, and Constitutional provisions, but the crux of
their argument appears to be that the foreclosure action
discriminates against them because they are "Indigenous
American Nationals." *Id.* at 1–3, 5. With respect to
diversity jurisdiction, the notice of removal does not allege
Defendants' respective citizenships, the citizenship(s) of
Wells Fargo, or an amount in controversy. *See generally
id.*

In a motion filed on April 6, 2015, Wells Fargo moves to
remand and for costs and attorney fees. ECF No. 8 (Mot.).
Wells Fargo argues that the action should be remanded
"due to a want of jurisdiction and other procedural
defects." ECF No. 8-1 (Mem.) at 1. Wells Fargo reasons
that the Court lacks federal question jurisdiction because
none of the provisions cited by Defendants apply to
this action and that the Court lacks diversity jurisdiction
because Defendants are Connecticut citizens. *Id.* at 3–7.
Wells Fargo also argues that Defendants failed to comply
with this Court's standing order. *Id.* at 5. Wells Fargo's
memorandum of law contains no section supporting its
motion for costs and attorney fees. *Id.*

## Discussion

### I. Motion to Remand
Wells Fargo argues that the Court should remand the
action "due to want of jurisdiction and other procedural
defects." ECF No. 8-1 (Mem.) at 1. The Court cannot
remand the action as a result of "other procedural defects"

because Wells Fargo waited 96 days before moving to remand. [1] *See* 28 U.S.C. 1447(c) (requiring that motion to remand based on defects other than subject matter jurisdiction be filed "within 30 days after the filing of the notice of removal under section 1446(a)"). The Court will therefore only consider whether it lacks subject matter jurisdiction over the action.

**\*2** A case filed in state court may not be removed unless the federal district court possesses original jurisdiction. 28 U.S.C. § 1441(a). The removing party bears the burden of proving jurisdiction. *See United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The removing party meets its initial burden of proving jurisdiction by filing a notice of removal "containing a short a plain statement of the grounds for removal," 18 U.S.C. § 1446(a), which "tracks the general pleading requirement under Federal Rule of Civil Procedure 8(a)." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553, (2014). A notice of removal does not give a federal district court jurisdiction if "neither the complaint nor the notice of removal alleges facts that establish jurisdiction." 16 *Moore's Federal Practice* § 107.30[2][a] (Matthew Bender 3d ed.).

Liberally construed, Defendants' notice of removal invokes two grounds for jurisdiction: federal question jurisdiction and diversity jurisdiction. Neither ground applies. For federal question jurisdiction to exist, the cause of action must arise under the laws of the United States. 28 U.S.C. § 1331. As a general rule, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). A federal cause of action does not arise out of a defense or counterclaim. *See New York v. Shinnecock Indian Nation,* 686 F.3d 133, 138 (2d Cir. 2012). Federal question jurisdiction does not exist in this case because the complaint's allegations, which arise from a foreclosure action on real property based on a breach of mortgage contract, do not raise an issue of federal law. *See Astoria Fed. Sav. & Loan Ass'n v. Arcamone*, 2012 WL 4355550, at \*1 (D. Conn. Sept. 18, 2012) (remanding because the foreclosure action "raises only issues of state law").

Defendants' citations to various rules, civil rights statutes, criminal statutes, and Constitutional provisions are generally nonsensical, but Defendants do attempt to invoke a valid exception to the well-pleaded complaint rule: 28 U.S.C. § 1443, which permits the removal of certain civil rights cases. *See Rogers v. Rucker*, 835 F.Supp. 1410, 1412 (N.D. Ga. 1993) (describing § 1443 as "a statutory exception to the well-pleaded complaint rule"). This statutory exception, however, does not apply here. Section 1443(1) does not apply because, at best, Defendants conclusorily allege that the foreclosure proceeding was being administered in a racially discriminatory manner. *See Rizzitelli v. Thompson*, 2014 WL 3819212, at \*3 (D. Conn. Aug. 4, 2014) ("To support removal under § 1443(1), it is not sufficient merely to allege that a law, fair on its face, is being administered in a discriminatory manner." (alterations and internal quotation marks omitted)). Section 1443(1) also does not apply because Defendants' notice of removal does not allege that the alleged civil rights violations could not be redressed in state court. *See Georgia v. Rachel*, 384 U.S. 780 (1966) (holding that the exception applies only where right cannot be enforced in state court). Section 1443(2) does not apply because Defendants are not state officers or individuals permitted to assist them. *See White v. Wellington*, 627 F.2d 582, 585 (2d Cir. 1980) ("[T]he legislative history limits those able to remove thereunder to state officers, and those acting with or for them including local and municipal officials.").

**\*3** Diversity jurisdiction also does not apply. [2] For diversity jurisdiction to exist, the amount in controversy must exceed $75,000, exclusive of interest and costs, and the action is between, as relevant here, citizens of different states. 28 U.S.C. § 1332(a)(1). The statute requires complete diversity, i.e., the citizenships of all defendants must be different from the citizenships of all plaintiffs. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). Defendants do not meet their initial burden with respect to either the amount in controversy or complete diversity. With respect to the amount in controversy, the complaint alleges that Defendants owe $35,307.37, exclusive of interests and costs, and the notice of removal does not make any allegations concerning the amount in controversy. The extant allegations are therefore insufficient to satisfy the amount-in-controversy requirement, and remand is appropriate on this ground. *See Lupo v. Human Affairs Int't*, 28 F.3d 269, 273–74 (2d Cir. 1994) (holding "that if the jurisdictional amount is not clearly alleged in the plaintiff's complaint, and the defendant's notice of removal fails to allege facts adequate

to establish that the amount in controversy exceeds the jurisdictional amount, federal courts lack diversity jurisdiction"). With respect to complete diversity, neither the complaint nor the notice of removal alleges facts suggesting the citizenship of any party. The extant allegations are therefore insufficient to demonstrate complete diversity, and remand is appropriate on this ground as well. *See Cats Co. v. TIG Ins. Co.*, 2001 WL 747283, at *1 (S.D.N.Y. July 3, 2001) (remanding action because "neither the complaint nor the notice of removal alleges the citizenship of each of the partners of the plaintiff").

## II. Motion for Costs and Attorney Fees

Wells Fargo also moves for costs and attorney fees, but its memorandum of law fails to cite any law or facts supporting the request. This error alone warrants denial. *Cf.* Local R. Civ. P. 7(a) (requiring a memorandum of law on disputed issues). Even if it were not, Defendants' removal is objectively reasonable for persons justifiably unfamiliar with the complex rules governing the interrelationship between federal and state court systems. *See Bleiberg v. Altvater*, 2002 WL 1339097, at

*2 (S.D.N.Y. June 19, 2002) (denying motion for costs and attorney fees "perhaps only in light of the defendant's *pro se* status"). Two other facts weigh against the award of costs and attorney fees: Wells Fargo's counsel, who are presumably familiar with the rules governing removal, waited 96 days before filing the instant motion and failed to assert facts concerning Wells Fargo's citizenship(s). *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("[A] plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees.").

## CONCLUSION

**\*4** For the foregoing reasons, the motion to remand is **GRANTED**, and the motion for costs and attorney fees is **DENIED**.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 6551782

Footnotes

1    This includes Wells Fargo's "jurisdictional" argument that Defendants may not remove because they are citizens of Connecticut. *See Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000) (observing that rule prohibiting removal by forum defendant is waivable).

2    The Court considers the issue *sua sponte* because Wells Fargo does not articulate any valid reason for objecting to Defendants' invocation of diversity jurisdiction. As already discussed, the fact that Defendants may be citizens of Connecticut does not mean diversity jurisdiction is lacking.

---

**End of Document**              © 2017 Thomson Reuters. No claim to original U.S. Government Works.